# EXHIBIT 34



United States
Department of
Agriculture

Office of the
Assistant Secretary
for Administration

Office of
Civil Rights

400 Independence
Avenue SW

Washington, DC
20250

United States Department of Agriculture
Office of Civil Rights

---

Lisa McCall,
    Complainant,

v.                                  USDA Complaint No. 990582

Ann M. Veneman,
Secretary,
Department of Agriculture,
    Agency.

---

## Final Agency Decision

### Introduction

In accordance with the Equal Employment Opportunity Commission (EEOC) regulations at 29 C.F.R. §1614.110(b), this is the final decision of the United States Department of Agriculture (USDA) on this complaint.

### Issue Presented

The issue presented herein is whether the Complainant was discriminated against on the basis of her race (Black) and color (Black) when (1) she was separated from her employment due to a Reduction in Force on April 27, 1997; (2) she was not placed on the Re-employment Priority List; (3) she was subjected to a pattern of harassment prior to her separation which included assignment of duties, insufficient work space and verbal abuse by her supervisor; and, (4) she was not selected for a GS-5 position that was exempt from the Reduction in Force.

### Factual Background

The Complainant initially contacted an EEO Counselor on May 14, 1998. On April 12, 1999, the complaint was accepted for processing and investigation. On March 9, 2001, a copy of the Report of Investigation (ROI) was forwarded to the Complainant. Because the complaint involves an allegation that is appealable to the Merit System Protection Board (MSPB), the complaint is governed by 29 C.F.R. §1614.302 as a mixed case. Therefore, this office is issuing a final decision pursuant to 29 C.F.R. §1614.110.

The Complainant, race and color (Black), was employed as a Community Development Assistant, GS-1104-4 in the Haynesville, Alabama Office until it closed in November 1996 and was then transferred to the Luverne, Alabama Office.

The Complainant stated that she was separated from her employment due to a Reduction in Force (RIF) in April 1997. She further stated that her race and color (Black) were factors in her RIF because White employees in lower grades were not separated from employment.

The Complainant stated that she applied for a GS-5 position in Mobile, Alabama prior to the effective date of the RIF and that a White Native American was selected. She stated that the position was exempt from the RIF and that her race and color were factors in her non selection. The Complainant alleged that job announcements would be sent by email to the various offices and were always sent late to the Luverne Office.

The Complainant stated that after the RIF, she began applying for various secretarial positions. However, she continued to hear that she was not eligible for priority consideration because she was not on the Re-employment Priority List (RPL). The Complainant alleged that she was told by the personnel manager that she was on the list. The Complainant stated that all of the White employees that were separated in the RIF are working at the agency and that she and another Black employee are not.

The Complainant stated that she was subjected to a pattern of harassment prior to her separation when some of her duties were removed, she was given insufficient work space, and she was verbally abused by her supervisor. The Complainant stated that in December 1996, she was the time keeper and that in a meeting, her supervisor announced that she would no longer be the time keeper and those duties were assigned to the Loan Technician who is White. She stated that she continued to keep track of the time because the new time keeper was abusing her own time.

The Complainant stated that in February 1997, her supervisor told her to file all of the annual statements and to send some of the files to St. Louis. She maintained that the White employee was to perform that task.

The Complainant alleged that she and another Black employee did not have office furniture, phones or a computer in the relocated office. She stated that they had a table, chair and typewriter and that a phone and computer were necessary in order to perform the work. She further stated that White employees with the same title had office furniture.

The Complainant stated that her supervisor used an angry tone when he spoke to her and the other Black employee. She stated that he did not use that tone with White employees. She also stated that while employed in the Haynesville Office, she conducted an interest credit review on a delinquent borrower, the borrower complained and she was reprimanded by her supervisor.

The Personnel Management Specialist, GS-12 (White), stated that the Restructuring Plan, which determined which positions would be retained, was developed by a committee including the State Director, Program Directors, Rural Development Directors and others.

