EXHIBIT 35

# U.S. MERIT SYSTEMS PROTECTION BOARD

## APPEAL FORM

### INSTRUCTIONS

**GENERAL:** You do not have to use this form to file an appeal with the Board. However, if you do not, your appeal must still comply with the Board's regulations. 5 C.F.R. Parts 1201 and 1209. Your agency's personnel office will give you access to the regulations, and the Board will expect you to be familiar with them. You also should become familiar with the Board's key case law and controlling court decisions as they may affect your case. **You must tell the Board if you are raising an affirmative defense (see Part IV), and you are responsible for proving each defense you raise.**

**WHERE TO FILE AN APPEAL:** You must file your appeal with the Board's regional or field office which has responsibility for the geographic area in which you are employed. See 5 C.F.R. Part 1201, Appendix II.

**WHEN TO FILE AN APPEAL:** Your appeal must be filed during the period beginning with the day after the effective date of the action you are appealing and ending on the 30th day after the effective date. You may not file your appeal before the effective date of the action you are appealing. If you are appealing from a decision which does not set an effective date, you must file within 35 days of the date of the decision you are appealing. If your appeal is late, it may be dismissed as untimely. The date of the filing is the date your appeal is postmarked, the date of the facsimile transmission, the date it is delivered to a commercial overnight delivery service, or the date of receipt if you personally deliver it to the regional or field office.

**HOW TO FILE AN APPEAL:** You may file your appeal by mail, by facsimile, by commercial overnight delivery, or by personal delivery. You must submit two copies of both your appeal and all attachments. You may supplement your response to any question on separate sheets of paper, but if you do, please put your name and address at the top of each additional page. All of your submissions must be legible and on 8 1/2" x 11" paper. **Your appeal must contain your or your representative's signature in block 6. If it does not, your appeal will be rejected and returned to you. If your representative signs block 6, you must sign block 11 or submit a separate written designation of representative.**

**WHISTLEBLOWING APPEAL/STAY REQUEST:** If you believe the action you are appealing was threatened, proposed, taken, or not taken because of whistleblowing activities, you must complete Part VII of this form. If you are requesting a stay, you must complete Part VIII of this form.

*Privacy Act Statement: This form requests personal information which is relevant and necessary to reach a decision in your appeal. The U.S. Merit Systems Protection Board collects this information in order to process appeals under its statutory and regulatory authority. Since your appeal is a voluntary action you are not required to provide any personal information in connection with it. However, failure to supply the U.S. Merit Systems Protection Board with all the information essential to reach a decision in your case could result in the rejection of your appeal.*

*The U.S. Merit Systems Protection Board is authorized under provisions of Executive Order 9397, dated November 22, 1943, to request your Social Security number and, for providing your Social Security number is voluntary and failure to provide it will not result in the rejection of your appeal. Your Social Security number will only be used for identification purposes in the processing of your appeal.*

*You should know that the decisions of the U.S. Merit Systems Protec-tion Board on appeals are final administrative decisions and, as such, are available to the public under the provisions of the Freedom of Information Act. Additionally, it is possible that information contained in your appeal file may be released as required by the Freedom of Information Act. Some information about your appeal will also be used in depersonalized form as a data base for program statistics.*

*Public Reporting Burden: The public reporting burden for this collection of information is estimated to vary from 20 minutes to 1 hour, with an average of 30 minutes per response, including time for reviewing the form, searching existing data sources, gathering the data necessary, and completing and reviewing the collection of information. Send comments regarding the burden estimate or any other aspect of the collection of information, including suggestions for reducing this burden, to the Office of Planning and Resource Management Services, Merit Systems Protection Board, 1120 Vermont Ave., NW., Washington, DC 20419.*

### Part I Appellant Identification

| 1. Name *(last, first, middle initial)* | 2. Social Security Number |
|---|---|
| McCall,Lisa | 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 |

| 3. Present address *(number and street, city, state, and ZIP code)* You must notify the Board of any change of address or telephone number while the appeal is pending with the MSPB. | 4. Home phone *(include area code)* |
|---|---|
| P.O. Box 20924<br>Montgomery, AL 36124 | (334) 286-9674 |
| | 5. Office phone *(include area code)* |

| 6. I certify that all of the statements made in this appeal are true, complete, and correct to the best of my knowledge and belief. | Signature of appellant or designated representative | Date signed |
|---|---|---|
| | *Lisa McCall* | 1 OCTOBER 2001 |

## Part II Designation of Representative

7. You may represent yourself in this appeal, or you may choose someone to represent you. Your representative does not have to be an attorney. You may change your designation of a representative at a later date, if you so desire, but you must notify the Board promptly of any change. Where circumstances require, a separate designation of representative may be submitted after the original filing. Include the information requested in blocks 7 through 11.

"I hereby designate_____ to serve as my representative during the course of this appeal. I understand that my representative is authorized to act on my behalf. In addition, I specifically delegate to my representative the authority to settle this appeal on my behalf. I understand that any limitation on this settlement authority must be filed in writing with the Board."

| 8. Representative's address *(number and street, city, state, and ZIP code)*. | 9. Representative's employer |
|---|---|
| | 10.a) Representative's telephone number *(include area code)* |
| | 10.b) Representative's facsimile number |
| | 11. Appellant's signature                    Date |

## Part III Appealed Action

12. Briefly describe the agency action you wish to appeal and attach the proposal letter and decision letter. If you are appealing a decision relating to the denial of retirement benefits, attach a copy of OPM's reconsideration decision. If the relevant SF-50 or its equivalent is available, send it now; however, do NOT delay filing your appeal because of it. You may submit the SF-50 when it becomes available. Later in the proceeding, you will be afforded an opportunity to submit detailed evidence in support of your appeal.

       Termination through RIF and failure to select Complainant for a GS-5
       position that was exempt from RIF and that was filled by a White.

| 13. Name and address of the agency that took the action you are appealing *(including bureau or other divisions, as well as street address, city, state and ZIP code)* | | 14. Your position title and duty station at the time of the action appealed |
|---|---|---|
| US Department of Agriculture | | Community Development Asst. Luverne, Alabama |

| 15. Grade at time of the action appealed | 16. Salary at the time of the action appealed | 17. Are you a veteran and/or entitled to the employment rights of a veteran? |
|---|---|---|
| 4/4 | $  22,000   per    Year | ☐ *Yes*      ☒ *No* |

| 18. Employment status at the time of the action appealed | 19. If retired, date of retirement *(month, day, year)* | 20. Type of service |
|---|---|---|
| ☐ *Temporary*  ☐ *Applicant*  ☐ *Retired* <br> ☒ *Permanent*  ☐ *Term*  ☐ *Seasonal* | | ☒ *Competitive*  ☐ *SES* <br> ☐ *Excepted*  ☐ *Postal Service* <br> ☐ *Foreign Service* |

| 21. Length of government service | 22. Length of service with acting agency | 23. Were you serving a probationary or trial period at the time of the action appealed? |
|---|---|---|
| 7 Years | 7 Years | ☐ *Yes*      ☒ *No* |

| 24. Date you received written notice of the proposed action *(month, day, year) (attach a copy)* | 25. Date you received the final decision notice *(month, day, year) (attach a copy)* | 26. Effective date of the action appealed *(month, day, year)* |
|---|---|---|
| 23 Jan 1997 | 08/30/2001 | None Stated |

