## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| LISA McCALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) Civil Action No.: | **02:06-cv-039-MHT** |
| | ) | |
| MIKE JOHANNS, Secretary, | ) | |
| United States Department | ) | |
| of Agriculture, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Comes now the Defendant, by and through Leura G. Canary, United States Attorney for the Middle District of Alabama, and provides this Honorable Court with a memorandum brief in support of its Motion to Dismiss, or in the alternative, for Summary Judgment.

## I.  INTRODUCTION

The plaintiff has instituted suit against the Secretary, Department of Agriculture asserting that she was the victim of unlawful discrimination on the basis of her race in violation of Title 42, United States Code, Section 2000e-16.  The plaintiff also claims that she was retaliated against for engaging in activities protected by the above cited statutes. The defendant asserts that the plaintiff has failed to state a claim upon which relief can be granted and that the plaintiff was not the victim of unlawful discrimination or retaliation.

## II.  STATEMENT OF THE CASE

**A.      Statement of Facts**

**1)      The plaintiff's employment history with the defendant**

The plaintiff began her employment with the Farmers Home Administration

(FmHA) of the United States Department of Agriculture (USDA) on July 29, 1990.[1]

Initially employed as a Clerk Typist Trainee, the plaintiff entered duty as GS-1.[2]  Having

been previously promoted from GS-1 to GS-2 and from GS-2 to GS-3, the plaintiff was

promoted from GS-3 to GS-4 in August, 1993.[3]  As part of a reorganization of the USDA,

the plaintiff was reassigned to the Rural Economic and Community Development Agency

(RD) in October, 1995.[4]  Although, maintaining her GS-4 pay grade, the plaintiff's

position title was changed to Community Development Assistant.[5]  At all times the

plaintiff's duty station had been Hayneville, located in Lowndes County, Alabama.[6]  At

all relevant times the plaintiff's coworkers in Hayneville were Arlesa Hunter, African-

---

[1]      Defendant's Exhibit 21 (DEX 21) blocks 22 and 4, Standard Form 50, "Notification of Personnel Action,"effective 07/29/90, as to Lisa McCall.

[2]      Id, blocks 16 and 18 .

[3]      Defendant's Exhibit 22 (DEX 22) blocks 1, 4, 7, 10, 15, 16, and 18, Standard Form 50, "Notification of Personnel Action."

[4]      Defendant's Exhibit 23 (DEX 23) blocks 1, 4, 22, and 45, Standard Form 50, "Notification of Personnel Action."

[5]      Id., blocks 15, 16 and 18.

[6]      DEX's 21, 22 and 23, block 39.

American female and Patsy Williams, caucasian female.[7]  The plaintiff was supervised by

Carnell McAlpine, African-American male from the date of her hire until October, 1995,

when Art Powers, caucasian male, took over as the County Supervisor in Hayneville.[8]

In 1996 it was determined that RD, as part of a reorganization of the agency

necessitated by budget cuts for fiscal year 1997, would undergo a consolidation of offices

and functions as well as reduction in force (RIF).[9]  In November 1996, the Hayneville

office was consolidated with the Luverne, Crenshaw County, Alabama office of the RD

and the plaintiff, as well as Ms. Hunter and Ms. Williams, was transferred to RD.[10]

Already employed in the Luverne office were Betty Blackman, Sandra Welch and Sonya

Davenport, all caucasian females. [11]  At the time of the Hayneville / Luverne merger,

Quinton X. Harris, African-American male, became the supervisor of the merged office

in Luverne.[12]  In the early months of 1997, Mr. Powers replaced Mr. Harris as the

---

[7]     Defendant's Exhibit 26 (DEX 26), deposition of Lisa McCall, p. 14, lines 13-24, p. 70, lines 7-9

[8]     Id., p. 66, lines 12-19;  Defendant's Exhibit 27 (DEX 27) sworn statement of Art Powers, taken 01/30/01, ¶¶ 1 and 2.

[9]     Defendant's Exhibit 24 (DEX 24), letter dated July 8, 1996, from Horace Horn to all USDA Rural Development Employees;  Defendant's Exhibit 29 (DEX 29), declaration of Barbara Bennet, dated April 13, 2007, p. 1.

[10]     Defendant's Exhibit 25 (DEX 25) blocks 1, 4, 22 & 39, Standard Form 50, "Notification of Personnel Action."

[11]     DEX 26, p. 19, lines 7-25; p. 20, lines 1-3.

[12]     Defendant's Exhibit 28 (DEX 28), sworn statement of Quinton X. Harris, taken 01/31/01, ¶¶ 1 & 2; DEX 26, p. 20, lines 4-7.

supervisor of the Luverne office.[13]

**2)       Statement of facts regarding the reduction in force (RIF)**

Due to budget cuts for fiscal year 1997, senior officials within the USDA and the RD, specifically, determined that it would be necessary to consolidate offices of RD and to conduct a RIF.  A group of senior employees developed, drafted and finally implemented the plan for consolidation and the RIF.  This group of senior employees was made up of both African-Americans and caucasians, as well as males and females.[14]

In determining which offices to consolidate, which would, in turn, directly affect the personnel in each office consolidated, the group sought to equalize caseloads, the geographic area served and the number of staff that would be necessary to provide customer service.  At no times during their discussions was anything discussed, mentioned and/or suggested that any one person, or the group as a whole, was harboring any racial and/or  retaliatory animus against the plaintiff specifically, or any employee generally, of the agency.[15]

As required, the plan was approved by the Under Secretary of USDA on June 27, 1996.  The approved plan called for consolidation of offices such that the number of local offices ws reduced from 33 to 18.  Similarly, the approved plan provided that the full time

---

[13]       DEX 26, p. 20, lines 4-12; DEX 27, ¶ 2.

[14]       DEX 29, pp. 1-2.

[15]       Id., p. 2.

work force would be reduced from approximately 192 to approximately 152 employees.[16]

Regarding the case in point, the Lowndes Local Office (Hayneville) was authorized 5 employees prior to the reorganization:

> 1 - GS-11 Community Development Manager;
>
> 1 - GS-7 Community Development Technician;
>
> 1 - GS-5 Community Development Assistant; and
>
> 2 - GS-4 Community Development Assistants (1 vacant).

