## Report of Investigation

United States Department of Agriculture

Lisa McCall
RD; 990582

Submitted by EEO Network

RECEIVED

PLAINTIFF'S
EXHIBIT

19

PENGAD 800-631-6989

# Final Report of Investigation

I. DESCRIPTION OF THE COMPLAINT

    A. Name of Complainant      Lisa McCall

    B. Title and Grade of position      GS 4 Community Development Assistant

    C. Dates of Alleged Discrimination:

        1. Failure to promote and discriminatory promotional practices. (No specific time stated)

        2. Harassment Nov. 1996 until termination.

        3. Termination by Reduction in Force April 25, 1997.

        4. Not being placed on a Reemployment Priority List at time of termination.

    D. Kind of Discrimination Alleged:    Race/Color (black)

    E. Date Formal Complaint filed:      April 30, 1997

    F. Harms alleged by Complainant:

        1. Failure to promote and bias in promotional practices.

        2. Harassment by abusive communications and unfavorable work conditions.

        3. Termination by Reduction in force.

        4. Failure to be placed on Reemployment Priority List

II. DESCRIPTION OF INVESTIGATION

    A. Identity of Investigator:    Shelagh Keleyhers

    B. Date of submission of investigative report to the Agency: May 20, 2000

    C. Place of investigation: Montgomery, Alabama

    D. Dates of Investigation: April 16/19, 2000

III. DESCRIPTION OF THE BASES AND ISSUES IN COMPLAINT

    A.  The Complainant alleges discrimination on the basis of race/color (black) in failure to promote, harassment, termination by reduction in force and failure to place her on a reemployment eligibility list.

IV. AGENCY CHARGED AND THEIR ANSWER:

    A.  Agency Charged:

        United States Department of Agriculture

        Rural Economic and Community Development

        4121 Carmichael Road,

        Sterling Centre Suite 601

        Montgomery, Alabama 36106-3583

    B.  Agency answer to the Charge:

        The agency representative, Barbara Price, Personnel Management Specialist, stated that standard procedures are followed in posting for promotions and that does not believe that racial bias is involved. She stated that Horace Horn, now resigned from the USDA was responsible for the promotional decisions involving the Complainant. She stated that the charge signed by the Complainant in April 1998 would put her allegations out of time jurisdiction. Barbara Bennett (white) an Administrator for the agency, indicated that the rif was done according to seniority adjusted to reflect performance evaluations over three years. She stated Race was not a factor. Barbara Price stated that the Complainant was placed on the Reemployment eligibility list in 1998 after she submitted necessary paperwork.

V.  ACCEPTED ISSUES

    A.  Are the issues raised by the Complainant timely filed (within 180 days of her complaint).

    B.  Was the Complainant denied promotions because of race?

    C.  Were work conditions, assignments and communications by the Complainant's supervisor shown to be racial harassment?

    D.  Was the Reduction in Force terminating the Complainant shown to be racially biased?

    E.  Was the Complainant denied being on the Reemployment Priority Eligibility List and is there a connection to her race/color (black)?

VI. FINDINGS

    A.  The investigator received a complaint dated April 20, 1998 outlining the Complainant's allegations.  The complainant provided an earlier letter dated April 30, 1997 stating the same complaints.  She indicated the April 30th dated August 24, 1999 to Rondi Hammon at the USDA/stating "I am writing in regarding to my complaint dated on April 30, 1997, which I have mailed to you all three times (April 30, 1997) resubmitted on April 20, 1998, after April 20, 1998 again by certified mailed on June 30, 1999."  Issues of timeliness have not been raised in any agency documentation provided to date.

    B.  The Complainant indicated that she applied for several promotions and was rejected and white employees with less seniority were hired.  There is

no dispute that the Complainant applied and was denied promotions.
Horace H. Horn, Jr.(white) State Director at the time was the authorizing
official in all cases and signed the letters making the offer of
promotion/transfer to the successful parties.  Mr. Horn was contacted
repeatedly by the investigator and refused to respond to calls made to him
requesting his testimony.

1.  The Complainant applied for position as secretary (Office
    Automation) in the Single-Family Housing Section, Montgomery
    Alabama State Office.(AL96-05,GS-318-5) Applicants were Tammy
    Martin (White), Carolyn Phillips (black), Debra Yates (white) and the
    Complainant.  Tammy Martin (white) was notified on June 21, 1996 in a
    letter signed by Horace H. Horn, State Director (white) that she was
    selected.  This is more than 180 days before the first date the
    Complainant alleged discrimination in her complaint dated April 30,
    1997.

2.  The Complainant applied for a Rural Development Assistant position in
    Bay Minette, Alabama (AL96-08,GS-1101-5) Lisa Hardy (American
    Indian) and the Complainant (black) were the only applicants and Lisa
    Hardy was chosen according to a letter signed by Horace H. Horn, Jr.
    State Director, dated June 21, 1996.  This is also more than 180 days
    before the first written allegation of discrimination.