600 'd

She stated that the selection for the GS-5 position for which the Complainant was not selected was made by the State Director. She stated that the State Director generally made selections on the basis of the application without conducting interviews. She stipulated that the Complainant and the Selectee were the only applicants and the Selectee was chosen. She further stated that job announcements were always sent out to all of the offices across the state. She maintained that prior to the actual 1997 RIF, the agency conducted a mock RIF in which all employees were sent copies of the notices and paperwork used in a real RIF. She stated that during the mock RIF, office personnel traveled the state conducting training sessions explaining the RIF process and the Re-employment opportunities. She stated that to be placed on the Re-employment Priority List (RPL), employees were to return a form to her. She stated that the Complainant did not attend the seminar. She stated that the RPL form was sent to the Complainant several times and that the Complainant did not sign the form until April 27, 1998, and that it was received in her office on May 26, 1998. She stated that the Complainant was placed on the RPL on May 27, 1998. She stipulated that even though the Complainant did not return the RPL form for more than a year after the RIF, her name was on the informal Re-employment list maintained in the State Office. She stipulated that both the RPL and the informal list only required the agency to notify separated employees of vacancies for permanent positions at the same grade and in the same commuting area for which the employee was separated. Also, the RPL and informal lists only provide priority for a period of two (2) years after the RIF. She stated that no permanent GS-4 positions within the Complainant's commuting area have been available since the RIF.

The Community Assistant, GS-5 (White) stated that she was employed in the Luverne, Alabama Office until the RIF. She stated that she is currently employed by the Agency as a Community Program Assistant, GS-4 in the Andalusia Office in Montgomery, Alabama. She stated that she does not think she sent the RPL form after the RIF, but it was possible. She also stated that she may have received a call from the Agency about a temporary position, not the position she has now, in the past year. She reported that she called and inquired about the temporary position that was due to become available in the Andalusia, Alabama Office. She maintained that she had a desk when the Complainant moved to the Luverne, Alabama Office. She stated that the Complainant may have had a workstation, however, she did not have a desk. She further stated that there was insufficient room in the office for everyone after the consolidation. She maintained that she never heard the supervisor speak to the Complainant in a hostile tone.

The Rural Development Specialist, GS-12 (White) stated that he was the supervisor in the Haynesvillle, Alabama Office until it closed in November 1996, and was the supervisor in the Luverne, Alabama Office from March 1997 through June 1997. He stated that he does not recall who kept the time records or if that responsibility was transferred from one employee to another. He further stated that he did not recall telling the Complainant to file annual statements and send files to St. Louis, but stated that it did not sound like an unreasonable directive. He stated that he did not recall telling the Complainant to move heavy files. He stated that when tasks were to be done, he told whoever was available and that work was not assigned according to an employee's race or color. He stated that when the Complainant worked at the Haynesville Office, she was prompt but had some difficulty calculating, tracking payments and writing letters. He stated that after the transfer to the Luverne Office, the Complainant sat at her table all day and did nothing. He stated

that he gave her assignments and she would not perform them. He stated that he let it go because she would be subject to the RIF a month later.

The County Loan Technician, GS-7 (White) stated that the Rural Development Specialist asked her to take over from the Complainant the task of time keeper because she was at a higher grade. She stated that the other GS-4 (Black) was the back up time keeper. She stated that she did not recall the supervisor asking the Complainant to move heavy files or furniture and that she moved most of the files herself because the Complainant refused to do anything after being notified of the RIF. She further stated that she never observed the supervisor speaking to the Complainant in a hostile manner. She stated that she retired on January 1, 2001, after 31 years of service.

The former Community Development Manager, GS-12 (Black) stated that he was the manager in the Luverne Office from 1995 to January 1997. He stated that he was instructed in 1996 to close the Haynesville Office and transfer three (3) employees to the Luverne Office. He stated that after the relocation, there were seven (7) employees in the office. He stated he was responsible for assigning work spaces to the relocated employees. He maintained that the space was limited and that he arranged the employees as best he could. He stated that while the Complainant and another employee (Black) did not have phones or a computer on their desks, they had access to a computer in the corner of the room. He further stated that he arranged the tables so that they would have some privacy.