**27. Explain briefly why you think the agency was wrong in taking this action.**

Because White employees with lower grades were retained while Complaintant, black, was seperated. A white with less time in service was given a GS-5 position which Complaintant applied for prior to the effective date of the RIF.

| 28. Do you believe the penalty imposed by the agency was too harsh? | 29. What action would you like the Board to take on this case (i.e., what remedy are you asking for)? |
|---|---|
| ☑ Yes     ☐ No | Reinstatement with back pay |

**Part IV Appellant's Defenses**

| 30.a) Do you believe the agency committed harmful procedural error(s)? | 30.b) If so, what is (are) the error(s)? |
|---|---|
| ☒ Yes     ☒ No | |

**30.c)** Explain how you were harmed by the error(s).

| 31.a) Do you believe that the action you are appealing violated the law? | 31.b) If so, what law? |
|---|---|
| ☐ Yes     ☐ No | Title 7--42 USC 2000, et. seq. |

**31.c)** How was it violated?

See answer to Questions 27 and 32 herein.

**32.a)** If you believe you were discriminated against by the agency, in connection with the matter appealed, because of your race, color, religion, sex, national origin, marital status, political affiliation, disability, or age, indicate so and explain why you believe it to be true.

I believe I was discrimated against by the USDA, RD because of race and color. I believe this because Whites were retained, with lower grades were retained, while blacks were seperated. I was not placed on the Re-employment list, while Whites were. I was not notified of job openings while Whites were. I was not give a G-S position although I had longer time in service than the white selectee.

| 32.b) Have you filed a formal discrimination complaint with your agency or any other agency concerning the matter which you are seeking to appeal? | ☐ Yes (attach a copy)     ☒ No |
|---|---|

| 32.c) If yes, place filed (agency, number and street, city, state, and ZIP code) | 32.d) Date filed (month, day, year) |
|---|---|
| | |
| | 32.e) Has a decision been issued? |
| | ☐ Yes (attach a copy)     ☐ No |

Optional Form 283 (Rev 10/94)
MSPB

| 33.a) Have you, or anyone in your behalf, filed a formal grievance with your agency concerning this matter, under a negotiated grievance procedure provided by a collective bargaining agreement?<br><br>☐ *Yes  (attach a copy)*     ☒ *No* | 33.b) Date filed *(month, day, year)* |
|---|---|
| 33.c) If yes, place filed *(agency, number and street, city, state, and ZIP code)* | 33.d) Has a decision been issued?<br><br>☐ *Yes  (attach a copy)*     ☐ *No* |
| | 33.e) If yes, date issued *(month, day, year)* |

## Part V Hearing

34. You may have a right to a hearing on this appeal.  If you do not want a hearing, the Board will make its decision on the basis of the documents you and the agency submit, after providing you and the agency with an opportunity to submit additional documents.

**Do you want a hearing?**     ☒ *Yes*          ☐ *No*

If you choose to have a hearing, the Board will notify you where and when it is to be held.

## Part VI Reduction In Force

### INSTRUCTIONS

Fill out this part only if you are appealing from a Reduction in Force.  Your agency's personnel office can furnish you with most of the information requested below.

| 35. Retention group and sub-group | 36. Service computation date<br><br>(as adjusted)<br>July 29, 1976 | 37.a) Has your agency offered you another position rather than separating you?<br><br>☐ *Yes*          ☒ *No* |
|---|---|---|
| 37.b) Title of position offered | 37.c) Grade of position offered | 37.d) Salary of position offered<br><br>$            per |
| 37.e) Location of position offered | | 37.f) Did you accept this position?<br><br>☐ *Yes*          ☐ *No* |

38. Explain why you think you should not have been affected by the Reduction In Force.  *(Explanations could include:  you were placed in the wrong retention group or sub-group; an error was made in the computation of your service computation date; competitive area was too narrow; improperly reached for separation from competitive level; an exception was made to the regular order of selection; the required number of days notice was not given; you believe you have assignment [bump or retreat] rights; or any other reasons.  Please provide as much information as possible regarding each reason.)*

   See response to Questions 27 and 32 herein.



United States
Department of
Agriculture

Office of the
Assistant Secretary
for Administration

Office of
Civil Rights

1400 Independence
Avenue SW

Washington, DC
20250

**United States Department of Agriculture**
**Office of Civil Rights**

| | |
|---|---|
| Lisa McCall,<br>    Complainant,<br><br>            v.<br><br>Ann M. Veneman,<br>Secretary,<br>Department of Agriculture,<br>    Agency. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

USDA Complaint No. 990582

## Final Agency Decision

### Introduction

In accordance with the Equal Employment Opportunity Commission (EEOC) regulations at 29 C.F.R. §1614.110(b), this is the final decision of the United States Department of Agriculture (USDA) on this complaint.

### Issue Presented

The issue presented herein is whether the Complainant was discriminated against on the basis of her race (Black) and color (Black) when (1) she was separated from her employment due to a Reduction in Force on April 27, 1997; (2) she was not placed on the Re-employment Priority List; (3) she was subjected to a pattern of harassment prior to her separation which included assignment of duties, insufficient work space and verbal abuse by her supervisor; and, (4) she was not selected for a GS-5 position that was exempt from the Reduction in Force.

### Factual Background

The Complainant initially contacted an EEO Counselor on May 14, 1998. On April 12, 1999, the complaint was accepted for processing and investigation. On March 9, 2001, a copy of the Report of Investigation (ROI) was forwarded to the Complainant. Because the complaint involves an allegation that is appealable to the Merit System Protection Board (MSPB), the complaint is governed by 29 C.F.R. §1614.302 as a mixed case. Therefore, this office is issuing a final decision pursuant to 29 C.F.R. §1614.110.

The Complainant, race and color (Black), was employed as a Community Development Assistant, GS-1104-4 in the Haynesville, Alabama Office until it closed in November 1996 and was then transferred to the Luverne, Alabama Office.

The Complainant stated that she was separated from her employment due to a Reduction in Force (RIF) in April 1997. She further stated that her race and color (Black) were factors in her RIF because White employees in lower grades were not separated from employment.

The Complainant stated that she applied for a GS-5 position in Mobile, Alabama prior to the effective date of the RIF and that a White Native American was selected. She stated that the position was exempt from the RIF and that her race and color were factors in her non selection. The Complainant alleged that job announcements would be sent by email to the various offices and were always sent late to the Luverne Office.