The Crenshaw Local Office (Luverne) was authorized 5 employees as well:

> 1 - GS-11 Community Development Manager;
>
> 1 - GS-9 Community Development Technician (vacant);
>
> 1 - GS-6 Community Development Assistant; and
>
> 2 - GS-5 Community Development Assistants.

Following the consolidation, the Crenshaw Local Office (Luverne) was authorized 3 employees to the service the agency's customers in Lowndes, Butler and Crenshaw counties:

> 1 - GS-11 Community Development Manager;
>
> 1 - GS-6/7 Community Development Technician; and
>
> 1 - GS-4/5 Community Development Assistant.[17]

---

[16]    DEX 29, p. 2.

[17]    Id.

The RIF was done in accordance with the procedures set forth in 5 C.F.R. 351, *et seq.*. As required therein, a competitive area was developed.  It was determined that the competitive area for the Crenshaw Local Office was to be made up of Butler, Crenshaw and Lowndes counties.  Therefore, the 6 persons employed in the 2 offices in the positions below Community Development Manager were required to compete against each other for the 2 positions that remained in the one consolidated office.[18]

The next step was to determine the retention standing of each employee then assigned to each of the agency offices then existing in the competitive area.  As there were only 2 offices within the competitive area, the employees of the Crenshaw Local Office and and the Lowndes Local Office were ranked for retention purposes.  The retention standing of each employee was determined on the basis of their tenure of employment, veteran preference, length of service and performance.  As to performance, each employee's tenure of employment was adjusted based on their performance ratings for the three preceding years.  The higher the employee's performance ratings, the more years that were added to his/her tenure of employment.[19]

Ordinarily, each employee at each GS level is ranked against the other employees of the same GS level within the competitive area.  In this particular situation, however, the position in the Crenshaw Local Office for which the plaintiff was eligible was ranked

---

[18]     DEX 29, pp. 2-3.

[19]     Id., pp. 3-4.

a GS-4/5 position. Consequently, the position was to be offered in the first instance to the highest ranked of either an existing GS-5, or a GS-4, given the GS-4 was then otherwise eligible for promotion to GS-5. In this instance, the plaintiff, a GS-4; Ms. Arlesa Hunter, a GS-5; and Ms. Betty Reynolds, a GS-5, competed for the one GS-4/5 position. On the basis of the criteria discussed above, Ms. Reynolds ranked first, Ms. Hunter ranked second, and the plaintiff ranked third. In accordance with the regulations, Ms. Reynolds was to be offered the position first, and if she declined Ms. Hunter was next. Only if both of these employees declined the position was the plaintiff possibly eligible to accept the position, contingent on whether she met the qualifications to be promoted.[20]

In November 1996 the RIF process began and the plaintiff was identified as an employee most likely to be released.[21] On or about January 23, 1997, the plaintiff was officially advised that her employment with the defendant was being terminated pursuant to the RIF.[22] The plaintiff was released from federal employment on April 27, 1997.[23]

Statewide, only 12 employees of the RD were ultimately separate from federal service pursuant to the RIF. Of these 12 persons, 7 were caucasian, while the remaining 5

---

[20]     DEX 29, p. 4.

[21]     Defendant's Exhibit 2 (DEX 2), November 7, 1996 letter to Lisa McCall, SUBJECT: Certification of Expected Separation

[22]     Defendant's Exhibit 3(DEX 3), January 23, 1997 letter to Lisa McCall, SUBJECT: Specific Reduction in Force Notice.

[23]     Defendant's Exhibit 31 (DEX 31) blocks 1, 4, 5-B, Standard Form 50, "Notification of Personnel Action."

were African-American.[24]

### 3)    Statement of facts regarding the re-employment priority list (RPL).

The plaintiff was provided a Specific Reduction in Force Notice in January 1997, which outlined the various benefits and programs for which she was eligible as a result of the RIF.[25] Amongst the programs discussed was the RPL and an application for inclusion on the list was attached to the Notice.[26]

If wishing to exercise her rights under the RPL, the plaintiff was required, per federal regulations, to apply for placement on the RPL within "30 calendar days after the RIF separation date." 5 C.F.R. § § 303.202(a)(1). Persons who made timely application for the RPL were entitled to a priority consideration for any future position with the defendant which became available within the commuting area of the office from which they were released and which was at the same GS grade that they held at the time of their removal. 5 C.F.R. §§ 330.206(1) and (3). Employees removed pursuant to RIF, who timely apply remain on the RPL for a period of two years from the date on which their name is entered on the list. 5 C.F.R. §330.204(b).

The records do not reflect that the plaintiff applied for the RPL within the 30 day window mandated by the regulations. Moreover, the evidence in the record indicates that

---

[24]    Defendant's Exhibit 30 (DEX 30), chart entitled "Alabama - Personnel or downgraded effective 4/27/97.

[25]    DEX 3.

[26]    Id., "Attachment,", p. 3

the plaintiff's first contact anyone within the agency regarding her re-employment status was June 8, 1997.[27]   In February 1998, a second RPL application was mailed to the plaintiff but apparently not received due to the plaintiff having moved.[28]   The form was again mailed to the plaintiff in April, 1998, but was not received back from her until the end of May, 1998.[29]   The plaintiff was placed on the RPL, on May 27, 1998.[30]

Although the plaintiff did not appear on the RPL until May 27, 1998, her name was maintained on an informal list kept by Ms. Price.[31]   Furthermore, no permanent GS-4 position became available between the RIF and January 26, 2001, within the commuting area applicable to the plaintiff.[32]

**4)    Statement of facts regarding the plaintiff's claim of hostile environment.**

The plaintiff alleges that during the time period she was supervised by Mr. Powers in the Luverne office she was subjected a pattern of harassment.[33]   Particularly she has

---

[27]    Defendant's Exhibit 19 (DEX 19), Report of Investigation, "Received 8/29/00", pages MC000140, 142, 143, 144.

[28]    Defendant's Exhibit 32 (DEX 32), sworn statement of Barbara Price, taken January 26, 2001, ¶ 9.

[29]    Id.

[30]    Id.

[31]    Id., ¶ 10.

[32]    Id.