3.  The Complainant also applied for a position as a Rural Development
    Assistant, Bay Minette, Alabama (AL96-07, GS 1101-5/6).  There was a

MC00015

second position in Huntsville, Alabama that the Complainant did not apply for. Applicants for the position in Bay Minette were Nancy Boldog (white) Lisa Hardy (American Indian) and the Complainant (black). In a letter dated June 21, 1996 Nancy Boldog was offered the position in question. An agency letter dated June 24, 1996 verified that Ms Boldog turned down the position because it would cause a hardship for her family. The position remained open. Sonya Davenport (white), who worked in the same office as the Complainant at the time both were rifed, stated that she was offered the GS 5 position in the Bay Minette office in a private meeting with John Sasser (white) the District Director, who is now deceased. She turned down the position because it would have required her to move. She said the meeting happened shortly before the rif in April 1997.

C.  The Complainant stated in her charge that she and her black co-worker Arlesa Hunter were subjected to harsh communications, excessively heavy work assignments and unfavorable working conditions because of their race There is no dispute that the Hayneville office for Lowndes County Rural Development was closed in a redesign of the operating structure in Alabama. As a result the Complainant, Community Development Assistant, GS-1101-4, Arlesa Hunter, Community Development Assistant, GS-1101-5 and Patsy Williams (white), Community Development Technician, GS-1101-7 were transferred together. The supervisor they reported to in their new office was Quentin Harris (black).

He was in charge until he was promoted to a position of EC/CC Specialist in Butler, Alabama in January of 1997. Already in the office were Sandra Welch (white) Community Development Assistant, GS-1101-6, Betty Blacken (now Reynolds)(white) Community Development Assistant, GS-1101-5 and Sonya Davenport (white) Community Development Assistant, GS-1101-5.

The agency provided a letter given to the Complainant dated November 7, 1996 indicating "there is a good likelihood you will be separated by reduction in force procedures." There is no dispute that the individuals transferred to the Luverne office, as well as those in the Luverne office were aware that a rif was eminent. There is no dispute that it was a small office that could barely hold the additional staff where were being kept on until the actual rif took place. Three enclosed offices went to the supervisor, Sandra Welch and Patsy Williams whose job involved interviewing of potential loan recipients. Front desks with phones belonged to the current employees, Sonya Davenport and Betty Reynolds, mentioned above. The Complainant and Arlesa Hunter were placed in back of them with work tables.

Both Quentin Harris and Arthur Powers (who took his place in January 1997) agree that the work conditions were crowded. They agree that they knew staff would be rifed and that desks were not ordered or moved to provide for short term needs. To provide computers for the additional staff in the main room would have required installation of additional computer hook ups which was simply not realistic in the light of impending downsizing. Sandra Welch (white)

MC00017

understood why the Complainant might have found the arrangement uncomfortable. All in the office agreed it was uncomfortable, and they tried to make the best of a difficult situation.

Because a county office was being merged with another, files had to be reordered. In addition, Barbara Bennett explained that the servicing of accounts was transferred to St. Louis. This meant that after a loan was approved all follow up was to be handled in St. Louis. This required that all relevant papers be copied and sent there for their records The Complainant felt that she was being asked to do Patsy Williams' work and that she was required to do excessive amounts of work with heavy case files. Both Quentin Harris and Arthur Powers agreed that the copying of files was required, and they indicated all staff participated in the process. All staff agreed that the files they had to work with could be quite large and heavy. Arlesa Hunter (black) agreed with the Complainant that they were required to do excessive amounts of work transferring files in an attempt to reorganize the office and integrate the other county's records and get required documentation to St. Louis. All employees interviewed felt they all had to do filing and carrying of heavy case files. A review of the Complainants job description indicates that she "establishes and maintains office files..." Patsy Williams' job description indicates the "position provides advanced technical assistance in a local office...acts as office manager, ensuring that all clerical operations of the office are consistent with RECD procedures."

Mr. Powers denied any racial bias in communications directed to the Complainant He said he had little contact with her. He remembered one incident where the Complainant was upset with a borrower and he advised her to drop her upset. Arlesa Hunter agreed that his manner and voice tone seemed harsher and it appeared to her to be related to race. Carnell McAlpine, (black) formerly was the supervisor of the Complainant. He said she was a good employee. He did not feel that John Sasser or Arthur Powers had effective management and communications skills. He indicated that John Sasser, who was the District Director (now deceased) and Arthur Powers were stringent managers with little flexibility and not the sensitivity to be supportive to minorities. He said Powers had a tendency to be picky leading to a management style that would be problematic.

Sandra Welch indicated that Mr. Powers did not appear to like the Complainant, exhibiting behavior like shaking his head and rolling his eyes.

The Complainant in her charge stated Powers denied equal assistance to black applicants. Sandra Welch (white) was sympathetic to the complainant, and the difficulties encountered in the stressful process of loosing their jobs which impacted on her as well.. She said that there was a practice of "pre-screening" applicants. If an initial contact indicated there was no way they could be

eligible for services, they were not encouraged to apply, if rejection was a

foregone conclusion. She said no one would be denied application if the

pursued it. However the pre screening of applicants who would surely

be refused was done to save wasted effort for all. She felt this type of

interviewing could lead to the Complainant's perception that Blacks were

being denied application. She indicated Mr. Powers had style of

communication that she did not always find pleasant. Patsy Williams,

Betty Reynolds and Sonya Davenport did not feel the Complainant

and Ms. Hunter were singled out for harsher communications.