### Analysis and Findings

A claim of disparate treatment is examined under the three-part analysis first enunciated in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973). For the Complainant to prevail, she must first establish a prima facie case of discrimination by presenting facts that, if unexplained reasonably give rise to an inference of discrimination, i.e., that a prohibited consideration was a factor in the adverse employment action. McDonnell Douglas Corporation v. Green, 411 U.S. at 802; Furnco Construction Corp. v. Waters, 438 U.S. 567 (1978). The burden then shifts to the agency to articulate a legitimate nondiscriminatory reason for its actions. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). Once the agency has met its burden, the Complainant bears the ultimate responsibility to persuade the fact finder, by a preponderance of the evidence, that the agency acted on the basis of a prohibited reason. St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993).

In order to establish a prima facie case of disparate treatment based on the above stated bases, the Complainant must show that: (1) she was a member of a protected class under Title VII; (2) she was subjected to unfair or adverse terms and conditions of employment; and (3) employees similarly situated, and outside her protected class, were dissimilarly treated.

However, although the initial inquiry in a discrimination case usually focuses on whether the Complainant has established a prima facie case, following this order of analysis is unnecessary when the agency has articulated a legitimate nondiscriminatory reason for its actions. Washington v. Department of the Navy, EEOC Petition No. 0300056 (May 31, 1990). In such cases, the inquiry

4

shifts from whether the Complainant has established a prima facie case to whether she has demonstrated, by a preponderance of the evidence, that the agency's reasons for its actions were merely a pretext for discrimination. Id.; See also, United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 713-17 (1983). Therefore, in the present case, we will bypass the prima facie stage of the analysis and focus on whether the Complainant has demonstrated, by a preponderance of the evidence, that the agency's explanation for its action was a pretext for discrimination based on race and color.

The agency has rebutted the inference of discrimination with the explanation it offered for its actions. Specifically, the agency presents evidence that the Complainant's separation from employment was due to a Reduction in Force (RIF) and that the Complainant's position was abolished.

On the issue of non-selection, the record reflected that there were two (2) applicants, including the Complainant. A review of the applications for both candidates reflected a more detailed response from the Selectee when describing her duties and accomplishments.

In addition, according to the Qualifications Analysis for Vacancy Announcement AL-96-07, the Complainant's application was rated as poor. Also, the Complainant's performance rating for 1995 was "marginal" and the Selectee's performance rating for 1995 was "fully successful."

According to the record, a GS-4/5 position became available in Bay Minette on March 17, 1997. However, the Complainant did not apply and the position was filed with a work trainee at the GS-1 level on January 4, 1998.

The record reflected that the restructuring plan identified the positions to be retained, one of which was a Community Development Assistant, GS-4/5. The employees were placed on a Retention List in an order determined by their service computation date with years added for performance. This performance element was based on an average of their last three (3) years performance appraisals. As a result, an employee with more seniority was retained. The record reflected that the Complainant was lowest on the retention list.

The record does not support a finding of discrimination based upon the Complainant's race or color. Nor does the record indicate that the Complainant's race or color was a factor in her placement on the retention list or her being separated during the RIF.

In order to prevail, the Complainant must demonstrate that the agency's reasons are pretextual. That is, the Complainant must show that the agency's actions are unworthy of credence or that the agency was more likely motivated by discrimination because of her race and color. In that regard, the Complainant makes several assertions: The Complainant reported that she was always told when she called that she was on the RPL and that she never received any calls about any jobs. The Complainant stated that all of the White employees who were separated in the RIF are back working at the agency. However, the Complainant acknowledged that some of these employees are in temporary positions.

5

The Personnel Management Specialist stated that even though the Complainant did not return the RPL form for over a year after the RIF, her name was on the informal Re-employment list.

The agency reported that the RPL and the informal lists only provide priority for a two (2) year period after the RIF and that no permanent GS-4 positions within the Complainant's commuting area have been available since the RIF. The record does not reflect that the Complainant would have accepted temporary employment had it been available.

The record reflected that prior to the RIF in April 1997, there were seven (7) employees in the Luverne Office including the Complainant. Three (3) were Black and four (4) were White. After the RIF, there were two (2) employees in the office, both of whom were White. Additionally, two employees, one (1) White and one (1) Black, were promoted out of the Luverne Office and were not subjected to the RIF. Of the four (4) Luverne Office employees subjected to the RIF, two (2) were White and two (2) were Black.