The Complainant stated that after the RIF, she began applying for various secretarial positions. However, she continued to hear that she was not eligible for priority consideration because she was not on the Re-employment Priority List (RPL). The Complainant alleged that she was told by the personnel manager that she was on the list. The Complainant stated that all of the White employees that were separated in the RIF are working at the agency and that she and another Black employee are not.

The Complainant stated that she was subjected to a pattern of harassment prior to her separation when some of her duties were removed, she was given insufficient work space, and she was verbally abused by her supervisor. The Complainant stated that in December 1996, she was the time keeper and that in a meeting, her supervisor announced that she would no longer be the time keeper and those duties were assigned to the Loan Technician who is White. She stated that she continued to keep track of the time because the new time keeper was abusing her own time.

The Complainant stated that in February 1997, her supervisor told her to file all of the annual statements and to send some of the files to St. Louis. She maintained that the White employee was to perform that task.

The Complainant alleged that she and another Black employee did not have office furniture, phones or a computer in the relocated office. She stated that they had a table, chair and typewriter and that a phone and computer were necessary in order to perform the work. She further stated that White employees with the same title had office furniture.

The Complainant stated that her supervisor used an angry tone when he spoke to her and the other Black employee. She stated that he did not use that tone with White employees. She also stated that while employed in the Haynesville Office, she conducted an interest credit review on a delinquent borrower, the borrower complained and she was reprimanded by her supervisor.

The Personnel Management Specialist, GS-12 (White), stated that the Restructuring Plan, which determined which positions would be retained, was developed by a committee including the State Director, Program Directors, Rural Development Directors and others.

She stated that the selection for the GS-5 position for which the Complainant was not selected was made by the State Director. She stated that the State Director generally made selections on the basis of the application without conducting interviews. She stipulated that the Complainant and the Selectee were the only applicants and the Selectee was chosen. She further stated that job announcements were always sent out to all of the offices across the state. She maintained that prior to the actual 1997 RIF, the agency conducted a mock RIF in which all employees were sent copies of the notices and paperwork used in a real RIF. She stated that during the mock RIF, office personnel traveled the state conducting training sessions explaining the RIF process and the Re-employment opportunities. She stated that to be placed on the Re-employment Priority List (RPL), employees were to return a form to her. She stated that the Complainant did not attend the seminar. She stated that the RPL form was sent to the Complainant several times and that the Complainant did not sign the form until April 27, 1998, and that it was received in her office on May 26, 1998. She stated that the Complainant was placed on the RPL on May 27, 1998. She stipulated that even though the Complainant did not return the RPL form for more than a year after the RIF, her name was on the informal Re-employment list maintained in the State Office. She stipulated that both the RPL and the informal list only required the agency to notify separated employees of vacancies for permanent positions at the same grade and in the same commuting area for which the employee was separated. Also, the RPL and informal lists only provide priority for a period of two (2) years after the RIF. She stated that no permanent GS-4 positions within the Complainant's commuting area have been available since the RIF.

The Community Assistant, GS-5 (White) stated that she was employed in the Luverne, Alabama Office until the RIF. She stated that she is currently employed by the Agency as a Community Program Assistant, GS-4 in the Andalusia Office in Montgomery, Alabama. She stated that she does not think she sent the RPL form after the RIF, but it was possible. She also stated that she may have received a call from the Agency about a temporary position, not the position she has now, in the past year. She reported that she called and inquired about the temporary position that was due to become available in the Andalusia, Alabama Office. She maintained that she had a desk when the Complainant moved to the Luverne, Alabama Office. She stated that the Complainant may have had a workstation, however, she did not have a desk. She further stated that there was insufficient room in the office for everyone after the consolidation. She maintained that she never heard the supervisor speak to the Complainant in a hostile tone.

The Rural Development Specialist, GS-12 (White) stated that he was the supervisor in the Haynesvillle, Alabama Office until it closed in November 1996, and was the supervisor in the Luverne, Alabama Office from March 1997 through June 1997. He stated that he does not recall who kept the time records or if that responsibility was transferred from one employee to another. He further stated that he did not recall telling the Complainant to file annual statements and send files to St. Louis, but stated that it did not sound like an unreasonable directive. He stated that he did not recall telling the Complainant to move heavy files. He stated that when tasks were to be done, he told whoever was available and that work was not assigned according to an employee's race or color. He stated that when the Complainant worked at the Haynesville Office, she was prompt but had some difficulty calculating, tracking payments and writing letters. He stated that after the transfer to the Luverne Office, the Complainant sat at her table all day and did nothing. He stated

3

that he gave her assignments and she would not perform them. He stated that he let it go because
she would be subject to the RIF a month later.

The County Loan Technician, GS-7 (White) stated that the Rural Development Specialist asked her
to take over from the Complainant the task of time keeper because she was at a higher grade. She
stated that the other GS-4 (Black) was the back up time keeper. She stated that she did not recall the
supervisor asking the Complainant to move heavy files or furniture and that she moved most of the
files herself because the Complainant refused to do anything after being notified of the RIF. She
further stated that she never observed the supervisor speaking to the Complainant in a hostile
manner. She stated that she retired on January 1, 2001, after 31 years of service.

The former Community Development Manager, GS-12 (Black) stated that he was the manager in
the Luverne Office from 1995 to January 1997. He stated that he was instructed in 1996 to close the
Haynesville Office and transfer three (3) employees to the Luverne Office. He stated that after the
relocation, there were seven (7) employees in the office. He stated he was responsible for assigning
work spaces to the relocated employees. He maintained that the space was limited and that he
arranged the employees as best he could. He stated that while the Complainant and another
employee (Black) did not have phones or a computer on their desks, they had access to a computer
in the corner of the room. He further stated that he arranged the tables so that they would have some
privacy.

### Analysis and Findings

A claim of disparate treatment is examined under the three-part analysis first enunciated in
McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973). For the Complainant to prevail,
she must first establish a prima facie case of discrimination by presenting facts that, if unexplained
reasonably give rise to an inference of discrimination, i.e., that a prohibited consideration was a
factor in the adverse employment action. McDonnell Douglas Corporation v. Green, 411 U.S. at
802; Furnco Construction Corp. v. Waters, 438 U.S. 567 (1978). The burden then shifts to the
agency to articulate a legitimate nondiscriminatory reason for its actions. Texas Department of
Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). Once the agency has met its burden, the
Complainant bears the ultimate responsibility to persuade the fact finder, by a preponderance of the
evidence, that the agency acted on the basis of a prohibited reason. St. Mary's Honor Center v.
Hicks, 509 U.S. 502 (1993).

In order to establish a prima facie case of disparate treatment based on the above stated bases, the
Complainant must show that: (1) she was a member of a protected class under Title VII; (2) she was
subjected to unfair or adverse terms and conditions of employment; and (3) employees similarly
situated, and outside her protected class, were dissimilarly treated.