[33]    Amended Complaint, ¶¶ 6, 7, 17, 20.

alleged that Mr. Powers often referred to "you people" when addressing her and that on the basis of his tone and demeanor she felt he didn't like her and/or he didn't want her in the office with him.[34]

In November 1996, the office in Hayneville and Luverne merged into the space previously occupied by the Luverne staff.  Thus the staff and material of one office was added to the staff and material already present at the other.[35]  The assignment of work space and equipment was done by Quinton X. Harris, who was the supervisor at the Luverne office in November, 1996.[36]

Within the Luverne facility there were three enclosed offices and two desks located in the office's open area.[37]  Two of the offices were already occupied by existing Luverne employees as were the two desks in the open area of the facility.[38]  Upon the arrival of the Hayneville staff, Patsy Williams, a GS-6 technician was assigned the open office while the plaintiff and the other GS-4 employee, Arlesa Hunter were supplied tables in the open area.[39]  Given space considerations and the impending RIF, Mr. Harris

---

[34]    DEX 26, p. 71, lines 5-13, p. 72, lines 6-12; p. 77, lines 2-5; p. 143, lines 6-17, 22-25; p. 144, lines 1- 24

[35]    DEX 28, ¶ 3.

[36]    DEX 28, ¶ 2.

[37]    DEX 28, ¶ 3.

[38]    DEX 28, ¶ 3.

[39]    DEX 28, ¶ 3.

determined that running additional communication cables and acquiring additional

furniture were not practical.[40]

Along with the merger of staffs came the merger of files. As a part of this, the

plaintiff was asked to pack and prepare for shipping to St. Louis, MO., those files of the

Hayneville office that needed to be shipped.[41] The plaintiff was also instructed to merger

the files of the Hayneville office into the existing files of the Luverne office.[42] The

plaintiff has asserted that the manner in which she was asked to perform these tasks, as

opposed to requirement that she perform them was harassing.[43]

The plaintiff has also asserted that her duties as office timekeeper were taken from

her by Mr. Powers, although there had been no problems with her performance.[44] Mr.

Powers, however, reassigned the task to Ms. Williams due to her higher GS grade and

appointed the plaintiff as her backup.[45]

### 2)    Relevant Administrative Proceedings

The plaintiff initiated the administrative process of her complaints via several

---

[40]    DEX 28, ¶ 3.

[41]    DEX 26, p. 128, lines 15-25; p. 129, lines 1-25; p. 130, lines 1-8.

[42]    DEX 26, p. 130, lines 20-25; p. 131, lines 1-20.

[43]    DEX 26, p. 132, lines 20-25; p. 133, lines 1-6.

[44]    DEX 26, p. 146, lines 10-25; p. 147, lines 1-25; p. 148, lines 1-20.

[45]    Defendant's Exhibit 33 (DEX 33), sworn statement of Patsy Williams, taken
February 7, 2001, ¶ 4.

letters that were sent over a period of time to various officials with USDA.  The plaintiff

was afforded review of her claims by the USDA, Office of Civil Rights, without regard to

the timeliness of her complaints.  The agency finding no discrimination and  determining

that the matter was a mixed case appealable to the Merit Systems Protection Board

(MSPB), issued a final agency decision on the accepted claims on August 21, 2001.[46]

The plaintiff thereafter appealed the decision to the MSPB, which split her claims

into two separate cases.[47]  Her claims regarding her re-employment rights were filed

under case MSPB case no. AT-3443-0020-I-1,[48] while her claims regarding the propriety

of the RIF were filed under case no. AT-0351-0019-I-1.[49]

In an Initial Decision dated January 10, 2002, the MSPB dismissed the AT-0351-

0019-I-1 appeal regarding the RIF, with prejudice, on motion of the plaintiff's counsel.

The decision became a final judgment of the MSPB on February 14, 2002 and was not

thereafter appealed.[50]

---

[46]    Defendant's Exhibit 34 (DEX 34), Final Agency Decision, dated August 21, 2001.

[47]    Defendant's Exhibit 35 (DEX 35), US Merit Systems Protection Board, Appeal Form, dated 10 October 2001.

[48]    Defendant's Exhibit 36 (DEX 36), US Merit Systems Protection Board, Docket Number  AT-3443-0020-I-1, "Initial Decision," dated October 29, 2001.

[49]    Defendant's Exhibit 37 (DEX 37), US Merit Systems Protection Board, Docket Number  AT-0351-0019-I-1, "Initial Decision," dated January 10, 2002.

[50]    Id.

### III.  THE COMPLAINT

The plaintiff asserts two causes of action in her complaint.  In Count 1, the

plaintiff asserts that she was discriminated against on the basis of race, ostensibly, when

she was not placed on the RPL until May, 1998.  The plaintiff also appears to allege that

she was subjected to harassment on the basis of her race by her supervise from

November, 1996, by her supervisor Art Powers until her separation in April, 1997.  In

Count 2 the plaintiff alleges she was the victim of unlawful retaliation for engaging in

actions protected by Title 42, United States Code, Section 2000e-3.

For the following reasons, the defendant asserts that he is entitled to summary

judgment as there is no genuine issue of material fact.

### IV.  ARGUMENTS AND CITATIONS OF AUTHORITY

**A.    *THE PLAINTIFF'S CLAIMS OF RACE DISCRIMINATION PERTAINING TO THE REDUCTION IN FORCE ARE ARE BARRED BY THE DOCTRINE OF RES JUDICATA.***

The plaintiff's claims regarding her separation pursuant to the RIF are barred by

the doctrine of res judicata.  As previously cited the plaintiff appealed her claim regarding

the propriety of her separation pursuant to the RIF on October 1, 2001.[51]  Thereafter on

January 8, 2001, the plaintiff's counsel filed a Notice of Dismissal of MSPB Appeal.[52]

The plaintiff's intent to dismiss the MSPB appeal with prejudice was confirmed by the

---

[51]    DEX 35, DEX 37.