The complainant stated she felt she was denied information about

promotion and vacancies and that notice was provided by word of

mouth, first by white employees. Quentin Harris indicated that notice of

promotions were sent around in the office when received and each

employee initialed all mail. He stated and all witnesses agreed that a

weekly meeting was held and all openings and matters of concern were

discussed in those meetings. Arthur Powers indicated that information was

made available when it was received in the local office.


The statement of Sonya Davenport indicated, that she was offered a

vacancy in Bay Minette that she had not applied for just before the rif. It was

the job the Complainant had applied for in the year before, which had been given

to a Nancy Buldog, who refused the position in June of 96. The position re-mained open and was not filled at the time of the rif.

D.  The Complainant, Arlesa Hunter, Sandra Welch, and Sonya Davenport were rifed from the Luverne office on April 27, 1997(two white employees and two black employees). The people remaining in the office had the most years of adjusted seniority in the job categories that were required in the office in question. Patsy Williams, Betty Reynolds and Art Powers.

Barbara Bennett, Administrator for the agency in Alabama explained that employees were listed according to seniority, Veterans preference was given where appropriate. And the final seniority was "adjusted" by years of service being added to factor in three levels of performance ratings given for performance over the last three years. The documents used to determine who was retained in various offices had no reference to race but used only the above factors to develop ranking of people who would be chosen to be retained. She indicated they had a retention list that was determined solely by years of service and was adjusted for performance (Outstanding-rating + 20 years; superior + 16 years and fully superior + 12 years.) Ms. Bennett indicated that the Rif was totally based on objective qualities of seniority, need for a position and the rating of the position and the individual who met those needs who was first on the retention list.

MC000111

Carnell McAlpine (black) was the Complainants supervisor for years before the
re organization sent him to the Farm Service Administration. He explained that
in 1995 the Rural Economic Development Agency was developed to handle
loans for individuals and farm loans were separated and handled by the FSA.
At that time there was no lay off but there was a reassignment of employees and
functions. A further reorganization of the agency took place in 1996. Barbara
Bennett indicated that the Transfer of Function was stressful and then they very
shortly thereafter had to reduce the number of offices to meet the requirements
of the 1997 budget. In addition they had been given 147 Full Time Employees.
She had expected to Rif 25 but the Rif impacted on less. She stated that the
decision was made to eliminate the GS 4 positions because they needed
employees who could handle more functions since they were reducing the
number of employees in a facility.

The Annual Affirmative Employment Program Accomplishment Summary of
Work Force indicated:

        12.5% of the GS 1-4 rated employees were white males

        62.5% of the GS 1-4 rated employees were white females

It indicated that there were no black females in this GS category. That is
inaccurate since we know the Complainant was at this Grade in that year and
some agency documentation shows that there was also another black
female, Elizabeth Lockett was a GS 4 who was rifed.

MC000112

The agency provided a summary of individuals who were Rifed or downgraded as the result of the reorganization and it is attached as an exhibit.

The rif took place April 27, 1997. And the following summarizes the race/color and grade of those rifed.

| Name | Race/color | Grade | R/C % of Individuals |
|---|---|---|---|
| Lisa McCoy | Black | 4 | Whites rifed 55% |
| Elizabeth Lockett | Black | 4 | Blacks rifed 45% |
| Doris Dennis | White | 4 | |
| Rhonda Lee | White | 4 | (Ms. Lee said she is Native American) |
| Sonya Davenport | White | 5 | |
| Camilla Meeks | White | 5 | |
| Arlesa Hunter | Black | 5 | |
| Ella Webb | Black | 5 | |
| Sarah Thorn | White | 6 | |
| Kimberly Lawrence | Black | 6 | |
| Sandra Welch | White | 6 | |
| David Sullivan | White | 9 | |

According to pre-rif data provided by the agency the following is a breakdown of race/color and # of employees in and near the Complainants GS by rating:

| GS 4 | | GS 5 | | GS 4 & 5 combined | |
|---|---|---|---|---|---|
| white/4 | black/4 | white/24 | black/7 | white/28 | black/11 |
| 50% | 50% | 77% | 23% | 72% | 28% |

MC000113

According to post-rif data provided by the agency the following showed the following breakdown of race/color and #of employees in each rating

| GS 4/5 | | GS 5 | | GS 4/5 and 5 combined | |
|--------|--------|--------|--------|--------|--------|
| White/18 | Black/2 | White/0 | Black/2 | White/18 | Black/4 |
| 90% | 10% | 0% | 100% | 82% | 18% |

It should be noted that The two black employees who maintained GS 5 ratings were in the state office building.  That would mean that all 5 position  became 4/5 positions after the rif.