After a careful review of the record, we find that the record is insufficient to support a finding of discrimination based upon race or color. Specifically, the record supports the agency's nondiscriminatory reason and no evidence of pretext is apparent.

Harassment of an employee that would not occur but for the employee's race or color is unlawful, if it is sufficiently severe or pervasive. McKinney v. Dole, 765 F.2nd 1129, 1138-1139 (D.C. Cir. 1985). A single incident or group of isolated incidents will not be regarded as discriminatory harassment unless the conduct is severe. Walker v. Ford Motor Co., 684 F.2d 1355, 1358 (11th Cir. 1982). Whether the harassment is sufficiently severe to trigger a violation of Title VII, must be determined by looking at all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993).

The Complainant identifies the following as examples of harassment:

   (1)   **Assignment of duties.** The Complainant stated that she was notified that she would no longer be the time keeper and that the time keeping assignment was given to a White employee.

   (2)   **Insufficient work space.** The Complainant stated she did not have a desk, phone or computer.

   (3)   **Verbal abuse by her supervisor.** The Complainant stated that her supervisor used an angry tone when speaking to her.

According to the record, the Complainant's duties as time keeper were reassigned to an employee with a higher grade level. The time keeper is White and the back-up time keeper is Black.

6

The record also reflected that when the three (3) Haynesville Office employees were transferred to the Luverne Office, there was insufficient space and the work tables for the Complainant (Black) and another employee (Black) were arranged to provide them with some privacy. The Luverne Office had three (3) enclosed offices and two (2) desks in the open. The supervisor stated that he used one office and the two (2) technicians used the other. One (1) office was already occupied by two (2) technicians. The desks were occupied by two (2) clerks already assigned to the Luverne Office. The only available space left was the open space where he placed two (2) tables for the Complainant and the other clerk, both Black. The Community Development Manager stated that the room was too small to run additional cables for computers and that it was not practical to order new furniture or install computers and phones since he had been notified that the RIF was coming. According to the record, it would not have been reasonable or fair to remove current clerks from their desks in order to accommodate newly arriving clerks from an office that had closed. The record reflected that the office space was very limited and does not support a finding that office space was allotted based upon race.

The record reflected that none of the witnesses reported knowledge of the supervisor using a hostile or angry tone with the Complainant or others.

Based on the totality of the circumstances, the evidence of record does not establish that the Complainant was subjected to actions that were sufficiently severe or pervasive to create a hostile work environment. The evidence is insufficient to conclude that the supervisor used a tone that was angry or hostile toward the Complainant. The totality of the circumstances shows that the Complainant felt harassed by merely perceived actions, as well as actions that in fact occurred. However, the record does not show that the harassment perceived by the Complainant was caused by actions which were sufficiently severe or pervasive to create a hostile work environment, and that but for her race and color, the harassment would not have occurred. Thus, no finding of harassment based on race or color has been made.

## Conclusion

The weight of the evidence is insufficient to establish a case of discrimination based on race or color. Accordingly, a finding of no discrimination and no relief or corrective action is warranted.

## Appeal Rights

This is the final decision of the Department of Agriculture on the cited complaint or complaints. The following rights are available to challenge this decision:

### Appeal to the MSPB

A Notice of Appeal may be filed with the MSPB (not the EEOC) at any time up to thirty (30) calendar days after receipt of this decision. MSPB Form 283 may be used to indicate what is being appealed. A copy of the form is provided with this decision. Such notice should be addressed to:

7

**Merit Systems Protection Board**
**Atlanta Regional Office**
**401 W. Peachtree Street, NW, Suite 1050**
**Atlanta, GA. 30308**

If there is an attorney of record, the thirty (30) calendar day time limit within which to appeal shall be calculated from the date of receipt of this decision by the attorney. In all other cases, the thirty (30) calendar day time limit within which to appeal shall be calculated from the date of receipt of this decision.