However, although the initial inquiry in a discrimination case usually focuses on whether the
Complainant has established a prima facie case, following this order of analysis is unnecessary when
the agency has articulated a legitimate nondiscriminatory reason for its actions. Washington v.
Department of the Navy, EEOC Petition No. 0300056 (May 31, 1990). In such cases, the inquiry

4

shifts from whether the Complainant has established a prima facie case to whether she has demonstrated, by a preponderance of the evidence, that the agency's reasons for its actions were merely a pretext for discrimination. Id.; See also, United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 713-17 (1983). Therefore, in the present case, we will bypass the prima facie stage of the analysis and focus on whether the Complainant has demonstrated, by a preponderance of the evidence, that the agency's explanation for its action was a pretext for discrimination based on race and color.

The agency has rebutted the inference of discrimination with the explanation it offered for its actions. Specifically, the agency presents evidence that the Complainant's separation from employment was due to a Reduction in Force (RIF) and that the Complainant's position was abolished.

On the issue of non-selection, the record reflected that there were two (2) applicants, including the Complainant. A review of the applications for both candidates reflected a more detailed response from the Selectee when describing her duties and accomplishments.

In addition, according to the Qualifications Analysis for Vacancy Announcement AL-96-07, the Complainant's application was rated as poor. Also, the Complainant's performance rating for 1995 was "marginal" and the Selectee's performance rating for 1995 was "fully successful."

According to the record, a GS-4/5 position became available in Bay Minette on March 17, 1997. However, the Complainant did not apply and the position was filed with a work trainee at the GS-1 level on January 4, 1998.

The record reflected that the restructuring plan identified the positions to be retained, one of which was a Community Development Assistant, GS-4/5. The employees were placed on a Retention List in an order determined by their service computation date with years added for performance. This performance element was based on an average of their last three (3) years performance appraisals. As a result, an employee with more seniority was retained. The record reflected that the Complainant was lowest on the retention list.

The record does not support a finding of discrimination based upon the Complainant's race or color. Nor does the record indicate that the Complainant's race or color was a factor in her placement on the retention list or her being separated during the RIF.

In order to prevail, the Complainant must demonstrate that the agency's reasons are pretextual. That is, the Complainant must show that the agency's actions are unworthy of credence or that the agency was more likely motivated by discrimination because of her race and color. In that regard, the Complainant makes several assertions: The Complainant reported that she was always told when she called that she was on the RPL and that she never received any calls about any jobs. The Complainant stated that all of the White employees who were separated in the RIF are back working at the agency. However, the Complainant acknowledged that some of these employees are in temporary positions.

The Personnel Management Specialist stated that even though the Complainant did not return the RPL form for over a year after the RIF, her name was on the informal Re-employment list.

The agency reported that the RPL and the informal lists only provide priority for a two (2) year period after the RIF and that no permanent GS-4 positions within the Complainant's commuting area have been available since the RIF. The record does not reflect that the Complainant would have accepted temporary employment had it been available.

The record reflected that prior to the RIF in April 1997, there were seven (7) employees in the Luverne Office including the Complainant. Three (3) were Black and four (4) were White. After the RIF, there were two (2) employees in the office, both of whom were White. Additionally, two employees, one (1) White and one (1) Black, were promoted out of the Luverne Office and were not subjected to the RIF. Of the four (4) Luverne Office employees subjected to the RIF, two (2) were White and two (2) were Black.

After a careful review of the record, we find that the record is insufficient to support a finding of discrimination based upon race or color. Specifically, the record supports the agency's nondiscriminatory reason and no evidence of pretext is apparent.

Harassment of an employee that would not occur but for the employee's race or color is unlawful, if it is sufficiently severe or pervasive. McKinney v. Dole, 765 F.2nd 1129, 1138-1139 (D.C. Cir. 1985). A single incident or group of isolated incidents will not be regarded as discriminatory harassment unless the conduct is severe. Walker v. Ford Motor Co., 684 F.2d 1355, 1358 (11th Cir. 1982). Whether the harassment is sufficiently severe to trigger a violation of Title VII, must be determined by looking at all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993).

The Complainant identifies the following as examples of harassment:

(1)   **Assignment of duties.** The Complainant stated that she was notified that she would no longer be the time keeper and that the time keeping assignment was given to a White employee.

(2)   **Insufficient work space.** The Complainant stated she did not have a desk, phone or computer.

(3)   **Verbal abuse by her supervisor.** The Complainant stated that her supervisor used an angry tone when speaking to her.

According to the record, the Complainant's duties as time keeper were reassigned to an employee with a higher grade level. The time keeper is White and the back-up time keeper is Black.

The record also reflected that when the three (3) Haynesville Office employees were transferred to the Luverne Office, there was insufficient space and the work tables for the Complainant (Black) and another employee (Black) were arranged to provide them with some privacy. The Luverne Office had three (3) enclosed offices and two (2) desks in the open. The supervisor stated that he used one office and the two (2) technicians used the other. One (1) office was already occupied by two (2) technicians. The desks were occupied by two (2) clerks already assigned to the Luverne Office. The only available space left was the open space where he placed two (2) tables for the Complainant and the other clerk, both Black. The Community Development Manager stated that the room was too small to run additional cables for computers and that it was not practical to order new furniture or install computers and phones since he had been notified that the RIF was coming. According to the record, it would not have been reasonable or fair to remove current clerks from their desks in order to accommodate newly arriving clerks from an office that had closed. The record reflected that the office space was very limited and does not support a finding that office space was allotted based upon race.

The record reflected that none of the witnesses reported knowledge of the supervisor using a hostile or angry tone with the Complainant or others.

Based on the totality of the circumstances, the evidence of record does not establish that the Complainant was subjected to actions that were sufficiently severe or pervasive to create a hostile work environment. The evidence is insufficient to conclude that the supervisor used a tone that was angry or hostile toward the Complainant. The totality of the circumstances shows that the Complainant felt harassed by merely perceived actions, as well as actions that in fact occurred. However, the record does not show that the harassment perceived by the Complainant was caused by actions which were sufficiently severe or pervasive to create a hostile work environment, and that but for her race and color, the harassment would not have occurred. Thus, no finding of harassment based on race or color has been made.

## Conclusion

The weight of the evidence is insufficient to establish a case of discrimination based on race or color. Accordingly, a finding of no discrimination and no relief or corrective action is warranted.

## Appeal Rights

This is the final decision of the Department of Agriculture on the cited complaint or complaints. The following rights are available to challenge this decision:

## Appeal to the MSPB

A Notice of Appeal may be filed with the MSPB (not the EEOC) at any time up to thirty (30) calendar days after receipt of this decision. MSPB Form 283 may be used to indicate what is being appealed. A copy of the form is provided with this decision. Such notice should be addressed to:

7

**Merit Systems Protection Board**
**Atlanta Regional Office**
**401 W. Peachtree Street, NW, Suite 1050**
**Atlanta, GA. 30308**

If there is an attorney of record, the thirty (30) calendar day time limit within which to appeal shall be calculated from the date of receipt of this decision by the attorney. In all other cases, the thirty (30) calendar day time limit within which to appeal shall be calculated from the date of receipt of this decision.