[52]    Defendant's Exhibit 38 (DEX 38), "Appellant's Notice of Dismissal of MSPB Appeal," signed January 8, 2002.

plaintiff's counsel in a telephone conversation with Administrative Judge Richard P. Klein the following day.[53]

"Res judicata, or more properly claim preclusion, is a judicially made doctrine with the purpose of both giving finality to parties who have already litigated a claim and promoting judicial economy; it bars claims that could have been litigated as well." In re Atlanta Retail, Inc., 456 F.3d 1277, 1285 (11th Cir. 2006) citing, Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). The four elements necessary for the application of the doctrine are: 1) the prior judgment must be valid in that it was rendered by a court of competent jurisdiction and in accordance with the requirements of due process; 2) the judgment must be final and on the merits; 3) there must be identity of both parties or their privies; and 4) the later proceeding must involve the same cause of action as involved in the earlier proceeding. In re Atlanta Retail, Inc., 456 F.3d at 1285, quoting, In re Justice Oaks II, Ltd., 898 F.2d 1544, 1550 (11th Cir.1990). "When all of the requirements of claim preclusion are satisfied, 'the judgment or decree upon the merits in the first case is an absolute bar to the subsequent action or suit between the same parties ... not only in respect of every matter which was actually offered and received to sustain the demand, but also as to every [claim] which might have been presented.' " Justice Oaks II, 898 F.2d at 1552 (quoting Baltimore S.S. Co. v. Phillips, 274 U.S. 316, 319, 47 S.Ct. 600, 602, 71 L.Ed. 1069 (1927)).

---

[53]     DEX 37.

All four elements are present with regards to the plaintiff's claims regarding the RIF. First, the MSPB has been held to be a court of competent jurisdiction whose decisions are rendered with requisite due process. Gibson v. United States Postal Service, 380 F.3d 886 (5th Cir. 2004) (noting that appellants before the MSPB have the right to a hearing and to be represented by counsel per 5 U.S.C. § 7701, and that any errors by the MSPB can be corrected on appeal to the Federal Circuit per 5 U.S.C. § 7703(c) (1996)).

Second, an order of dismissal with prejudice is a final judgment on the merits. Womack v. American Tel. & Tel. Co., Inc., 982 F.Supp. 1460, 1463 (M.D.Ala.1997), citing, Citibank, N.A. v. Data Lease Financial Corp., 904 F.2d 1498, 1501-1502 (11th Cir.1990)(A stipulation of dismissal with prejudice, at any stage of a judicial proceeding, normally constitutes a final judgment on the merits which bars a later suit on the same cause of action.); also citing, Hunt v. Hawthorne Assoc., 119 F.3d 888, 911 n. 63 (11th Cir.1997). Furthermore, the parties in the two suits are identical and the latter proceeding, like the first, involves the question of whether discrimination played any part in the plaintiff's separation pursuant to the RIF.

Finally, "[w]hen an administrative agency is acting in a judicial capacity and resolves the disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose." United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966). The plaintiff had every opportunity to litigate her

claims regarding the RIF at the MSPB.  Having chosen voluntarily to dismiss them with prejudice, she chose to allow them to lapse.  Her claims regarding the RIF are therefore due to be and should be dismissed in this forum.

**B.    THE SUMMARY JUDGMENT STANDARD IN TITLE VII CASES.**

A plaintiff in an employment discrimination case is not entitled to a full trial on the merits if summary judgment is appropriate.  Summary judgment may be granted based upon the pleadings, supplemental affidavits, and facts developed during the proceedings. See Chalk v. Secretary of Labor, 565 F.2d 764 (D.C. Cir.), cert. denied, 435 U.S. 945 (1978).

Where no genuine dispute exists as to any material fact, summary judgment is required.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Mingus Constructors, Inc. v. United States, 812 F.2d 1387 (Fed. Cir. 1987).  A genuine issue of material fact is one that would change the outcome of the litigation.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  "The burden on the moving party may be discharged by 'showing' -- that is, pointing out to the [Court] -- that there is an absence of evidence to support the non-moving party's case."  Sweats Fashions, Inc. v. Pannill Knitting Company, Inc., 833 F.2d 1560, 1563 (Fed. Cir. 1987), quoting Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  (Emphasis in original).

Once the moving party has met its burden, the non-movant may not rest on mere allegations but must instead proffer specific facts showing that a genuine issue for trial

exists.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Thus, to avoid summary judgment, the plaintiff must state specific facts or present some

objective evidence that would enable the court to find that he is entitled to relief under

Title VII; the nonmoving party may not rely upon the bald assertions contained in his

pleadings.  See Blount v. Alabama Cooperative Extension Service, 869 F.Supp. 1543,

1553 (M.D. Ala. 1994) (a "plaintiff's allegations, opinions, and conclusory statements are

insufficient to create an issue of fact as to show intent to discriminate.")

In the employment law context, once the plaintiff has presented a prima facie case

of his claim and the employer has articulated legitimate, nondiscriminatory reasons for its

actions, a plaintiff is entitled to survive summary judgment only "if there is sufficient

evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of

the employer's proffered reasons for its challenged action."  Combs v. Plantation Patterns,

106 F.3d 1519, 1529 (11th Cir. 1997).

In this case, the record confirms the absence of any genuine issue of material fact

on each of the plaintiff's claims and the defendants' entitlement to judgment as a matter

of law.

**1)    The Allocations of Proof and Persuasion under Title VII**

To recover under Title VII, a federal employee must establish by a preponderance

of the evidence that the employer's actions were motivated by intentional discrimination

and/or retaliation.  St. Mary's Honor Center v. Hicks, 113 S.Ct. 2742, 2749 (1993); Coutu

v. Martin Bd. of County Commissioners, 47 F.3d 1068, 1074 (11th Cir. 1995).  A plaintiff may prove discriminatory or retaliatory intent by direct or circumstantial evidence.

Where the plaintiff seeks to prove his case through circumstantial evidence, a shifting of burden analysis applies.  Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).  Under this analysis, the plaintiff must first establish a prima facie case of impermissible discrimination and/or retaliation.  Burdine, 450 U.S. at 252-53 (1981).  If the plaintiff establishes a prima facie case of discrimination, "the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason'" for the employer's actions.  Burdine, 450 U.S. at 253 (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).

The burden on the employer is one of production rather than proof or persuasion.  St. Mary's; 113 S.Ct. at 2747; Burdine, 450 U.S. at 254 ("The defendant need not persuade the court that it was actually motivated by the proffered reasons").  Should the defendant meet its burden of production, "the McDonnell Douglas framework -- with its presumptions and burdens -- is no longer relevant."  St. Mary's, 113 S.Ct. at 2749.  "The presumption, having fulfilled its role of forcing the defendant to come forward with some response, simply drops out of the picture. (citation omitted.)  The defendant's 'production' (whatever its persuasive effect) having been made, the trier of fact proceeds to decide the ultimate question: whether plaintiff has proven 'that the defendant intentionally discriminated against [him]'" because of his race, sex or retaliation.  Id., at 2749-50.  The

"ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Id. at 2746-47.