E.    The Complainant alleged she was not placed on the Reemployment Priority List that would allow her to be called for openings.  There is no dispute that that the complainant submitted a hand written  Reemployment Priority Eligibility form one year after the RIF signed April 27, 1998 and after that she was on the national Reemployment Priority List.  This  began after a call by the Complainant Feb-3, 1998 seeking verification that her name was on the reemployment priority list.  Barbara Price, agency representative indicated the Complainant was not on the Reemployment priority list before that because she had not submitted the form. She was mailed a form on February 9, 1998 and again on March 10, 1998 There is no dispute that it took several months after that contact because the Complainant's address needed to be updated.

The Complainant indicated she had attempted after her RIF to be sure she was on this list and it was her understanding that she was.  The Complainant's

had written notes indicated that she talked to the Rural Development Personnel Office on June 8 and again June 11, 1997, July 14 and July 21, 1997. At that time her understanding was that her name was on the reemployment priority list. Her hand written note of June 11, 1997 stated "Date 6—11-97 Time 11:00 am Called state office. I spoke with Barbara Price about my name being on the reemployment priority list. She said that is was place on the list that she have gotten in the mail"

Arlesa Hunter (black) was rifed at the same time as the Complainant. Since she left agency employment she has begun to teach school and is starting work on a masters. She stated she also had contacts with the State office of Personnel, trying to confirm that she was on the Reemployment Priority Eligibility list and she was not able to confirm that she was on or clearly understand what was needed and what she was to do.

Arthur Powers stated that he thought is was automatic that people were placed on the Reemployment list. John Sasser, the District Director who would have provided information on this to the Complainant is now deceased.

Sandra Welch (white) who worked with the Complainant stated that information about this was not clearly communicated. She said in their office they had a group meeting to discuss the RIF. Sonya Davenport also said there was a group meeting. She mentioned as stated before she had a private meeting

MC000115

to be offered a transfer.

A letter dated November 7, 1996 titled Certification of Expected Separation outlined opportunities to participate in the USDA Career Transition Assistance Plan (CTAP) the Job Training Partnership Act and the Reemployment Priority List. It stated "The RPL gives reemployment consideration to competitive service employees separated or about to be separated by reduction in force. If USDA agencies fill any vacancies in the local communing area, qualified registrants would be given priority consideration over certain outside job applicants. If you wish to register for placement assistance on USDA's RPL you should contact Micki or Barbara in the State Office Personnel Section."

The formal letter verifying she would be rifed was dated January 23, 2997. It states " you are eligible to have your name placed on the Department's Reemployment Priority List…" The letter indicated it had 6 attachments including the RPL Registration Sheet.

Elizabeth Lockett (black) was rifed at the same time as the Complainant. She stated she believed she was automatically placed on the RPL. She was not told she needed to fill out a form. She stated that the people to e rifed were all brought down to Montgomery to a meeting telling them how to look for work and fill out a resume. Ms. Lockett stated that all there felt disappointed because on one from the state office came down to talk to them.

Kimberly Lawrence (black) was rifed at the same time as the complainant. She

stated that she was a GS 6 at the time of being rifed with 6.5 years of service .

She was employed in the Dothan office. A Vicki Morris (white) was holding a

higher grade level and was retained. After the rif there were not black s in the

office. She believes that there were promotional opportunities that could have

allowed them both to stay in the office., and things could have been handled so

they both could be retained. She stated she was interviewed about the rif in her

home after the birth of a child. She was given all papers concerned with the rif.

She filled out and submitted all papers given to her by Roger Traywick. She

stated that any an all papers that were given were filled out and submitted. She

had some awareness of the Reemployment Priority List but was not aware that

she was to initiate action to receive priority consideration. She filled out all

papers that were given to her.

Kimberly Lawrence was not one of the individuals on the RIL according to

documentation provided by the agency.

Doris Dennis (white) was rifed at the same time as the Complainant . She

stated in the Rif information she received there was included a form and an

explanation and told how to apply to be on the RPL. It was stapled in with the

packet. However she indicated her boss, Roger had spent a lot of time with her

going over the information. He would have taken any time that was needed for

her to be clear about what was transpiring. She had no interest in being on the

list. She indicated that one thing that was supposed to be in her packet was

MC000117

not.  The document missing was one that would show how her severance pay would be computed.  She signed the form but noted the omission at the time of signing the RIF papers.

The following people were on the RPL according to copies of their forms submitted by the agency:

Tamara Martin          1/23/97                (white)

       Handwritten form was not signed by local  representative.

       She was not rifed/ chosen over Complainant  for promotion.

Willene Atkins          1/30/97                (white)

       Typed form  Not rifed

Imogene Ash            2/5/97                 (white)

       Typed form Not rifed

George Monfee          4-14-97               (white)

       Handwritten form not signed by local representative.  He was rifed.

David Sullivan          5/16/97                (white)

       Typed in part.  He was rifed.

Sandra Welch           5/9/97                 (white)

       Typed  in part.  She was rifed.