An appeal shall be deemed filed on the day it is postmarked, or in the absence of a postmark, on the date it is received by the MSPB.

At the same time information is provided to the MSPB, there **must** be a certification that a copy of the submission **has been** submitted to the Employment Adjudication Division and the date and method of submission. The address is provided below:

**United States Department of Agriculture**
**Employment Adjudication Division**
**1400 Independence Avenue, S.W. - Mail Stop 9440**
**Washington, DC 20250-9440**

**Civil Action in Federal District Court**

You also have the right to file a civil action in an appropriate United States District Court. If you choose to file a civil action, you may do so:

(1) within thirty (30) calendar days of receipt of this decision, unless an appeal is filed with the MSPB; or

(2) within thirty (30) calendar days of receipt of a notice of the final decision or action taken by the MSPB, if you do not file a petition for consideration with the EEOC; or for consideration is filed with the EEOC; or

(3) within thirty (30) calendar days of receipt of notice that the EEOC has determined not to consider the decision of the MSPB; or

(4) within thirty (30) calendar days of receipt of the notice that the EEOC concurs with the decision of the MSPB; or

(5) within thirty (30) calendar days of receipt of notice that the MSPB concurs in, and adopts in whole, the decision of the EEOC; or

(6) if the MSPB does not concur with the decision of the EEOC, and the MSPB reaffirms its initial decision or reaffirms its initial decision with a revision, within thirty (30) calendar days of the receipt of notice of the decision of the Special Panel; or

(7) after one hundred and twenty (120) calendar days from the date of filing an appeal with the MSPB if the MSPB has not yet made a decision; or,

(8) after one hundred and eighty (180) calendar days from the date of filing a petition for reconsideration with the EEOC if there is no decision by the EEOC, reconsideration decision by the MSPB or decision by the Special Panel.

You must name the person who is the official agency head or department head as the defendant. Agency or department means the national organization, and not just the local office, facility, or department in which you might work. Do not name just the agency or department. In your case, you must name **Ann M. Veneman, Secretary of Agriculture**, as the defendant. You must also state the official title of the agency head or department head. Failure to provide the name or official title of the agency head or department head may result in dismissal of your case.

If you decide to file a civil action under Title VII or under the Rehabilitation Act, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Count permit you to file the action without payment of fees, costs or other security. **The grant or denial of the request is within the sole discretion of the Court.** Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and civil action **MUST BE FILED WITHIN THE STATUTORY TIME LIMITS STATED IN THIS NOTICE.**

Unless an appeal is filed with the MSPB, failure to file a civil action within thirty (30) calendar days may result in the dismissal of your civil action. Filing a law suit under 29 C.F.R. §1614.310 shall terminate processing an appeal before the MSPB or the EEOC. If a civil action is filed subsequent to filing an appeal with the MSPB, the parties are requested to notify the MSPB in writing. If a civil action is filed subsequent to filing a request for consideration with the EEOC, the parties are requested to notify the EEOC in writing.

_____
David Winningham
Acting Director
Office of Civil Rights

August 17, 2001
Date

Attachment

9

**U.S. DEPARTMENT OF AGRICULTURE**
**OFFICE OF CIVIL RIGHTS**
**Complaint of Employment Discrimination**

**Complainant:**            Lisa McCall

**Complaint No.:**          990582

**Agency:**                 Rural Development

**Certificate of Service**

I certify that the documents listed were sent on this date by certified mail (unless otherwise specified) to:

**Complainant:**            Lisa McCall
                            P.O. Box 20924
                            Montgomery, Alabama 36120

**Complainant's Representative:**   None

**Agency Head:**            James C. Alsop *(interoffice mail)*
                            Acting Administrator
                            Room 5014-S, South Building

**Agency Liaison:**         Cheryl Prejean-Greaux *(interoffice mail)*
                            Director, Civil Rights
                            Rural Development
                            Ag Box 0703
                            NASA Building, Third Floor

**Enclosures:**   Final Decision dated  AUG 21 2001
                  EEOC Form 573 (to the Complainant and representative, if any, only)

**Certified by:** /s/ Ronda Buckman   Date  Aug 21, 2001