An appeal shall be deemed filed on the day it is postmarked, or in the absence of a postmark, on the date it is received by the MSPB.

At the same time information is provided to the MSPB, there **must** be a certification that a copy of the submission **has been** submitted to the Employment Adjudication Division and the date and method of submission. The address is provided below:

**United States Department of Agriculture**
**Employment Adjudication Division**
**1400 Independence Avenue, S.W. - Mail Stop 9440**
**Washington, DC 20250-9440**

**Civil Action in Federal District Court**

You also have the right to file a civil action in an appropriate United States District Court. If you choose to file a civil action, you may do so:

(1)     within thirty(30) calendar days of receipt of this decision, unless an appeal is filed with the MSPB; or

(2)     within thirty (30) calendar days of receipt of a notice of the final decision or action taken by the MSPB, if you do not file a petition for consideration with the EEOC; or for consideration is filed with the EEOC; or

(3)     within thirty (30) calendar days of receipt of notice that the EEOC has determined not to consider the decision of the MSPB; or

(4)     within thirty (30) calendar days of receipt of the notice that the EEOC concurs with the decision of the MSPB; or

(5)     within thirty (30) calendar days of receipt of notice that the MSPB concurs in, and adopts in whole, the decision of the EEOC; or

8

(6)     if the MSPB does not concur with the decision of the EEOC, and the MSPB reaffirms its initial decision or reaffirms its initial decision with a revision, within thirty (30) calendar days of the receipt of notice of the decision of the Special Panel; or

(7)     after one hundred and twenty (120) calendar days from the date of filing an appeal with the MSPB if the MSPB has not yet made a decision; or,

(8)     after one hundred and eighty (180) calendar days from the date of filing a petition for reconsideration with the EEOC if there is no decision by the EEOC, reconsideration decision by the MSPB or decision by the Special Panel.

You must name the person who is the official agency head or department head as the defendant. Agency or department means the national organization, and not just the local office, facility, or department in which you might work. Do not name just the agency or department. In your case, you must name **Ann M. Veneman, Secretary of Agriculture**, as the defendant. You must also state the official title of the agency head or department head. Failure to provide the name or official title of the agency head or department head may result in dismissal of your case.

If you decide to file a civil action under Title VII or under the Rehabilitation Act, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Count permit you to file the action without payment of fees, costs or other security. **The grant or denial of the request is within the sole discretion of the Court.** Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and civil action MUST BE FILED WITHIN THE STATUTORY TIME LIMITS STATED IN THIS NOTICE.

Unless an appeal is filed with the MSPB, failure to file a civil action within thirty (30) calendar days may result in the dismissal of your civil action. Filing a law suit under 29 C.F.R.§1614.310 shall terminate processing an appeal before the MSPB or the EEOC. If a civil action is filed subsequent to filing an appeal with the MSPB, the parties are requested to notify the MSPB in writing. If a civil action is filed subsequent to filing a request for consideration with the EEOC, the parties are requested to notify the EEOC in writing.

David Winningham
Acting Director
Office of Civil Rights

_____ Date

Attachment

9

**U.S. DEPARTMENT OF AGRICULTURE**
**OFFICE OF CIVIL RIGHTS**
**Complaint of Employment Discrimination**

**Complainant:**            Lisa McCall

**Complaint No.:**          990582

**Agency:**                 Rural Development

### Certificate of Service

I certify that the documents listed were sent on this date by certified mail (unless otherwise specified) to:

Complainant:                Lisa McCall
                            P.O. Box 20924
                            Montgomery, Alabama 36120

Complainant's Representative:   None

Agency Head:                James C. Alsop *(interoffice mail)*
                            Acting Administrator
                            Room 5014-S, South Building

Agency Liaison:             Cheryl Prejean-Greaux *(interoffice mail)*
                            Director, Civil Rights
                            Rural Development
                            Ag Box 0703
                            NASA Building, Third Floor

Enclosures:    Final Decision dated   **AUG 2 1 2001**
               EEOC Form 573 (to the Complainant and representative, if any, only)

Certified by: _Ronda Buckman_ Date _Aug 21, 2001_

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the attached Notice of Appeal and Appeal Form on the United States Department of Agriculture, Employment Adjudication Division, 1400 Independence Avenue, S.W.-Mail Stop 9440, Washington, DC 30350-9400, by US Mail, properly addressed and with proper postage this the 1st day of October, 2001.

_Lisa McCall_
Lisa McCall

## NOTICE OF APPEAL/PETITION
## TO THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## OFFICE OF FEDERAL OPERATIONS

1. Appellant's name (Last, First, Middle): [Please Print or Type]

McCall, Lisa

2. Home/mailing address:                    Social Security No.: 422 - 92 5043

P.O. Box 20924, Montgomery, AL 36124

3. Name and address of attorney or other representative, if any:

4. Appellant's daytime telephone number (incl. area code):    5. Representative's Telephone Number

(334) 286-9674

6. Has the appellant filed a formal complaint with his/her agency?

☐ No    ☒ Yes - indicate the Agency's complaint number 99 0582/RD

7. Name of the agency being charged with discrimination:

U.S. Department of Agriculture

8. Location of the duty station or local facility in which the complaint arose:

Luverne, Alabama

9. Has a FINAL DECISION been issued by the agency, an Arbitrator, FLRA, or MSPB on this complaint?

☒ YES (Indicate the date the appellant RECEIVED it August 30, 2001 and ATTACH A COPY.)

☐ NO

☐ This appeal alleges a breach of a settlement agreement.

10. Has a complaint been filed on this same matter with this Commission, another agency, or through any other administrative or collective bargaining procedure?

☐ NO  ☒ YES (Indicate the agency or procedure, complaint/docket number, and attach a copy, if appropriate). USDA/EEO    CASE No. 990582/RD

11. Has a civil action (lawsuit) been filed in connection with this complaint?

☒ NO  ☐ YES (ATTACH A COPY OF THE CIVIL ACTION FILED)

12. Signature of appellant or appellant's representative   13. Date:

Lisa McCall                              1 October 2001

**NOTICE:** Before mailing this appeal, be sure to <u>attach a copy of the final decision</u> from which you are appealing, if one has been issued. Any comments or brief in support of the appeal MUST be filed with the Commission AND with the agency within 30 days of the date this appeal is filed. Making a knowingly false statement on this form is punishable by law. See 18 USC § 1001. PRIVACY ACT STATEMENT ON REVERSE SIDE.