The sequence of proof and burdens set forth in McDonnell Douglas, Burdine and St. Mary's also apply to retaliation claims under § 2000e-3. See Meeks v. Computer Associates Intern., 15 F.3d 1013, 1021 (11th Cir. 1994). Therefore, if the defendant produces a legitimate nondiscriminatory reason for the adverse action, there is no longer a presumption of retaliation. See St. Mary's, 113 S.Ct. at 2749; Furnco Construction Corp. v. Waters, 438 U.S. 567, 577-78 (1978). Where, as here, there are legitimate nondiscriminatory reasons proffered by the defendant, the plaintiff bears the ultimate burden of demonstrating that the employer's proffered explanations are pretext for retaliation and that the employer's actions were prompted by an impermissible motive. Tomka v. Seiler Corp., 66 F.3d 1295, 1308 (2d Cir. 1995); See Meeks, 15 F.3d at 1021.

**B.    *THE PLAINTIFF CANNOT DEMONSTRATE SHE WAS DISCRIMINATED AGAINST ON THE BASIS OF HER RACE.***

**1)    The plaintiff cannot demonstrate a prima facie case of race discrimination in regards to the RIF.**

"In a reduction-in-force (RIF) case and where a position is eliminated in its entirety: the plaintiff establishes a *prima facie* case [race] by demonstrating (1) that she was in a protected [racial] group and was adversely affected by an employment decision, (2) that she was qualified for her current position or to assume another position at the time of discharge, and (3) evidence by which a fact finder could reasonably conclude that the

employer intended to discriminate on the basis of [race] in reaching that decision." <u>Smith</u> <u>v. J. Smith Lanier & Co.</u>, 352 F.3d 1342, 1344 (11th Cir. 2003), *citing*, <u>Jameson v. Arrow</u> <u>Co.</u>, 75 F.3d 1528, 1531-32 (11th Cir.1996).  Without waiving its right to require proof of all the elements of a claim of racial discrimination at a trial of this cause, the defendant herein only argues that the plaintiff cannot demonstrate with sufficient evidence to sustain her prima facie burden that the defendant intended to discriminate on the basis of race when making its RIF decisions.

As discussed above, the decision to RIF any employee of the defendant was done by the application of substantially objective criteria established by federal regulation which was tailored by senior employees, both caucasian and African-American, male and female, to address the needs of the defendant.  In fact, the plaintiff does not dispute the overall accuracy of the information regarding her that was utilized in determining her ranking for retention.[54]

The end result of the RIF was a total of 11 employees, more than half of which were caucasian, were removed from federal service.  Moreover, the matter of race was not discussed within the planning sessions of the senior employees and "did not focus on any particular person, persons or group of persons on the basis of race."[55]  Quite frankly, the plaintiff can point to not a single piece of admissible, circumstantial or direct,

---

[54]    DEX 26, p. 95, lines 4-25; p. 96, lines, 1-26; p. 27, lines 1-12.

[55]    DEX 29, p. 5.

evidence that any of the decision makers in that process brought to the table any racial animus generally, or towards her specifically.  Similarly, to the degree that the plaintiff suggests that Art Powers and/or John Sasser played some role in the decisions which led to her removal, she cannot produce substantial evidence, direct or circumstantial, that they had any voice, input or say, directly or indirectly, into any decisions regarding the status of her employment.

**2)**   **The defendant had a legitimate non-discriminatory reason for discharging the plaintiff from its employ.**

If the plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to articulate some legitimate nondiscriminatory reason for the adverse action.  Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir.1991)   This is a burden of production.  Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 255 (1981).  The defendant does not need to persuade the court that it was actually motivated by the proffered reasons.  Id. at 254.

As set forth in the Statement of Facts, the defendant asserts that it removed the plaintiff from her employment pursuant to a duly approved reduction in force that was conducted in accord with the applicable federal regulations.  The defendant further asserts that the reasons for the RIF were budgetary and wholly unrelated and/or in any way predicated upon any prohibited animus, particularly the plaintiff's race and/or protected expressions.

Having proffered legitimate non-discriminatory reasons for the actions taken, Plaintiff must now present substantial evidence that raises a genuine issue of material fact as to Defendant's reasons.  In the absence of such, Defendant is entitled to summary judgement.

**3)    The defendant had a legitimate non-discriminatory reason for not placing the plaintiff on the RPL until April, 1998.**

A plaintiff establishes a prima facie case of disparate treatment by showing that he was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class.  Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004), *citing,*, McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824,36 L.Ed.2d 668 (1973); Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir.1997).  For the purposes of this motion and this motion alone, the defendant does not dispute that the plaintiff was a qualified member of a protected class, who was subjected to an adverse employment action when she did not get placed on the RPL before April 1998, and that similarly situated employees outside her protected class were placed on the RPL sooner.

The defendant does state, however, that the plaintiff's failure to return her RPL registration form was the legitimate non-discriminatory reason for the delay in placing her on the RPL.  As presented above, the plaintiff was provided a Specific Reduction in Force Notice in January 1997, which also contained the required RPL Registration Sheet as an

attachment. Even assuming the plaintiff did not receive this exact form, the letter itself identified the form and sufficient other information to place the plaintiff on notice of steps she needed to take to protect her interests.[56]  Furthermore, the record is clear and indisputable that the plaintiff contacted Ms. Price in February 1998, regarding the form and that same was sent to the plaintiff forthwith, but apparently due to a change in address the form never reached the plaintiff.[57]

Equally indisputable is that the plaintiff again contacted Ms. Price in March, 1998 and again Ms. Price sent an RPL Registration Sheet to the plaintiff who did not, at best, return same to Ms. Price until the end of April, 1998, and at worst, did not return same until May 26, 1998.[58]  It is undisputed that shortly thereafter the plaintiff's name appeared on the RPL.

Having proffered legitimate non-discriminatory reasons for the actions taken, Plaintiff must now present substantial evidence that raises a genuine issue of material fact as to Defendant's reasons.  In the absence of such, Defendant is entitled to summary judgement.

---

[56]      DEX 3.

[57]      DEX 32, ¶ 9.

[58]      DEX 32, ¶ 9; Defendant's Exhibit 4 (DEX 4), USDA Reemployment Priority List Registration Sheet, box 12.