Lisa McCall            4/27/98                (black)

       Handwritten form.  She was rifed

### END OF SUMMARY OF INVESTIGATIVE FINDINGS

VII.   Description of Exhibits

Exhibit 1        Charge  April 20, 1998

Exhibit 2        Letter from Complainant April 24, 1999

Exhibit 3        Internal Analysis

Exhibit 4        Agency documentation of  positions applied for by the Complainant and

               the verification of other applicants and their race/color

Exhibit 5        Agency documentation of procedure for applying for promotions

Exhibit 6        Agency Affirmative Action plan for 1996

Exhibit 7        Complainant's note of contact with Agency 2-3-98

Exhibit 8        Complainant's notes of contacts with Agency from 6-8-97 to 7-21-97

Exhibit 9        Certification of Expected Separation November 7, 1996

Exhibit 10       Specific Reduction in Force Notice January 23,1997

Exhibit 11       Witness Testimony of  Lisa McCall

Exhibit 12       Witness Testimony of  Sandra Welch

Exhibit 13       Witness Testimony of Arthur Powers

Exhibit 14       Witness Testimony of Barbara Bennett

Exhibit 15       Witness Testimony  of  Sonya Davenport

Exhibit 16       Witness Testimony of  Elizabeth Lockett

Exhibit 17       Witness Testimony of Kimberly Lawrence

Exhibit 18       Witness Testimony of Carnell McAlpine

Exhibit 19       Witness Testimony of Quentin Harris

Exhibit 20       Witness Testimony of Patsy Williams

Exhibit 21       Witness Testimony of Betty Reynolds

Exhibit 22     Witness Testimony of Doris Dennis

Exhibit 23     Agency Documentation of Personnel Separated or

Downgraded Effective  4/27/97

Exhibit 24     RIF form filed out by the Complainant

Exhibit 25     Rif form Filled out by Sandra Welch`

Exhibit 27     Memo from Juanda Taylor to Regina Claiborne second request

for counseling

Exhibit 28     EEO Counselor/mediator report of May 6, 1999

Exhibit 29     Counseling Process document

Exhibit 30     February 3, 2000 Letter to Lisa McCall from Delores H. Ruffin

notifying the Complainant her case is being referred for

investigation

MC000121

April 20, 1998

United States Department of Argiculture
EEO Staff
14th Independence Ave  Southwest
Washington, DC 200250



Gentlemen:

My name is Lisa McCall. I am a formal employee of the United States Department of Argiculture Rural Development County Office, which is located in Luverne, Alabama. Please consider this to be my formal complaint against USDA Rural Development, State Director, and his personnel staff which is located in Montgomery, Alabama. Also I am filing a complaint against the Community Development Manager, Arthur L. Powers, who is located in Luverne, Alabama.

After the Hayneville, Alabama (Lowndes County ) Office closed in November, 1996 due to the State Restructuring Plan. Arlesa M. Hunter and myself, both BLACK, were transferred one hundred miles round trip to Luverne, Alabama. Here we encountered constant harassment from Mr. Arthur L. Powers.

These harassments include:

1. Being assigned Mrs. Williams duties because she does not want to perform them.

2. Being assigned duties that the other white employees beside Mrs. Williams do not show interest in performing.

3. Being placed in an environment where there is insufficient work space (no desk).

4. Verbal abuse by Mr. Powers.

5. Official correspondences are not shared regarding leave, position vacancies, meetings and other important matters that concern our livelihood.

6. Lifting and moving heavy office equipment within the office, which the whites are not required to do.

Mr. Powers, on several ocassions, have exhibited his dislike for Black applicants and visitors who have come into the office. Refusal to help or give them the appropriate forms needed to apply for a house loan.

He were often rude and impolite which was shown through his cold and harsh voice. This was shown when asked information, especially when asked to explain questions on loan applications.

Many black applicants have had to remind them (Mrs. Williams and Mr. Powers) that they are adults and will not be talked to any kind of way.

The complaints regarding USDA Rural Development State Director and his personnel staff are as follows:

1. Correspondences regarding vacancies and promotions are not distributed as quickly among blacks compared to whites. White employees throughout the counties are notified by whites within the state office before correspondences are released by telephone. Often we, Blacks, do not receive the notices, but are informed by rumors or calls from other black employees in the surrounding counties' offices.

2. Blacks are often told they do not have the qualifications and applications are not accepted. Blacks


EXHIBIT



have been denied the opportunity to apply for positions within the State Office. Later I found out that a white person was hired with little or no experience in comparison with the black employees.

3. There are about 40 white employees in the state office and only about 5 black employees, due to unfair promotion and hiring practices. The chances for a black person, within the State Office is very unlikely.

In Alabama, a RIF took an effect on April 25, 1997. The majority of employees loosing their jobs were blacks. Arlesa M. Hunter and myself have been placed in an area where we have no chances for advancement.

After the RIF took place, Arlesa M. Hunter and myself was not placed on the Reemployment Priority List to be notified for employment with other Government agencies.

I believe all the complaints that I have listed can be verified through an investigation within the Alabama State Office and County Offices.

I look forward to hearing from your office within ten to fifteen working days.