EEOC FORM 573 REV 4-92



United States
Department of
Agriculture

Office of the
Assistant Secretary
for Administration

Office of
Civil Rights

1400 Independence
Avenue SW

Washington, DC
20250

**United States Department of Agriculture**
**Office of Civil Rights**

)
Lisa McCall,                          )
    Complainant,                 )
)
              v.        )        USDA Complaint No. 990582
)
Ann M. Veneman,                 )
Secretary,                             )
Department of Agriculture,    )
    Agency.                          )
)

## Final Agency Decision

### Introduction

In accordance with the Equal Employment Opportunity Commission (EEOC) regulations at 29 C.F.R. §1614.110(b), this is the final decision of the United States Department of Agriculture (USDA) on this complaint.

### Issue Presented

The issue presented herein is whether the Complainant was discriminated against on the basis of her race (Black) and color (Black) when (1) she was separated from her employment due to a Reduction in Force on April 27, 1997; (2) she was not placed on the Re-employment Priority List; (3) she was subjected to a pattern of harassment prior to her separation which included assignment of duties, insufficient work space and verbal abuse by her supervisor; and, (4) she was not selected for a GS-5 position that was exempt from the Reduction in Force.

### Factual Background

The Complainant initially contacted an EEO Counselor on May 14, 1998. On April 12, 1999, the complaint was accepted for processing and investigation. On March 9, 2001, a copy of the Report of Investigation (ROI) was forwarded to the Complainant. Because the complaint involves an allegation that is appealable to the Merit System Protection Board (MSPB), the complaint is governed by 29 C.F.R. §1614.302 as a mixed case. Therefore, this office is issuing a final decision pursuant to 29 C.F.R. §1614.110.

The Complainant, race and color (Black), was employed as a Community Development Assistant, GS-1104-4 in the Haynesville, Alabama Office until it closed in November 1996 and was then transferred to the Luverne, Alabama Office.

The Complainant stated that she was separated from her employment due to a Reduction in Force (RIF) in April 1997. She further stated that her race and color (Black) were factors in her RIF because White employees in lower grades were not separated from employment.

The Complainant stated that she applied for a GS-5 position in Mobile, Alabama prior to the effective date of the RIF and that a White Native American was selected. She stated that the position was exempt from the RIF and that her race and color were factors in her non selection. The Complainant alleged that job announcements would be sent by email to the various offices and were always sent late to the Luverne Office.

The Complainant stated that after the RIF, she began applying for various secretarial positions. However, she continued to hear that she was not eligible for priority consideration because she was not on the Re-employment Priority List (RPL). The Complainant alleged that she was told by the personnel manager that she was on the list. The Complainant stated that all of the White employees that were separated in the RIF are working at the agency and that she and another Black employee are not.

The Complainant stated that she was subjected to a pattern of harassment prior to her separation when some of her duties were removed, she was given insufficient work space, and she was verbally abused by her supervisor. The Complainant stated that in December 1996, she was the time keeper and that in a meeting, her supervisor announced that she would no longer be the time keeper and those duties were assigned to the Loan Technician who is White. She stated that she continued to keep track of the time because the new time keeper was abusing her own time.

The Complainant stated that in February 1997, her supervisor told her to file all of the annual statements and to send some of the files to St. Louis. She maintained that the White employee was to perform that task.

The Complainant alleged that she and another Black employee did not have office furniture, phones or a computer in the relocated office. She stated that they had a table, chair and typewriter and that a phone and computer were necessary in order to perform the work. She further stated that White employees with the same title had office furniture.

The Complainant stated that her supervisor used an angry tone when he spoke to her and the other Black employee. She stated that he did not use that tone with White employees. She also stated that while employed in the Haynesville Office, she conducted an interest credit review on a delinquent borrower, the borrower complained and she was reprimanded by her supervisor.

The Personnel Management Specialist, GS-12 (White), stated that the Restructuring Plan, which determined which positions would be retained, was developed by a committee including the State Director, Program Directors, Rural Development Directors and others.

2

She stated that the selection for the GS-5 position for which the Complainant was not selected was made by the State Director. She stated that the State Director generally made selections on the basis of the application without conducting interviews. She stipulated that the Complainant and the Selectee were the only applicants and the Selectee was chosen. She further stated that job announcements were always sent out to all of the offices across the state. She maintained that prior to the actual 1997 RIF, the agency conducted a mock RIF in which all employees were sent copies of the notices and paperwork used in a real RIF. She stated that during the mock RIF, office personnel traveled the state conducting training sessions explaining the RIF process and the Re-employment opportunities. She stated that to be placed on the Re-employment Priority List (RPL), employees were to return a form to her. She stated that the Complainant did not attend the seminar. She stated that the RPL form was sent to the Complainant several times and that the Complainant did not sign the form until April 27, 1998, and that it was received in her office on May 26, 1998. She stated that the Complainant was placed on the RPL on May 27, 1998. She stipulated that even though the Complainant did not return the RPL form for more than a year after the RIF, her name was on the informal Re-employment list maintained in the State Office. She stipulated that both the RPL and the informal list only required the agency to notify separated employees of vacancies for permanent positions at the same grade and in the same commuting area for which the employee was separated. Also, the RPL and informal lists only provide priority for a period of two (2) years after the RIF. She stated that no permanent GS-4 positions within the Complainant's commuting area have been available since the RIF.

The Community Assistant, GS-5 (White) stated that she was employed in the Luverne, Alabama Office until the RIF. She stated that she is currently employed by the Agency as a Community Program Assistant, GS-4 in the Andalusia Office in Montgomery, Alabama. She stated that she does not think she sent the RPL form after the RIF, but it was possible. She also stated that she may have received a call from the Agency about a temporary position, not the position she has now, in the past year. She reported that she called and inquired about the temporary position that was due to become available in the Andalusia, Alabama Office. She maintained that she had a desk when the Complainant moved to the Luverne, Alabama Office. She stated that the Complainant may have had a workstation, however, she did not have a desk. She further stated that there was insufficient room in the office for everyone after the consolidation. She maintained that she never heard the supervisor speak to the Complainant in a hostile tone.

The Rural Development Specialist, GS-12 (White) stated that he was the supervisor in the Haynesvillle, Alabama Office until it closed in November 1996, and was the supervisor in the Luverne, Alabama Office from March 1997 through June 1997. He stated that he does not recall who kept the time records or if that responsibility was transferred from one employee to another. He further stated that he did not recall telling the Complainant to file annual statements and send files to St. Louis, but stated that it did not sound like an unreasonable directive. He stated that he did not recall telling the Complainant to move heavy files. He stated that when tasks were to be done, he told whoever was available and that work was not assigned according to an employee's race or color. He stated that when the Complainant worked at the Haynesville Office, she was prompt but had some difficulty calculating, tracking payments and writing letters. He stated that after the transfer to the Luverne Office, the Complainant sat at her table all day and did nothing. He stated

3

that he gave her assignments and she would not perform them. He stated that he let it go because she would be subject to the RIF a month later.