### C.    THE PLAINTIFF CANNOT DEMONSTRATE SHE WAS SUBJECT TO HOSTILE WORK ENVIRONMENT ON THE BASIS OF HER RACE.

The plaintiff has asserted that Art Powers created a hostile working environment by verbally abusing her, assigning her insufficient work space, and assigning her duties that others did not want to do.  More particularly, she alleges that on less than 10 occasions Mr. Powers used the phrase "you people" when addressing her and that on the basis of his tone and demeanor she felt he didn't like her and/or he didn't want her in the office with him.[59]  She submits that she felt harassed when Mr. Powers assigned her duties involving the integration of files from the Hayneville office into those existing in Luverne as well as when he directed her to pack files from the Hayneville office for shipment to a central location.[60]  Similarly, the plaintiff felt she was harassed when her timekeeping responsibilities were transferred by Mr. Powers to Ms. Patsy Williams.[61]  Finally, the plaintiff alleges that she was harassed by assignment of office space and equipment once she moved to Luverne.[62]

"A hostile work environment claim under Title VII is established upon proof that

---

[59]    DEX 26, p. 71, lines 5-13, p. 72, lines 6-12; p. 77, lines 2-5; p. 143, lines 6-17, 22-25; p. 144, lines 1- 24

[60]    DEX 26, p. 128, lines 15-25; p. 129, lines 1-25; p. 130, lines 1-25; p. 131, lines 1-20.

[61]    DEX 26, p. 146, lines 10-25; p. 147, lines 1-25; p. 148, lines 1-21.

[62]    DEX 26, p. 137, lines 5-25; p. 138, lines 1-25; p. 139, lines 1-25; p. 140, lines 1-25; p. 141, lines 1-25; p. 142, lines 1-25; p. 143, lines 1-5.

'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create abusive working environment.'" <u>Miller v. Kenworth of Dothan, Inc.</u>, 277 F.3d 1269, 1275 (11th Cir. 2003), *quoting*, <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993).   To establish a hostile work environment the plaintiff the plaintiff must demonstrate:  (1) that she belongs to a protected group;  (2) that she has been subject to unwelcome harassment;  (3) that the harassment was based on a protected characteristic of the employee, such as race;  (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment;  and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability. <u>Miller v. Kenworth of Dothan, Inc.</u>, 277 F.3d at 1275, citing, <u>Mendoza v. Borden, Inc.</u>, 195 F.3d 1238, 1245 (11th Cir.1999).  For the purposes of this motion and this motion alone, the defendant stipulates that the plaintiff belonged a protected group.

**1)**      **The plaintiff cannot demonstrate that she was subject to unwelcome harassment that was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment.**

In order to prove harassment, Plaintiff  must show that her work place was "permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions her employment and created an abusive

working environment." Harris v. Forklift Sys. Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). "Establishing that harassing conduct was sufficiently severe or pervasive to alter an employee's terms or conditions of employment includes a subjective and an objective component." Harris, 510 U.S. at 21-22. For the purposes of this motion, and this motion alone the defendant does not dispute that the plaintiff subjectively perceived her working environment to be hostile. The defendant, however, submits that the plaintiff cannot demonstrate a hostile environment when viewed objectively. "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 118 S.Ct. 998, 1003, 140 L.Ed.2d 201 (1998)(quoting Harris, 510 U.S. at 23). Analysis of the objective component is fact intensive. Mendoza v. Borden, 195 F.3d 1238, 1246 (11th Cir. 1999). The factors that should be considered by the court in determining whether harassment objectively altered Plaintiff's terms or conditions of employment are: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Mendoza, 195 F.3d at 1246. "The courts should examine the conduct in context, not as isolated acts, and determine under the totality of circumstances whether the harassing conduct is sufficiently severe or pervasive to alter the terms or conditions of the plaintiff's employment and create a

hostile or abusive working environment." Id. "The demanding standards for judging abusive working environments were designed to prevent civil rights statutes from becoming 'general civility code[s],'", and "[a]pplied judiciously, these standards will 'filter out complaints attacking 'ordinary tribulations of the workplace.' " Schwertfager v. City of Boynton Beach, 42 F.Supp.2d 1347, 1366-1367, (S.D.Fla.,1999), *quoting, respectively,* Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201 (1998) and Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct. 2275, 2284, 141 L.Ed.2d 662 (1998) (quoting source omitted).

"Although the court examines the statements and conduct complained of collectively in determining whether they were sufficiently pervasive or severe to constitute disability harassment, the statements or conduct must be related to plaintiff's disability or perceived disability." Stedman v.Bizmart, Inc., 219 F.Supp.2d 1212, 1223 (N.D.Ala.2002), *citing,* Gupta, 212 F.3d at 583. Significantly, "[i]solated and innocuous incidents, even if intentional, will not support a hostile environment claim and are not counted." Id.

First, while the use of the phrase "you people" by Mr. Powers and/or Mr. Sasser, if true, "may be rude, discourteous, and boorish," and display "[a] lack of racial sensitivity," it does not rise to the the level of creating a hostile working environment. Brown v. Green County, Ga., 2007 WL 945144 (M.D.Ga.3/27/2007). After all, "'[d]iscourtesy or rudeness should not be confused with racial harassment [,] and [a] lack of racial

sensitivity does not, alone, amount to actionable harassment.'" <u>Brown v. Green County, Ga.</u>, 2007 WL 945144, *quoting*, <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 787, 118 S.Ct. 2275 (1998).

Second, the assignment of office duties in this case was not such that they could be said to have created an abusive environment. As admitted by the plaintiff, it was not the work that she was asked to do but the manner in which she was asked to do it.[63] Furthermore, the tasks involved were matters arising in the ordinary course of business, not within or without anyone's job description and involved, at least for the most part, the assimilation and distribution of files that had been transferred to the Luverne office along with the plaintiff.[64] Regarding the assignment of the timekeeper duties, the plaintiff can produce no evidence that this was done on the basis of her race or that it was so sever or pervasive to have altered the terms of her employment.

Like the claims regarding the assignment of duties the plaintiff cannot demonstrate that the assignment of workspace and equipment in the Luverne offices was predicated upon her race and/or that it somehow affected the terms and conditions of her employment. In fact the plaintiff admits that she and was moved into an office setting that was already fully occupied by the existing staff of the Luverne office. Moreover, the

---

[63]    DEX 26, p. 132, lines 12-25; p. 133, lines 1-25; p. 134, lines 1-25; p. 135, lines 1-25; p. 136, lines 1-22.