Respectfully,

Lisa McCall
Lisa McCall

cc: USDA Office Of Inspector General
   USDA Secretary Of Agriculture

EXHIBIT

MC000124

Lisa McCall
251 Sullivan Trace
Montgomery, AL 36105

ugust 24, 1999

**USDA/Office of Civil Rights**
**Employment Complaints Division**
**1400 Independence Ave SW**
**Mailstop 9440**
**Washington,  D C 20250**

**Attn: Rondi Hammon**

**I am writing in regarding to my complaint dated on April 30, 1997, which I have mailed to you all three times (April 30, 1997) resubmitted on April 20, 1998, after April 20, 1998 resubmitted again by ceritfied mailed on June 30, 1999.**

**On several occasion I talked with Karen Richard (April 17, 1998) quoted by Karen Richard, that she was not longer working with that department, and  I needed to contact Barbara Lincoln.  Called Barbara Lincoln on several occasion leaving message on voice mailed.  Never was contacted so I finally contacted Barbara .incoln on July 24, 1998.   Also recieved  ceritfied letter from Barbara stating that Complaint letter was recieved and I need to contact Tracy Anderson.**
**Tracy Anderson was contact on October 6, 1998 she stated to me that she didn't get the information.  October 9, 1998 contact Barbara Lincoln again she stated that she will fax information to Ms. Claiborne.**

**If further information is needed please call me a (334) 288-5678 or write to the above address.**

**sincerely ,**

**Lisa McCall**



MC000126

## INTERNAL ANALYSIS

A. With regard to the issue of timeliness November 2 is 180 days prior to the earliest dated written complaint of discrimination. This would place all the Complainants allegations about harassment, Reduction in Force and failure to be placed on the Reemployment Eligibility list within time jurisdiction.

B. The Charging Party clearly alleged illegal promotional practices, but those concerns were not addressed in informal counseling. It appears that the three positions the Charging Party was are out of time jurisdiction since they took place over 180 days before the filing of the charge. Evidence gathered in evaluating those promotions can be used as pretext in evaluating the other harms alleged by the Complainant if relevant.

C. The Complainant alleged racial harassment in assignment of work stations and job duties and verbal communications by her white supervisor. The Complainant's supervisor at the time she was originally given the work stations mentioned in her charge, was black. Evidence shows that that the arrangement, while inconvenient was because staff were temporary until the time of the rif. Testimony was insufficient to support the Complainants contention of biased communications directed to blacks. Mr. Power's style, even if it was not friendly would not reach a level of illegal harassment. And assignments given to the Complainant were well within the scope of her job description. There was insufficient evidence to show that



MC000127

assignment of work duties was inappropriate or biased to the Complainant or her black co-worker.

D.  The evaluation of evidence in the case of the Rif is more demanding.  The Complainant has met her burden of establishing a prima facie case creating an inference that discrimination was a factor in the adverse action. See <u>McDonnell Douglas v. Green</u>, 41 U.S.792 (1973).  However the establishing a prima facie case does not ultimately prove discrimination not end the inquire.  <u>Potter v. Good Will Industries</u>, 518 F. 2d 864, 865 (6th Cir. 1975).  Rather, the Complainant must continue to shoulder the burden of proving by a preponderance of the evidence, that the Respondent's decision to terminate was because of racial animus.  <u>Texas Department of Community Affairs v. Burdine</u>.  450 U.S. 867, 875 (1983).

The Complainant is a member of a protected class, was terminated by reduction in force and a high percentage of minorities were terminated in the RIF.  A prima facie case is established and  now the burden shifts for the respondent to articulate a legitimate non-discriminatory reason for their actions which is then evaluated for pretext.

Here it is clear that the respondent carefully computed seniority and adjusted it to reflect performance ratings.  Individuals were retained if they had the highest adjusted seniority in the jobs required in the offices they were assigned.  The question remains whether  the system over all was truly



MC000128

objective and if there are indicators of racial bias.

A white employee holding a GS 5 job was offered a GS 5 position in the Bay Minette office in advance of the rif. Testimony indicated she was at the top of the retention list and the offer to her was appropriate. And the Agency indicated that only 5's could qualify for 5 positions. Thus the Complainant could not have been offered the same job and was also far below her on the retention list. Unfortunately this is the very position that the Complainant applied for in June of 1996. At that time it was refused by the successful candidate, and the position was simply left vacant. After the position was offered to the white employee in January 1997 Sonya Davenport, it again left vacant according to Barbara Bennett and not offered to anyone else on the retention list. This seems to show a practice of opening up jobs for desired candidates, and then keeping them vacant instead of opening up the positions to the next qualified candidate. The Complainant was a GS 4 and Gs 4 positions were eliminated, however post rif a new category of GS 4/5 was inaugurated. Of the people rifed 45% were black. a higher percentage than in the work force. It appears that subjective decisions were made as to what jobs were open and when. It was very hard to understand why the position was not offered to the Complainant, the only other applicant (Lisa Hardy was selected for a position at that time also). The position was vacant and unfilled until it was reopened and offered to the white co/worker of the Complainant who



MC000129

rejected it.

While it will be evaluated as a separate harm, evidence gathered in investigation of the allegation of not being placed on the Reemployment Priority List, lays out some of what me by a very subtle system that could impact on minorities. The only individuals placed on the list until it was pursued by the Complainant were white.