The County Loan Technician, GS-7 (White) stated that the Rural Development Specialist asked her to take over from the Complainant the task of time keeper because she was at a higher grade. She stated that the other GS-4 (Black) was the back up time keeper. She stated that she did not recall the supervisor asking the Complainant to move heavy files or furniture and that she moved most of the files herself because the Complainant refused to do anything after being notified of the RIF. She further stated that she never observed the supervisor speaking to the Complainant in a hostile manner. She stated that she retired on January 1, 2001, after 31 years of service.

The former Community Development Manager, GS-12 (Black) stated that he was the manager in the Luverne Office from 1995 to January 1997. He stated that he was instructed in 1996 to close the Haynesville Office and transfer three (3) employees to the Luverne Office. He stated that after the relocation, there were seven (7) employees in the office. He stated he was responsible for assigning work spaces to the relocated employees. He maintained that the space was limited and that he arranged the employees as best he could. He stated that while the Complainant and another employee (Black) did not have phones or a computer on their desks, they had access to a computer in the corner of the room. He further stated that he arranged the tables so that they would have some privacy.

## Analysis and Findings

A claim of disparate treatment is examined under the three-part analysis first enunciated in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973). For the Complainant to prevail, she must first establish a prima facie case of discrimination by presenting facts that, if unexplained reasonably give rise to an inference of discrimination, i.e., that a prohibited consideration was a factor in the adverse employment action. McDonnell Douglas Corporation v. Green, 411 U.S. at 802; Furnco Construction Corp. v. Waters, 438 U.S. 567 (1978). The burden then shifts to the agency to articulate a legitimate nondiscriminatory reason for its actions. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). Once the agency has met its burden, the Complainant bears the ultimate responsibility to persuade the fact finder, by a preponderance of the evidence, that the agency acted on the basis of a prohibited reason. St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993).

In order to establish a prima facie case of disparate treatment based on the above stated bases, the Complainant must show that: (1) she was a member of a protected class under Title VII; (2) she was subjected to unfair or adverse terms and conditions of employment; and (3) employees similarly situated, and outside her protected class, were dissimilarly treated.

However, although the initial inquiry in a discrimination case usually focuses on whether the Complainant has established a prima facie case, following this order of analysis is unnecessary when the agency has articulated a legitimate nondiscriminatory reason for its actions. Washington v. Department of the Navy, EEOC Petition No. 0300056 (May 31, 1990). In such cases, the inquiry

shifts from whether the Complainant has established a prima facie case to whether she has demonstrated, by a preponderance of the evidence, that the agency's reasons for its actions were merely a pretext for discrimination. Id.; See also, United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 713-17 (1983). Therefore, in the present case, we will bypass the prima facie stage of the analysis and focus on whether the Complainant has demonstrated, by a preponderance of the evidence, that the agency's explanation for its action was a pretext for discrimination based on race and color.

The agency has rebutted the inference of discrimination with the explanation it offered for its actions. Specifically, the agency presents evidence that the Complainant's separation from employment was due to a Reduction in Force (RIF) and that the Complainant's position was abolished.

On the issue of non-selection, the record reflected that there were two (2) applicants, including the Complainant. A review of the applications for both candidates reflected a more detailed response from the Selectee when describing her duties and accomplishments.

In addition, according to the Qualifications Analysis for Vacancy Announcement AL-96-07, the Complainant's application was rated as poor. Also, the Complainant's performance rating for 1995 was "marginal" and the Selectee's performance rating for 1995 was "fully successful."

According to the record, a GS-4/5 position became available in Bay Minette on March 17, 1997. However, the Complainant did not apply and the position was filed with a work trainee at the GS-1 level on January 4, 1998.

The record reflected that the restructuring plan identified the positions to be retained, one of which was a Community Development Assistant, GS-4/5. The employees were placed on a Retention List in an order determined by their service computation date with years added for performance. This performance element was based on an average of their last three (3) years performance appraisals. As a result, an employee with more seniority was retained. The record reflected that the Complainant was lowest on the retention list.

The record does not support a finding of discrimination based upon the Complainant's race or color. Nor does the record indicate that the Complainant's race or color was a factor in her placement on the retention list or her being separated during the RIF.

In order to prevail, the Complainant must demonstrate that the agency's reasons are pretextual. That is, the Complainant must show that the agency's actions are unworthy of credence or that the agency was more likely motivated by discrimination because of her race and color. In that regard, the Complainant makes several assertions: The Complainant reported that she was always told when she called that she was on the RPL and that she never received any calls about any jobs. The Complainant stated that all of the White employees who were separated in the RIF are back working at the agency. However, the Complainant acknowledged that some of these employees are in temporary positions.

The Personnel Management Specialist stated that even though the Complainant did not return the RPL form for over a year after the RIF, her name was on the informal Re-employment list.

The agency reported that the RPL and the informal lists only provide priority for a two (2) year period after the RIF and that no permanent GS-4 positions within the Complainant's commuting area have been available since the RIF. The record does not reflect that the Complainant would have accepted temporary employment had it been available.

The record reflected that prior to the RIF in April 1997, there were seven (7) employees in the Luverne Office including the Complainant. Three (3) were Black and four (4) were White. After the RIF, there were two (2) employees in the office, both of whom were White. Additionally, two employees, one (1) White and one (1) Black, were promoted out of the Luverne Office and were not subjected to the RIF. Of the four (4) Luverne Office employees subjected to the RIF, two (2) were White and two (2) were Black.

After a careful review of the record, we find that the record is insufficient to support a finding of discrimination based upon race or color. Specifically, the record supports the agency's nondiscriminatory reason and no evidence of pretext is apparent.

Harassment of an employee that would not occur but for the employee's race or color is unlawful, if it is sufficiently severe or pervasive. McKinney v. Dole, 765 F.2nd 1129, 1138-1139 (D.C. Cir. 1985). A single incident or group of isolated incidents will not be regarded as discriminatory harassment unless the conduct is severe. Walker v. Ford Motor Co., 684 F.2d 1355, 1358 (11th Cir. 1982). Whether the harassment is sufficiently severe to trigger a violation of Title VII, must be determined by looking at all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993).

The Complainant identifies the following as examples of harassment:

(1)     **Assignment of duties**. The Complainant stated that she was notified that she would no longer be the time keeper and that the time keeping assignment was given to a White employee.

(2)     **Insufficient work space**. The Complainant stated she did not have a desk, phone or computer.

(3)     **Verbal abuse by her supervisor**. The Complainant stated that her supervisor used an angry tone when speaking to her.

According to the record, the Complainant's duties as time keeper were reassigned to an employee with a higher grade level. The time keeper is White and the back-up time keeper is Black.