[64]    Id.

defendant saw no reason to expend funds to acquire equipment and / or additional office space to support a number of employees that it knew would soon be removed from federal service and not replaced.[65]

In sum, the acts the plaintiff complains about do not constitute harassment under the objective standard. No single incident, combination of incidents, or the aggregate of the alleged acts complained of described herein is sufficient to constitute a hostile environment on the basis of Plaintiff's race. While Plaintiff may not have liked the aforementioned actions, they do not rise to the level of harassment.

**D.    *PLAINTIFF CANNOT ESTABLISH THAT ANY OF DEFENDANT'S ACTIONS WERE MOTIVATED BY RETALIATORY ANIMUS FOR HER EEO RELATED ACTIVITIES*.**

To establish a prima facie case of retaliation, a plaintiff must show that (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment action. Stavropoulos v. Firestone, 361 F.3d 610, 616 (11th Cir. 2004), *citing,* Bass v. Bd. of County Comm'rs, Orange County, Fla., 256 F.3d 1095, 1117 (11th Cir.2001). Plaintiff cannot establish that her discharge from the defendant's employ in April, 1997 was the result of a desire to retaliate against her on the basis of EEO protected activity. Similarly, she cannot establish that any delay on the part of the defendant's employees in placing her

---

[65]      DEX 27, ¶ 5; DEX 28, ¶ 3.

on the RPL was the result of a retaliatory animus.  Finally, she cannot demonstrate that

any of the alleged harassing actions of defendant's employees was motivated, at least in

part, by a desire to retaliate against the plaintiff for the engaging in the EEO process.

For the purposes of this motion, and this motion alone, the defendant does not

dispute that the plaintiff engaged in protected activity or that her discharge and failure to

be placed on the RPL, to the degree, if any, was the fault of the defendant constitute

adverse employment actions.

### 1) The plaintiff cannot demonstrate a causal connection between her protected activity and her separation from federal service pursuant to the RIF.

"In order to satisfy the 'causal link' prong of a prima facie retaliation case,

[plaintiff] must, at a minimum, generally establish that the defendant was actually aware

of the protected expression at the time the defendant took the adverse employment

action."  Raney v. Vinson Guard Serv., Inc., 120 F.3d 1192, 1197 (11th Cir.1997);

Brungart v. BellSouth Telecomm., Inc., 231 F.3d 791, 799 (11th Cir.2000) (to establish

the causal connection element of a retaliation claim, the plaintiff must "show that the

decision maker was aware of the protected conduct at the time of the adverse employment

action.").

As previously noted the Under Secretary of USDA approved the proposed RIF on

June 27, 1996, and notice of this approval and the RIF plan were sent to each employee of

RD by letter dated July 8, 1996 and signed by Mr. Horace Horn.[66]  On the other hand, the first complaint of discrimination the plaintiff has alleged she filed was a letter to Mr. Horn dated October 29, 1996.[67]

The plan approved on June 27, 1996, was the plan implemented in April 1997, which resulted in the plaintiff's removal from federal service.  In the absence of any evidence that the plan was modified in such a way after October 29, 1996 as to alter the plaintiff's plight, the plaintiff cannot demonstrate a causal connection between her protected expression and the RIF. "A decision maker cannot have been motivated to retaliate by something unknown to him."  Brungart v. BellSouth Telecomm., Inc., 231 F.3d at 799.

To the degree the plaintiff asserts that Messrs. Powers and Sasser influenced the RIF in order to retaliate against the plaintiff for any of her alleged complaints, the plaintiff cannot sufficiently demonstrate the required causal connection.  The plaintiff can only produce speculation and conjecture that either were aware of her complaints and acted in retaliation by seeing to it that she was removed.[68]  Such has been held to be insufficient.  See Hayden v. Atlanta Newspapers, 534 F.Supp. 1166, 1175 (N.D.Ga.1982)

---

[66]     DEX 24.

[67]     Defendant's Exhibit 12 (DEX 12), letter from Lisa McCall to Mr. Horace Horn, dated October 29, 1996.

[68]     DEX 26, p. 97, lines 13-25; p. 98, lines 1-14.

(granting summary judgment where plaintiff alleged that it was "logical" to assume that the person who took adverse action had knowledge of protected activity).

### 2) The defendant had a legitimate non-discriminatory reason for discharging the plaintiff from its employ.

If the plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to articulate some legitimate nondiscriminatory reason for the adverse action. Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir.1991)   This is a burden of production.  Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 255 (1981).  The defendant does not need to persuade the court that it was actually motivated by the proffered reasons.  Id. at 254.

As set forth in the Statement of Facts, the defendant asserts that it removed the plaintiff from her employment pursuant to a duly approved reduction in force that was conducted in accord with the applicable federal regulations.  The defendant further asserts that the reasons for the RIF were budgetary and wholly unrelated and / or in any way predicated upon any prohibited animus, particularly the plaintiff's race and / or protected expressions.

Having proffered legitimate non-discriminatory reasons for the actions taken, Plaintiff must now present substantial evidence that raises a genuine issue of material fact as to Defendant's reasons.  In the absence of such, Defendant is entitled to summary judgement.

**3)    The plaintiff cannot demonstrate a causal connection between her protected activity and her absence from the RPL until May, 1998.**

The plaintiff cannot produce any admissible evidence that Ms. Price was actually aware of any of her alleged complaints of discrimination other than possibly the first one sent to Mr. Horn on or about October 29, 1996.  All other alleged complaints of discrimination were sent to various USDA officials in Washington, D.C. and the plaintiff can produce no evidence that Ms. Price was aware of these letters or that any one who received them communicated the fact of their existence or their content to Ms. Price or anyone else with authority or ability to place or not place the plaintiff on the RPL.  Again, "[a] decision maker cannot have been motivated to retaliate by something unknown to him."  Brungart v. BellSouth Telecomm., Inc., 231 F.3d at 799.