As much as the Respondent attempted to apply objective standards to the rif, there appears to be enough evidence of bias to taint the termination.

E. The Complainant was placed on the Reemployment Priority List (RPL) eventually but there is no question it took a lot of time and effort to accomplish it. And the time that she was not on the list is still evaluated for discriminatory intent.

The Complainant has established a prima facie case in this allegation. The agency's position is that she was notified of the procedure and did not do it and when she finally submitted her documentation she was placed on the list.

There is s dispute as to what happened in June and July 1997. The Complainant believed she was on the RPL. There was obviously a miscommunication between her and Barbara Price. There was notice to seek help of personnel to get the placed on this list, and in spite of multiple communications is did not



MC000130

happen until almost a year later. There is evidence that the Complainants supervisor believed that placement on the RPL would be automatic. Witness testimony indicates there were others who believe this. This supports the Complainants statement that she felt it was taken care of when in fact it was not.

There is testimony from a white employee who was rifed that she had forms missing in her RIF packet. This means we cannot credit or be sure that the Complainant was given the form in question.

All people who were placed on the RPL were white until the Charging Party pursued the matter.. And three people placed on the list in January/February of 1997 ended up not being rifed at all. One of the individuals, Tamara Martin was one of the people to be chosen over the Complainant in one of her applications. This tends to support the Complainants allegation of in internal buddy system that could and did impact on minorities.

Kimberley Lawrence a black rifed employee was interviewed by a different District Director. She was accorded a lot of time and explanation and she said she filled out everything she was given. Yet there was no RPL form in her name.

It seems that there is a great deal of evidence to show the Agency's defense is pretextual.


EXHIBIT
3 .5a5

MC000131

MC000132

PART VI.

VERIFICATION OF APPLICATION FOR PROMOTIONS MADE BY CHARGING
PARTY IN 1996/97, VERIFICATION OF NAMES AND QUALIFICATIONS OF
SUCCESSFUL CANDIDATES AND ALL DOCUMENTS USED TO MAKE THE
PROMOTION DECISIONS, INCCLUDING PERSONNEL RECORDS SHOWING
APPLICATION AND QUALIFICATION OF ALL CANDIDATES CONSIDERED.

Attached are copies of material from the Vacancy Announcements that Lisa McCall
applied for.

**AL96-05, GS-318-5,** Secretary (Office Automation) in the Single-Family Housing
Section, Montgomery, Alabama State Office.

Applicants:     Tammy Martin – White Female
                Lisa McCall – Black Female
                Carolyn Phillips – Black Female
                Debra Yates – White Female

Tammy Martin selected.

**AL96-07, (2 positions), GS-1101-5/6,** Rural Development Assistant, Huntsville,
Alabama and Bay Minette, Alabama.

Lisa McCall did not apply for the position in Huntsville, Alabama.

Applicants for Bay Minette:  Nancy Boldog – White Female
                             Lisa Hardy – American Indian Female
                             Lisa McCall – Black Female

Nancy Boldog selected.  She later decided not to accept the position.  The position
remained vacant and was later offered to GS-5 employees who were being RIF'd in lieu
of separation.  This was in accordance with RIF regulations.

**AL96-08, GS-1101-5,** Rural Development Assistant, Bay Minette, Alabama.

Applicants:     Lisa Hardy – American Indian
                Lisa McCall – Black Female

Lisa Hardy selected.



VI.    DOCUMENTS NEEDED

PROCEDURES FOR POSTING AND APPLYING FOR PROMOTIONS
APPLICABLE IN 1996 AND 1997.

Vacancy announcements were issued and were open to all Alabama employees in the
agency.  The vacancy announcements were sent by mail to each office in the State and to
each Program Section in the State Office.  They were also posted on the OPM Job
Bulletin Board.  The vacancy announcements would be open from two weeks to thirty
days.

Applicants would send their applications to the Human Resources Section in the State
Office on or before the closing date of the announcement.

Barbara Price, PMS
5/5/00

EXHIBIT
4

MC000135

MC000136

FmHA Instruction 2045-Z
Exhibit B
Attachment 1
Page 1

AFFIRMATIVE EMPLOYMENT PROGRAM FOR MINORITIES AND WOMEN

ANNUAL AFFIRMATIVE EMPLOYMENT PROGRAM ACCOMPLISHMENT REPORT

FOR FISCAL YEAR 19 96

* SUMMARY ANALYSIS OF WORK FORCE
* ACCOMPLISHMENT REPORT ON OBJECTIVES AND ACTION ITEMS
* NOTEWORTHY ACTIVITIES AND INITIATIVES

USDA, Rural Development
_____
NAME OF ORGANIZATION
Sterling Centre Office Bldg.
4121 Carmichael Rd., Suite 601
Montgomery, AL 36106-3683
_____
ADDRESS OF ORGANIZATION

ORGANIZATIONAL LEVEL:    AGENCY ___    MOC X    REGION ___
        COMMAND ___    INSTALLATION ___    HEADQUARTERS ___

NUMBER OF EMPLOYEES COVERED BY PLAN:    TOTAL ___
    PROFESSIONAL ___    ADMINISTRATIVE ___    TECHNICAL ___
    CLERICAL ___    OTHER ___    BLUE COLLAR ___

Micki Boyd, PMS                           (334) 279-3428
_____
NAME OF CONTACT PERSON/PERSON PREPARING FORM    TELEPHONE NO.