6

The record also reflected that when the three (3) Haynesville Office employees were transferred to the Luverne Office, there was insufficient space and the work tables for the Complainant (Black) and another employee (Black) were arranged to provide them with some privacy. The Luverne Office had three (3) enclosed offices and two (2) desks in the open. The supervisor stated that he used one office and the two (2) technicians used the other. One (1) office was already occupied by two (2) technicians. The desks were occupied by two (2) clerks already assigned to the Luverne Office. The only available space left was the open space where he placed two (2) tables for the Complainant and the other clerk, both Black. The Community Development Manager stated that the room was too small to run additional cables for computers and that it was not practical to order new furniture or install computers and phones since he had been notified that the RIF was coming. According to the record, it would not have been reasonable or fair to remove current clerks from their desks in order to accommodate newly arriving clerks from an office that had closed. The record reflected that the office space was very limited and does not support a finding that office space was allotted based upon race.

The record reflected that none of the witnesses reported knowledge of the supervisor using a hostile or angry tone with the Complainant or others.

Based on the totality of the circumstances, the evidence of record does not establish that the Complainant was subjected to actions that were sufficiently severe or pervasive to create a hostile work environment. The evidence is insufficient to conclude that the supervisor used a tone that was angry or hostile toward the Complainant. The totality of the circumstances shows that the Complainant felt harassed by merely perceived actions, as well as actions that in fact occurred. However, the record does not show that the harassment perceived by the Complainant was caused by actions which were sufficiently severe or pervasive to create a hostile work environment, and that but for her race and color, the harassment would not have occurred. Thus, no finding of harassment based on race or color has been made.

## Conclusion

The weight of the evidence is insufficient to establish a case of discrimination based on race or color. Accordingly, a finding of no discrimination and no relief or corrective action is warranted.

## Appeal Rights

This is the final decision of the Department of Agriculture on the cited complaint or complaints. The following rights are available to challenge this decision:

## Appeal to the MSPB

A Notice of Appeal may be filed with the MSPB (not the EEOC) at any time up to thirty (30) calendar days after receipt of this decision. MSPB Form 283 may be used to indicate what is being appealed. A copy of the form is provided with this decision. Such notice should be addressed to:

7

**Merit Systems Protection Board**
**Atlanta Regional Office**
**401 W. Peachtree Street, NW, Suite 1050**
**Atlanta, GA. 30308**

If there is an attorney of record, the thirty (30) calendar day time limit within which to appeal shall be calculated from the date of receipt of this decision by the attorney. In all other cases, the thirty (30) calendar day time limit within which to appeal shall be calculated from the date of receipt of this decision.

An appeal shall be deemed filed on the day it is postmarked, or in the absence of a postmark, on the date it is received by the MSPB.

At the same time information is provided to the MSPB, there **must** be a certification that a copy of the submission **has been** submitted to the Employment Adjudication Division and the date and method of submission. The address is provided below:

**United States Department of Agriculture**
**Employment Adjudication Division**
**1400 Independence Avenue, S.W. - Mail Stop 9440**
**Washington, DC 20250-9440**

**Civil Action in Federal District Court**

You also have the right to file a civil action in an appropriate United States District Court. If you choose to file a civil action, you may do so:

(1)    within thirty(30) calendar days of receipt of this decision, unless an appeal is filed with the MSPB; or

(2)    within thirty (30) calendar days of receipt of a notice of the final decision or action taken by the MSPB, if you do not file a petition for consideration with the EEOC; or for consideration is filed with the EEOC; or

(3)    within thirty (30) calendar days of receipt of notice that the EEOC has determined not to consider the decision of the MSPB; or

(4)    within thirty (30) calendar days of receipt of the notice that the EEOC concurs with the decision of the MSPB; or

(5)    within thirty (30) calendar days of receipt of notice that the MSPB concurs in, and adopts in whole, the decision of the EEOC; or

8

(6) if the MSPB does not concur with the decision of the EEOC, and the MSPB reaffirms its initial decision or reaffirms its initial decision with a revision, within thirty (30) calendar days of the receipt of notice of the decision of the Special Panel; or

(7) after one hundred and twenty (120) calendar days from the date of filing an appeal with the MSPB if the MSPB has not yet made a decision; or,

(8) after one hundred and eighty (180) calendar days from the date of filing a petition for reconsideration with the EEOC if there is no decision by the EEOC, reconsideration decision by the MSPB or decision by the Special Panel.

You must name the person who is the official agency head or department head as the defendant. Agency or department means the national organization, and not just the local office, facility, or department in which you might work. Do not name just the agency or department. In your case, you must name **Ann M. Veneman, Secretary of Agriculture**, as the defendant. You must also state the official title of the agency head or department head. Failure to provide the name or official title of the agency head or department head may result in dismissal of your case.

If you decide to file a civil action under Title VII or under the Rehabilitation Act, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Count permit you to file the action without payment of fees, costs or other security. **The grant or denial of the request is within the sole discretion of the Court.** Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and civil action <u>MUST BE FILED WITHIN THE STATUTORY TIME LIMITS STATED IN THIS NOTICE.</u>

Unless an appeal is filed with the MSPB, failure to file a civil action within thirty (30) calendar days may result in the dismissal of your civil action. Filing a law suit under 29 C.F.R. §1614.310 shall terminate processing an appeal before the MSPB or the EEOC. If a civil action is filed subsequent to filing an appeal with the MSPB, the parties are requested to notify the MSPB in writing. If a civil action is filed subsequent to filing a request for consideration with the EEOC, the parties are requested to notify the EEOC in writing.

David Winningham
Acting Director
Office of Civil Rights

August 17, 2001
Date

Attachment

9

## U.S. DEPARTMENT OF AGRICULTURE
## OFFICE OF CIVIL RIGHTS
### Complaint of Employment Discrimination

**Complainant:**          Lisa McCall

**Complaint No.:**         990582

**Agency:**               Rural Development

### Certificate of Service

I certify that the documents listed were sent on this date by certified mail (unless otherwise specified) to:

Complainant:                    Lisa McCall
                                P.O. Box 20924
                                Montgomery, Alabama 36120

Complainant's Representative:   None

Agency Head:                    James C. Alsop *(interoffice mail)*
                                Acting Administrator
                                Room 5014-S, South Building

Agency Liaison:                 Cheryl Prejean-Greaux *(interoffice mail)*
                                Director, Civil Rights
                                Rural Development
                                Ag Box 0703
                                NASA Building, Third Floor

Enclosures:   Final Decision dated   **AUG 2 1 2001**
              EEOC Form 573 (to the Complainant and representative, if any, only)

Certified by: _Ronda Buckmon_ Date _Aug 21, 2001_



First Class Mail

First Class Mail

First Class Mail

U.S. POSTAGE
PAID
MONTGOMERY, AL
36111 01
OCT 01
AMOUNT
$5.09
00013837-05

30308



0000

UNITED STATES
POSTAL SERVICE





CERTIFIED MAIL

7099 3220 0002 9964 1379

LISA MCCALL
POST OFFICE BOX 20924
MONTGOMERY AL 36124

RETURN RECEIPT
REQUESTED

MERIT SYSTEM PROTECTION BOARD
ATLANTA REGIONAL OFFICE
401 W. PEACHTREE STREET, NW
SUITE 1050
ATLANTA GA 30308