Regarding the October 29, 1996 letter to Mr. Horn, assuming Ms. Price was aware of it, the plaintiff cannot demonstrate a causal connection between it and Ms. Price's actions / inactions.  The causal link element is broadly construed  so that "a plaintiff merely has to prove that the protected activity and the ... [adverse] action are not completely unrelated."  Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir.1998).  "A plaintiff satisfies this element if [s]he provides sufficient evidence" of knowledge of the protected expression and "that there was a close temporal proximity between this awareness and the adverse ... action."  Shotz v. City of Plantation, Fla., 344 F.3d 1161,  1180 n. 3 (11th Cir.2003), *quoting,* Farley v. Nationwide Mut. Ins. Co., 197

F.3d 1322, 1337 (11th Cir. 1999).

A "close temporal proximity" between the protected expression and an adverse action can be sufficient circumstantial evidence of a causal connection for purposes of a prima facie case. *See* <u>Olmsted</u>, 141 F.3d at 1460. The Eleventh Circuit has held that a period as much as one month between the protected expression and the adverse action is not too protracted, while the Supreme Court has noted it must be very close and that a 3-4 months time disparity is to lengthy to sustain a causal connection. <u>Clark County Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001); <u>Wideman v. Wal-Mart Stores, Inc.</u>, 141 F.3d 1453, 1457 (11th Cir.1998), *citing*, <u>Donnellon v. Fruehauf Corp.</u>, 794 F.2d 598, 601 (11th Cir.1986).

Within these parameters it is clear that the plaintiff cannot sustain her burden of demonstrating a causal connection. The only evidence that Ms. Price, arguably at best, had any notice of any claims of discrimination is the October 1996 letter. It was at least 3 months between the date of this letter and the plaintiff being notified of her separation and 6 months from the October 1996 letter and the effective date of the plaintiff's separation. Clearly, the temporal proximity of the two events is too great to allow that alone to sustain the plaintiff's prima facie burden of a causal connection.

**4)    The defendant had a legitimate, non-discriminatory reason for the plaintiff not appearing on the RPL until May, 1998.**

The defendant does state, however, that the plaintiff's failure to return her RPL

registration form was the legitimate non-discriminatory reason for the delay in placing her

on the RPL.  As presented above, the plaintiff was provided a Specific Reduction in Force

Notice in January 1997, which also contained the required RPL Registration Sheet as an

attachment.  Even assuming the plaintiff did not receive this exact form, the letter itself

identified the form and sufficient other information to place the plaintiff on notice of

steps she needed to take to protect her interests.[69]  Furthermore, the record is clear and

indisputable that the plaintiff contacted Ms. Price in February 2008, regarding the form

and that same was sent to the plaintiff forthwith, but apparently due to a change in

address the form never reached the plaintiff.[70]

Equally indisputable is that the plaintiff again contacted Ms. Price in March, 1998

and again Ms. Price sent an RPL Registration Sheet to the plaintiff who did not, at best,

return same to Ms. Price until the end of April, 1998, and at worst, did not return same

until May 26, 1998.[71]  It is undisputed that shortly thereafter the plaintiff's name appeared

on the RPL.

Having proffered legitimate non-discriminatory reasons for the actions taken,

Plaintiff must now present substantial evidence that raises a genuine issue of material fact

as to Defendant's reasons.  In the absence of such, Defendant is entitled to summary

---

[69]    DEX 3.

[70]    DEX 32, ¶ 9.

[71]    DEX 32, ¶ 9 and DEX 4, block 12.

judgement.

> **5)      The plaintiff cannot demonstrate a causal connection between her protected activity and the alleged hostile environment.**

"In order to satisfy the 'causal link' prong of a prima facie retaliation case, [plaintiff] must, at a minimum, generally establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action." Raney v. Vinson Guard Serv., Inc., 120 F.3d 1192, 1197 (11th Cir.1997); Brungart v. BellSouth Telecomm., Inc., 231 F.3d 791, 799 (11th Cir.2000) (to establish the causal connection element of a retaliation claim, the plaintiff must "show that the decision maker was aware of the protected conduct at the time of the adverse employment action.").  Herein the plaintiff cannot establish that Art Powers was aware of her complaints harassment.  Mr. Powers has testified that he was not aware of her complaints involving him until he met with EEO investigator Romaine White, who took his statement during the course of her investigation in late 2000 - early 2001.[72]  As previously noted, "[a] decision maker cannot have been motivated to retaliate by something unknown to him."  Brungart v. BellSouth Telecomm., Inc., 231 F.3d at 799.

> **6)      The defendant had a legitimate, non-discriminatory reason for the actions alleged to have comprised a hostile environment.**

The defendants employees, Mr. Harris and Mr. Powers both had legitimate, non-

---

[72]      Defendant's Exhibit 39 (DEX 39), deposition of Art Powers, taken March 29, 2007, p. 24, line 23; p. 25, lines 1-23; p. 26, lines 1-15: DEX 27, p. 4, signature and date line.

discriminatory reasons for the actions alleged to have created a hostile environment.  It is apparent that the office space situation and the impending RIF dictated the workspace issues raised by the plaintiff.[73]  Similarly, the assignment of duties to the plaintiff was based upon the needs of the office and is not even contended by her to be outside the duties for which she hired to perform.[74] Finally, the plaintiff was relieved of her timekeeper duties due to the relative GS grade of she and her fellow employee.

## *V.  CONCLUSION*

WHEREFORE, premises considered, the complaint is due to be and should be dismissed and/or summary judgment granted Defendant with costs of this litigation taxed to Plaintiff.

Respectfully submitted this the 16th day of April, 2007.

---

[73]     See, DEX 28, ¶ 3; DEX 27, ¶ 5.

[74]     See, DEX 26, p. 132, lines 12-25; p. 133, lines 1-25; p. 134, lines 1-25; p. 135, lines 1-25; p. 136, lines 1-22.

LEURA G. CANARY

United States Attorney


By: s/R. Randolph Neeley

R. RANDOLPH NEELEY

Assistant United States Attorney

Bar Number: 9083-E56R

Post Office Box 197

Montgomery, AL  36101-0197

Telephone No.: (334) 223-7280

Facsimile No.: (334) 223-7418

**E-mail: rand.neeley@usdoj.gov**


**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 16, 2007, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, and I hereby certify that I have mailed, by

United States Postal Service, a copy of same to the following non-CM/ECF participant(s):

Gary E. Atchison, Esquire

P.O. Box 2002

Montgomery, AL 36102-2002


s/R. Randolph Neeley

Assistant United States Attorney