HORACE H. HORN, JR., State Director
_____
NAME OF TITLE OF PRINCIPAL EEO OFFICIAL

_____
SIGNATURE OF PRINCIPAL EEO OFFICIAL    DATE
CERTIFIES THAT THIS REPORT IS IN COMPLIANCE WITH EEO-MD-714.

HORACE H. HORN, JR., State Director
_____
NAME AND TITLE OF HEAD OF ORGANIZATION OR DESIGNATED OFFICIAL

_____
SIGNATURE OF HEAD OF ORGANIZATION OR DESIGNATED OFFICIAL
CERTIFIES THAT THIS REPORT IS IN COMPLIANCE WITH EEO-MD-714.

EXHIBIT

EEOC FORM 568 (8/87)

MC000137

FmHA Instruction 2045-Z
Exhibit B
Attachment 1
Page 2

## AFFIRMATIVE EMPLOYMENT PROGRAM FOR MINORITIES AND WOMEN

### ANNUAL AFFIRMATIVE EMPLOYMENT PROGRAM ACCOMPLISHMENT REPORT

#### SUMMARY ANALYSIS OF WORK FORCE

**PROVIDE A NARRATIVE WORK FORCE ANALYSIS USING THE RELEVANT CIVILIAN LABOR FORCE. ANALYZE OCCUPATIONAL CATEGORIES, GRADE GROUPINGS, AND MAJOR OCCUPATIONS.**

Our analysis revealed there is a conspicuous absence in the following categories due to the limited population in these groups in Alabama:

Amer. Indian Males
Hispanic Males and Females
Asian Males

The following is a summary of EEO groups by grade groupings, in percents:

|  | GS 13-15 | GS 9-12 | GS 5-8 | GS 1-4 |
|---|---|---|---|---|
| White Males | 63.6% | 52.5% |  | 12.5% |
| White Females | 18.2% | *30.0% | *85.0% | 62.5% |
| Black Males | *18.2% | *16.3% |  |  |
| Black Females |  | * 1.2% | *12.5% |  |
| Asian Females |  |  | 1.25% |  |
| Amer. Indian Females |  |  | 1.25% |  |

*Increased percentage from FY '95 figures.

This fiscal year, we have little to no control over the employees who have separated since we are not in a position to recruit and fill the vacancies created when employees separate. Due to the impending RIF, we no longer have the option of using temporary employees (such as Worker-Trainees, Co-Op Students, and Stay-In-School employees) as in the past. All temporary and excepted employees were terminated early on to help offset the effect of ceiling cuts.



EEOC FORM 568 (8/87)

MC000138

MC000139

MC000141



Date     Time:
6-8-97    2:00pm  Called Rural Development
spoke with Someone name chaney
he said Ms. price was not in
the office so I ask for Barbara
Bennett she was not in the office
also. So I ask when can I call
back for Ms price and when
she will be back in the office
he said she will be back on
6-11-97.


Date    Time
6-11-97 11:00am Called State office
I spoke with Barbara price about
my name being on the
reemployment priorty list. she
said that it was place on the list
that she have gotten in mail
today.



EXHIBIT
8-6013



Date          Time
7-11-97   9:00 am   Called State
Office Spoke with Kim
Sprate ask for Ms price
She was not in the office.


Date        Time
7-14-97   8:45 am. Called State office
Spoke with Kim sprate ask for
Ms. Barbara price she was out
of the office. So I called
back at 3:30 pm. spoke with
Ms. price ask her to mail
me a copy of the reemployment
priority list that show if
my name is on that list
Ms price say that there
was not a list with my
name on it. So I ask how
will I be nofty. if a job come
open with USDA of in the state
of alabama she didnot
give me and answer to that.



EXHIBIT
8.213

MC000143



Date        Time
7-21-97   8:59  I call opm spoke
with opm Specialist name
Lee and I ask him question
about the Reemployment priority
list and he said that there
is a list that show your
name on it to be notify
if Job of open with different
federal Agency. So he said said
he will call Ms. price about
this and call me back. at
10:14 AM that same day MR.
Lee Howardstead call back and
Said that Ms. price Said
that I was on the Reemployment
priority list and I have being
on that list 3 months So he
that the list sure show my
name and address on it.

EXHIBIT
8 3113

MC000144

Date        Time
2-3-98      11:30 Called state office
spoke with Babara price
About a form that suppost
to show my name on RIF
notify I ask to mail me
a copy of the paper showing
that I have being restated
on the register for Federal
Job. but did not recieved
that form.


Date        Time
3-3-98  9:30 Called back to
the state office regard that
Form I did not recieved spoke
with micki Boyd.
and she said she will
let me price no about it.

Date   Time
7-13-98   9:00am Called S/O spoke
with chaney he said My price
was not in the office she will be



MC000140

MC000145