Department of                    ,evelopment           4121 Cai _chael Road
Agriculture                                            Montgomery, AL  36106-3683
                                                       (334)279-3425/(334)279-3495 TDD

SUBJECT:   Certification of Expected Separation

    TO:   Lisa McCall                          November 7, 1996
          CDA    01-43

Rural Development in Alabama plans to effect a reduction in force
(RIF) on or about April 27, 1997.  Based on a review of your personnel
records, we have determined that:

    1.    Your current position is: <u>Community Development Assistant</u>,
          with full performance level of GS-<u>4</u> located in
          <u>Lowndes County, Hayneville</u>, Alabama.

    2.    There is a good likelihood you will be separated by
          reduction in force procedures; and

    3.    You are not eligible or have not filed an application for
          either early or optional retirement or indicated an
          intent to do so; and

    4.    Opportunities for you to be placed in your same or
          similar position with this agency or other Federal
          agencies in this local commuting area are limited; and

    5.    Opportunities for you to obtain other employment in this
          local commuting area in your same or similar position are
          limited.

This is NOT a specific reduction in force notice.  At least 90 days
prior to any separation action, you will receive a specific notice of
reduction in force (RIF), explaining the reasons for the action, your
retention rights, and other relevant information.

The purpose of this Certification is to enable you to participate in
the United States Department of Agriculture's (USDA) and Rural
Development's Career Transition Assistance Plan (CTAP).  This
certification will also allow you to register in other programs
intended to assist you to locate alternative employment, or to improve
your alternative employment prospects, prior to the expected date of
reduction in force.  These programs are designed to help minimize the
adverse impact of a RIF.  A copy of this certification is required for
enrollment in these programs.

I encourage you to participate in the following programs:

    1.    The USDA's Career Transition Assistance Plan (CTAP).
          Surplus and displaced eligible employees may obtain
          assistance through the Rural Development's CTAP
          supplement.  This will provide career transition
          services to all surplus and displaced employees an

l Development is an Equal Opportunity Lender.
laints of discrimination should be sent to:

EXHIBIT
a 1 2

MC000146

Page 2

provide special selection priority for eligible employees. Selection priority must be given to well-qualified affected employees of USDA who apply for agency vacancies in the local commuting area, before selecting any other candidate from either within or outside the Department.

2. Job Training Partnership Act: Title III of the Federal Job Training Partnership Act (JTPA) provides funding from the U.S. Department of Labor to each state government for a wide range of career transition services. These services are provided by the state government through their Dislocated Worker Unit (DWU). The Alabama DWU can provide you with training, job referrals, job placement and labor information to assist you in your search efforts. They can also provide you access to local, statewide and nationwide job opportunity listings as well as information on state, federal and local government positions. In some cases you may be eligible for retraining programs.

   The staff of the DWU can assist you by evaluating your current work skills to determine your capabilities and whether your skills are transferable to other occupations. Aptitude and skill testing are performed to assist in this process. In addition, personal and financial counseling are sometimes provided to assist you with hardships you may face during this transition. As a job seeker who is job-ready, you may enroll in DWU workshops to sharpen your skills in interview techniques, completion of job applications and resume preparation. You may also obtain labor market information on prevailing wage rates, occupations in demand, and employers in need of your skills. Please contact your local State Employment Service Office to determine your eligibility for this program.

3. Reemployment Priority List (RPL). The RPL gives reemployment consideration to competitive service employees separated or about to be separated by reduction in force. If USDA agencies fill any vacancies in the local commuting area, qualified registrants would be given priority consideration over certain outside job applicants. If you wish to register for placement assistance on USDA's RPL, you should contact Micki or Barbara in the State Office Personnel Section.

The Interagency Career Transition Plan (ICTAP) requires Federal agencies to select a displaced employee when they attempt to fill a position from outside their own agency. Under this new plan, a displaced employee who applies directly for a vacancy and is determined by the agency to be well-qualified, and lives in the local commuting area, will be given special selection for that priority position. If you receive a specific RIF notice of separation, you

EXHIBIT

MC000147

Page 3

will become eligible for placement assistance under the ICTAP. Should this occur, you will be given information about the ICTAP at that time.

For additional information regarding CTAP and other programs listed above, or if you have questions, please call Personnel in the State Office.

HORACE H. HORN, JR.
State Director

EXHIBIT

MC000148

MC000149



United States
Department of
Agriculture

Rural
Development

4121 Carmichael Road
Suite 601
Montgomery, AL  36106-3683
(334) 279-3404 / (334) 279-3495 TDD

SUBJECT:    Specific Reduction In Force Notice

TO:     Lisa McCall                                    January 23, 1997
        Community Development Assistant
        Crenshaw Local Office
        Luverne, AL

It is necessary to conduct a Reduction In Force (RIF) in Alabama.  The reasons for the RIF are :
(1) reorganization to implement field restructuring required by the centralization of servicing for
Single Family Housing (SFH) borrowers and the Congressionally mandated escrowing of taxes
and insurance for SFH borrowers; (2) reorganization to implement the transformation from a
credit/financial organization to a rural development organization; and (3) the need to meet budget
limitations in Fiscal Year 1997.

A RIF will be conducted within your competitive area effective April 27, 1997.  This RIF is
being carried out in accordance with Part 351 of Title 5 of the Code of Federal Regulations
(CFR).  This memorandum constitutes specific notice that you have been reached for a
Reduction In Force action.

The retention rights of all employees concerned have been carefully reviewed.  A retention
register has been prepared which gives full consideration to competitive level, civil service
tenure, veteran preference, length of service, and performance ratings.  Attachment 1 provides
your retention status as reflected on the retention register for your competitive level.

A review of your retention standing indicates that you have been reached for release from your
competitive level in accordance with RIF regulations and procedures.  This is because your
position has been abolished.  Through further application of RIF regulations, it has been
determined that you have no assignment rights within your competitive area.  Through
application of the mission area's policy on use of vacancies, it has been determined that there is
no placement for you in a vacant position within or outside your competitive area.  Therefore,
you will be separated by RIF from the Federal service effective April 27, 1997.  During this
notice period, you will continue in an active duty status in your present position through April
26, 1997.

Because you are not eligible for any immediate annuity (i.e., optional, early, discontinued service
retirement), you are eligible for severance pay following your separation.  Information about
severance pay is included in Attachment 2, an Information Guide on Employee Benefits.  As a
Tenure Group I employee, you are eligible to have your name placed on the Department's
Reemployment Priority List (RPL) and to participate in OPM's Interagency Career Transition
Assistance Plan (ICTAP).  Attachment 2 includes information on these programs.  Attachment 6

Rural Development is an Equal Opportunity Lender.



is a copy of the RPL Registration Sheet. You may obtain information regarding eligibility for unemployment insurance from the local Alabama State Unemployment Office. Also, unemployment information is included in Attachment 3.

You may resign at any time after the receipt of this notice. Your resignation may be effective on the date you specify or on the separation date identified in this notice, whichever is earlier. Your resignation would be considered involuntary and you would be entitled to severance pay. However, if you resign before your separation under RIF, you will no longer be eligible for the Reemployment Priority List or the Interagency Career Transition Assistance Plan.

Any unused annual leave to your credit will be paid in a lump sum after you receive your last regular paycheck. You may also be eligible to receive a refund of your retirement contributions.

The Human Resources staff is available to assist you by explaining this notice and providing benefits information. You are entitled to a copy of OPM's retention regulations found in 5 CFR Part 351, which can be provided to you upon request. You are entitled to inspect retention registers and related records that have a bearing on this specific RIF action. You may contact Micki Boyd or Barbara Price, 1-800-550-9499, ext. 3425, to request copies of pertinent regulations or other material related to this action that you may need to review.

If, after examination of the relevant retention register and pertinent regulations, you feel that any of your rights have been violated, you may appeal to the Merit Systems Protection Board (MSPB). An appeal must be filed during the period beginning on the day after the effective date of the action being appealed and ending 30 days after the effective date. If you do not submit an appeal within this timeframe, it will be dismissed as untimely filed unless a good reason for the delay is shown. An appeal must be addressed to Regional Director and filed with the following MSPB office:

> Merit Systems Protection Board
> Atlanta Regional Office
> 401 West Peachtree St., N. W., Suite 1050
> Atlanta, GA 30308
> FAX (404) 730-2767

An appeal must be made by personal delivery, by facsimile, by mail, or by commercial overnight delivery. Attachment 4 is a copy of the MSPB appeal form. You may receive a copy of MSPB's regulations on appeal procedures by contacting Micki or Barbara in the Human Resources office.

This Reduction-In-Force notice does not reflect on your performance or conduct. It is being taken solely for the reasons stated in the first paragraph of this letter. Rural Development sincerely appreciates the services you have rendered during your employment and we regret that you have been personally affected.



Continuing effort is being made to retain your services at the highest possible pay level. You will be contacted if a position becomes available prior to the effective date of this action.

So that we have a record of your receipt of this notice, please sign and date the receipt acknowledgment copy, Attachment 5, upon delivery.

HORACE H. HORN, JR.
State Director

Attachments
     (1) Retention Information
     (2) Information Guide on Employee Benefits
     (3) SF-8, Unemployment Insurance
     (4) MSPB Appeal Form
     (5) Receipt Acknowledgment Form
     (6) RPL Registration Sheet

EXHIBIT

4

ATTACHMENT 1

RETENTION INFORMATION
Lisa McCall

**Current Position:**

| | |
|---|---|
| Official Title: | Community Development Assistant |
| Series, Grade: | GS-1101-4 |
| Working Title: | CDA |
| Location: | Crenshaw Local Office, Luverne, AL |
| Salary: | $20,116 PA |

**Tenure Group:**    I

**Subgroup:**    B

**Service Computation Date:**    7/29/90

**Performance Ratings:** (the three ratings used to determine adjusted SCD)

1995: Fully Successful
1994: Fully Successful
1993: Superior

**Adjusted Service Computation Date:**    7/29/76

**Competitive Area:**    10

**Competitive Level:**    GS-4, #2

EXHIBIT

MC000153

MC000154

Witness Testimony of Lisa McCoy
McCoy vs. USDA Rural Development

The Complainant was interviewed on April 20, 2000 by phone and in person on May 12, 2000. She was also interviewed by phone again on May 17,2000

The Complainant indicated she was denied several promotions. One went to a Lisa Hardy and another to a Nancy Buldog and there was a third white person who was also chosen over her.
She was not exactly sure of the dates of the denial of promotions.

She indicated that the Blacks were asked to do filing and moving of heavy files. She said she and Arlesa Hunter did not have desks, phones or computers but the white employees did. Said that Art Powers used a rude and harsh voice tone to the blacks in the office. She said she was asked to Patsy' Williams and excessive filing

She stated she was a Community Development Assistant 4 and had been applying for 5 positions in order to get a job and avoid the rif. She said the counties with the most case load were closed in the rif. She said tha Arlesa Hunter would be a witness at 344 227 3363 And Carnell McAlpine her former supervisor.

She said the whites knew of promotion opportunities before the blacks.



MC000156

Witness Testimony of Sandra Welch
McCall vs. USDA Rural Development

Ms. Welch (white) was interviewed in the Respondent facility on May 12, 2000 She was
Rifed at the same time as the Complainant. She is employed again in a temporary capacity.
She stated that she was not aware of the Complainant doing any of Patsy's job. .Patsy was a 7
in the office and she had the right to ask people to do work at her request.   She had
compassion for the work they had to do and saw that the Complainant and Arlesa may have
felt dumped on.  It was a difficult situation because she, Arlesa, Betty and Patsy all needed to
do interviews and there was no place to have them.  She had an office as did Patsy and the
supervisor.  She knew why the Complainant would have trouble with their work station being
tables with no phones or computers.

She didn't feel Art liked Lisa McCall,.  It was hard to say why it was just a feeling. She saw
shaking heads or eyes rolling.  She did not see overt verbal abuse of the Complainant. Art was
not there that much.  She stated that she could see that there was a management style of pre-
screening applicants.  It applicants had no way of meeting the standards for a loan they did
not encourage them to file an application.  She could see this might be seen as a denial of
services to Blacks.  There had been training on the pre screening and it was an accepted
practice and The agency did not frown on Art doing that type of evaluation.

She indicated that she felt in the middle and somewhat left out.  She stated she would have
rather gone to lunch with the Black employees but they did not want to eat with her.  She also
did not feel close to Betty .  She said there was a lot of tension in the office.  Ms Welch was
sympathetic to what was happening for the Complainant.  She stated it was hard to know you
were going to loose your job.

She said that they had a weekly planning meeting where mail was reviewed and positions
were mentioned. Quntin did not want ladies doing too much hard work.  He was nice.  She
indicated that the Blacks really had a network of talking perhaps more than the whites.  If
someone found out something they would let others blacks know.  It seemed they knew first.

She stated that the information about the reemployment priority list was not clearly
communicated.  They had a group meeting including everyone at the office to discuss the RIF.
They gave preferential treatment  from her experience .  There was one girl, Lisa and they
were determined to keep her.  She was a good worker and she fit in.  She said sometimes
people fit in ad sometimes they don't.  Lisa was personable and pretty and a good worker.  She
was a waitress, and was recruited from a restaurant.  She was a native that could be counted
as such and was smart and willing to work.

She does not remember filling out a reemployment priority list.  She was asked by the
investigator if she recalled signing the document dated  5-9-97 and she did not remember
doing so.  She stated  that she would not have had a typewriter at that time, and would not
have filled out the form from her home.      She stated that there was so much  stuff given to
them  that it was hard to know what was given to them.  She stated that Lisa McCall sort of
separated herself.  She may have lacked confident, but there was some reason that she stayed
separate.  There was another girl who was Asian and she was kept.  She was pretty and
attractive.

They would offer Sonya Davenport several positions because they really wanted to keep [her].
She said that the position that was not offered to the Complainant  and offered to Nancy
Buldog, was an example of how they operated.  If they didn't want someone they would
simply withdraw the job.

EXHIBIT
17

MC000157

MC000158

Witness Testimony of Arthur Powers
McCall vs. USDA Rural Development

Mr. Powers was interviewed by telephone on May 12, 2000. He stated that he has been with the Respondent for 20 years. He explained that the FSA was abolished 10-1-95 and the Rural Development Agency was established to handle individual loans. The FSA took over farm loans. He said that staff was moved there 11-7-96 and Quentin was promoted 1-5-97. On 3-4-97 he was detailed to supervise Luverne 2/3 days a week and did so until 6/2/00.

After the Redesign of the administration in 96, counties were redistributed to various offices. He said that the staff that was transferred there was not needed. He would not have kept them on if the decision had been based on actual need. He said Patsy was a 7 and was office manager. He stated that patsy had the authority to delegate tasks such as filing and copying. He indicated that staff knew of the rif because of the mock rif.

He said Patsy had the job of interviewing and closing the loans. He said that all had responsibility to work with heavy files. He stated he did not speak more harshly to the Complaint or Arlesa Hunter. He stated he had limited contact with the Complainant. He remembered one incident where the Complainant felt an applicant had lied and she wanted to give them a whooping. He told her to give it a rest. He said people were advised of promotions and information that came to the office by it being circulated. Each person could read and initial.
Mr. Powers was asked about the reemployment priority list. He stated that he though it was automatic that staff were placed on it. He verified that John Sasser was now deceased.

He denied discriminatory intent o inappropriate actions, decisions and language.

Summarized by the investigator, Shelagh Keleyhers



MC000160

Witness Testimony of Barbara Bennett
McCall vs. USDA Rural Development

Barbara Bennett was interviewed in person on May 12, 2000 and by phone several times between May 15, to May 19, 2000. After the 1995 separation of the FSA and the development of the Rural Economic Development Agency there was a transfer of functions where 42 people were sent to the FSA. This required changing of locations. The Presidents budget for fiscal year 1997 required restructuring to stay within budget limitations.. There was a decision to move to centralized servicing that would be handled in St. Louis. Many different notices were provided to inform staff about this. Chemical bank bid to take over the servicing of the loans. And the Sec of Agriculture made a push to keep the servicing in the agency by keeping the Servicing Center in St., Louis. They took away 600 FTE's (full time employees) This was effective for fiscal year 1997 so implementation began in 1996. They ended up allowing 147 FTE's for Alabama. . Administration did not know they would have to restructure again after the transfer of function. The original Transfer of Fundction had been quite stressful for staff, and had involved a lot of change including changing of locations, leases and the transfer of employees out of their system. They would have handled it differently if they had known about the redesign coming.

Ms Bennett explains that there are 55 service centers and the NRCS, FSA and Rural Development provide services in the service centers. There are 67 counties in Alabama but 55 authorized service centers. An office in a county that was not an authorized service center would not be able to be retained. They looked at many considerations in deciding how counties would be assigned to service centers. They looked at equalizing caseload, area served and number of staff needed to provide service. Some cases they had to rethink assignments because there were not staff to keep an office open. Crenshaw, was kept, which was the Director's home area ,but it was eventually closed because of lack of staff.

They were only required to go through the retention list once to give people opportunities to be offered an existing position. Ms. Bennett stated that they could not offer someone a higher grade than what they had. She stated that Sonya Davenport was at the top of the retention list. Ms Bennett was asked about Ms. Davenport's testimony that she had been offered a GS5 on 1-27-97 by District Director John Sosser. She agreed that after the Charging Party applied in June of 96 that Nancy Buldog was offered the GS 5/6 position and that Ms Buldog turned the position down. She stated that when it was rejected by Ms. Buldog that the position was left vacant. It was offered to Ms. Davenport who refused it. Ms. Bennett indicated that if someone was on the retention list that they could be offered only those positions that were in the grace they held. She indicated that the GS 4 postions were eliminated. They decided that since they would have to have less staff they would need people who could handle more functions at one time.

Ms. Bennettt indicated that there is a rif form to be filled out to be placed on the reemployment priority list. She stated that depending on where someone worked they could be considered for jobs only in the competitive area, a specific geographical area where they worked. She stated that the Charging Party wanted to be in the competitive area involving Montgomery. They gave her that benefit even though it was not in her competitive area.

They went above and beyond what was required. They had a mock rif to give people extra notice of the change coming. They had a round one and a round two where someone tu___ down position they could be put on end of line of the retention list. At the end of round they had several vacancies left they could go through the list again. They could not of___

**EXHIBIT**

Ms. Bennett stated that they did not fill the position after it was rejected by Ms. Davenport. It was a management decision.

The decision was made to eliminate the 4 position because with the reduction in staff they needed more people who could handle more complex duties. Individuals could compete for a 4/5 or a 5/6 if they met the time and grade requirements. The Charging Party was put on selection certificate. That means that she met basic qualifications for a position and was then considered a selection certificate and sent to Mr. Horn who decided. They are not ranked. As selecting official he could who he wanted.

In terms of adjusted service dates if they were outstanding they got extra 20 years, superior got extra 16 years , and fully successful received 12 additional years.

Summary by Shelagh Keleyhers, Investigator


EXHIBIT

MC000163

Witness Statement of Sonya Davenport
McCall vs. USDA Rural Development

Ms. Davenport was interviewed in person at the Respondent facility in Montgomery,
Alabama on May 12, 2000 and by telephone on May 19, 2000. Ms. Davenport (white)
worked in the Luverne office when the Complainant, Arlesa McCall (black)and Patsy
Williams (white) were transferred from Lowndes County when it was closed.

She said that Arlesa and Lisa were at tables in back of her and Sandra Welch (white). That
was the only place in the small space they had. There were not computers for Lisa and Arlesa
because there were not computer jacks and all knew they were going to be rifed. She did not
observe Mr. Powers being more harsh to black employees or applicants. She stated that her
supervisor Quentin (black) who was there before Mr. Powers came in to cover supervision one
or twice a week would have a meeting once a week . In that meeting all mail, promotion
opportunities were discussed. She said all mail was circulated and initialed by all.

She stated that all staff met with John Sasser (white) the District Director, who is now
deceased to discuss the rif. She thought all met with him personally. She herself did.

Sonya stated that she thought that being placed on a reemployment priority list was automatic
for all being rifed and that they would be called automatically if something came up were
there could be employed. She did not think she had to fill out anything for that to happen.

She stated that in her meeting with Mr. Sasser she was offered a transfer to a GS 5 position in
Baymonette County which she turned down. She would have had to move and did not want
to do so. She stated she was not aware that the position was advertised and that she had been
offered it in an attempt to keep her on instead of being rifed.

She said the stress in the office was intense for all because of the impending rif and she was
happy to leave when she did.

Summary by Shelagh Keleyhers



MC000164

MC000165

Witness Testimony of Elizabeth Lockett
McCall vs. USDA Rural Development

Ms Lockett (black) was interviewed by phone on May 16, 2000. She still lives at 2118 S Hines St. in Athens, AL 35611, Tel 256 233 5724. She was RIFED at the same time as the Charging Party from a GS 4 position in Limestone Co. She had 10 year of service. She served in the army from 81-84 but Veterans preference did not apply to her years of service. The only fault she found was that she was not allowed to apply veterans preference, but she later found out that it was correct that she did not qualify for Veteran's preference.

Ms Lockett was hired by OPM. She indicated her former boss heard of the job and let her know of it. She applied and was hired.

She believed she was automatically placed on the reemployment eligibility list when riffed. She was not told that she had to fill out a form. When she received her actual riff papers in January 97 she met with the district director, Ted Cook, and the county supervisor, Albert Butler. She stated the Limestone office closed and moved to Madison County and signed the RIF papers. In the January meeting she was given an official date for the RIF.

Ms. Lockett stated she did not get promoted to a five and was passed over twice she stated however her supervisor at the time was a black person.

She stated she did not fill out a form and does not remember if she was told to fill one out of not.

She stated a GS 3 employee who was black was let go a year earlier who did not have three years of service.

She indicated that the people to be RIFED were all brought down to Montgomery to a meeting telling them how to look for work and fill out a resume. Ms. Lockett stated that all there felt disappointed because no one from the state office came down to talk to them. People had questions and they were upset there was no one to answer them.

She stated that Ella Wells (black) was rehired several months ago by the USDA.

EXHIBIT

MC000166

MC000167

Witness Testimony of Kimberly Lawrence
McCall vs. USDA Rural Development

Ms. Lawrence was located through several telephone inquiries on May 15, 2000 and interviewed by telephone. She is a black female and was RIFED in April 1997. Her phone number is 334 585 3828 and she still lives at Route 4, Box 414 in Abbeville, AL 36310.

She stated that she was hired as a GS1 and was a GS 6 at the time of being rifed with 6.5 years of service. She was employed in the Dothan office. A Vicki Morris (white) was holding a higher grade level and was retained. And after the RIF there were no black employees left in the office in question. Ms. Lawrence believes that promotion and assignment of functions could have been handled and they both may have been retained.

She indicated that she was interviewed about the RIF in her home after the birth of a child and was given all papers concerned with the RIF. She indicated she filled out and submitted all forms that were given to her by Roger Traywick. She stated that any and all papers that was given were filled out and submitted. She had some awareness of the Re employment priority list but was not aware that she was to initiate action to receive priority consideration. She filled out all papers that were given to her.

She indicated that she had been told her most recent placement was because she did not have a child and she felt that she was treated differently when she had the obligations of children to be considered.



EXHIBIT

MC000168

MC000169

Witness testimony of Carnell McAlpine
McCall vs. USDA Rural Development

Mr. McAlpine was interviewed by telephone on May 15, 2000 and again on May 17, 2000..
Mr. McAlpine (black) holds a management position with the respondent and was the
Charging Party's supervisor for years before reorganization led to his being transferred to the
Farm Service Administration. Arthur Powers. He can be reached at the Respondent facility at
334 279 3601.

He said the Charging Party was a very good employee and excelled in the data entry type
work that was a part of her job. He indicated that in prior years he had filed a charge of
discrimination involving the director at that time, Horace Horn. on the basis of race/color
(black). It was mediated and resolved with a financial settlement

He feels the reorganization and RIF were tainted with racial bias because it impacted on what
he felt to be an unusually high number of black employees in the lower GS ranking.. He
indicated that John Slosser, who was the District Director (now deceased) and Arthur Powers
were stringent managers with little flexibility and not the sensitivity to be supportive to
minorities. He said Powers had a tendency to be picky leading to a management style that
would be problematic.

He explained that in 1995 there was a transfer of functions when the farming program went
from the ASCS (Agricultural Stabilization and Conservation Service) to the Farm Services
Agency.. The FSA took over farm loans and the Rural Economic and Community
Development Agency was formed to handle individual loans. No one lost jobs but 42 had to
transfer. There was then a reduction in the number of Districts serving Alabama.

He indicated there was no sense to how the reorganization was done. He indicated that
Lowndes County had an extremely high number of applications and served the highest
minority population and it was eliminated and Crenshaw County was retained in the
original reorganization.. He indicated that the latter county had a high number of white
residents and a much lower usage of the Rural Development Services. He stated the county
that was retained was the home area of the Director. The result of the reorganization would
be to make it much harder for individuals to receive services.

Summarized by investigator, Shelagh Keleyhers



**EXHIBIT**

MC000170

MC000171

Witness testimony of Quentin Harris
McCall vs. USDA Rural Development

Mr. Harris (black) was interviewed on May 12 in the respondent facility. He supervised the
Complainant from the time She, Arlesa Hunter and Patsy Williams came to the Luverne
office. He was promoted and stopped being responsible for supervision there at the first of the
year. Art powers was acting supervisor and was there several days a week there after.

Harris indicated he had been with the Respondent for 8 years. He stated there was no hook
ups for additional computers and the office lay out was because they were in a temporary
situation and staff had notice that the rif was coming. He said there was no plan to bring in
furniture when the staff would be reduced. He said there was a stand-a-lone unit available for
staff to use and it was shared and met people's needs. He said he did a lot of the working
with heavy files. He stated that there was a back log of old filing from the old office and he
distributed to the staff that would have handled it in the old office.

He stated he had to coach the Charging Party on her attitude twice. She had gotten
disheartened and it showed in her work.

Mr. Harris would have been responsible for the original seating arrangements that the
Complainant objected to . He stated there was not room in the office they were in for two
additional desks.

Summarized by the investigator, Shelagh Keleyhers



EXHIBIT

MC000173

Witness Testimony of Patsy Williams
McCall vs. USFDA Rural Development.

Ms. Williams was interviewed in person on May 12, 2000 and briefly by phone on May 19, 2000. Ms. Williams (white) was a seven in the Luverne office. She transferred there with the Complainant. She was a GS 7 and had office management duties. She said she did filing and does so to this day. She did not feel the Complainant and Arlesa were singled out for harder work with files and filing. The copying and filing was necessary for the office. Their works stations were temporary because the rif was coming.

She was not aware of verbal abuse by Powers. She said once the Complainant got mad and shoved the papers off the top of her desk. She said Quentin had weekly meetings to discuss openings and that mail was circulated and initialed. All would have notice of openings.

She felt Art was a nice person and business like.

Summarized by the Investigator, Shelagh Keleyhers

EXHIBIT

MC000175

Witness Testimony of Betty Reynolds
McCall vs. USDA Rural Development.

Betty Reynolds was interviewed by telephone on May 10, 2000 and May 17, 2000. She
indicated that all made copies to send information to the Centralized service center. All were
responsible to intermingle files.   The files could be heavy but all did so at different times.
She said she cleaned the supply cabinet for three day once and all had to pitch in to handle
the office needs. Betty was not aware of verbal abuse. She said Art was laid back and quiet.

She said announcements were circulated and initialed.


Summarized by investigator, Shelagh Keleyhers

**EXHIBIT**

MC000177

Witness testimony of Doris Dennis
McCall vs. USDA Rural Development

Doris Dennis was RIFED at the same time as the Charging Party in this case. Personnel records were not provided on Doris. According to Barbara Price they are in St. Louis. The address of 103 West Carnegie Lane, Enterprise, AL 36330 was provided but no phone number was available. She was located through research living with her husband Frank in Huntsville Alabama at 256 721 7762.

Ms. Dennis (white)was interviewed by phone on May 15 & 16, 2000. She indicated that she Her specific notice of the RIF date Jan 23. 978 Boss, Roger, had her read it and sign it. He spent a lot of time with her, and he would have taken any amount of time needed for her to be clear about what was transpiring. She had no interest in being considered for reemployment. She indicated that one thing that was to be in the packet she received was not there and she called it to his attention. The documents indicated her severance pay would be computed and attached and it was not. When she signed acknowledging receipt of her packet she noted that the document that was to be included was not there. She signed but noted the omission at the time she signed her RIF information.

In the RIF information she received there was included a form and an explanation and told how to apply to be on reemployment priority list. It was stapled in with the packet. She knew that she had limited options. If a job came available it would be available to her only if it was the same grace and in the same commuting area. The commuting area was very narrow. There was only one office where she could bump, and there was no one there she could bump. She feels the redesign of the districts was set up to redesign people's options to be retained. Job descriptions were rewritten so limit people's ability to bump others. What she felt they were trying to do was keep people from relocating. She signed it on 1-24-97.

She was in the Dale Co office in Ozark She had 3 years and one month. She did not mind being laid off. She was then free to handle family considerations. She was not scared of her boss and did not feel picked on. Her supervisor was Roger and he was the District Director of District 5.

It says how to apply fill out the app and submit within 30 day after separation. How long it would be effective. She was told there was a teleconference but it was canceled. Questions could be handled in advance . It would have been all in the state who were to be riffed

Lockett, Rhonda Lee, Ella Webb (Co 45), David Sullivan, Kim Lawrence, George Monfee, Camilla Meks, Sarah Thorn (Will be sent info) , Alisa Hunter, Sonya Davenport, Sandra Welsh, Lisa McCall, (Crenshaw County), They were going to call on April 10, 1997 but it did not happen because of lack of interest. She told she was not interested

Ms. Dennis was quite cooperative and helpful.

EXHIBIT

MC000179

*Shelagh*

ALABAMA - PERSONNEL SEPARATED OR DOWNGRADED EFFECTIVE 4/27/97

| NAME/GRADE/TITLE | RACE/SEX | ACTION TAKEN |
|---|---|---|
| Ricky Knouff | White Male | Position Change from CDM-11 to CDS-9/Madison L.O. |
| Ann Chavers | White Female | Position Change from CDS-9 to CDT-7/Monroe L.O. |
| Elizabeth Lockett<br>CDA-4, Limestone L.O. | Black Female | RIF'd |
| Alma Bristow | Black Female | Position Change from CDT-6 to CDA-5/Lee L.O. |
| Linda McCoy | White Female | Position Change from CDT-6 to CDT-5, Talladega |
| ~athy Cline | White Female | Position Change from CDS-9 to CDT-7, Calhoun L.O. |
| Sonya Davenport<br>CDA-5 Crenshaw L.O. | White Female | RIF'd |
| Doris Dennis<br>CDA-4 Dale L.O. | White Female | RIF'd |
| Leonard Fagerstrom | White Male | Position Change from CDS-12 to CDS-11, Covington L.O. |
| Arlesa Hunter<br>CDA-5 Crenshaw L.O. | Black Female | RIF'd |
| Kimberly Lawrence<br>RDA-6, Area 2 Office | Black Female | RIF'd |
| Rhonda Lee<br>CDA-4, Madison L.O. | White Female | RIF'd |
| Lisa McCall<br>CDA-4, Crenshaw L.O. | Black Female | RIF'd |
| Eloise Hilyer | White Female | Change to Lower Grade from CDT-7 to CDT-6 Elmore L.O. |
| ~ike Holtzclaw | White Male | Position Change from CDM-11 to CDS-9, Baldwin L.O. |
| Camilla Meeks | White Female | RIF'd |

EXHIBIT

CONTINUED - PAGE 2

| NAME/GRADE/TITLE | RACE/SEX | ACTION TAKEN |
|---|---|---|
| David Sullivan<br>CDS-9, Colbert L.O. | White Male | RIF'd |
| Sarah Thorn<br>CDA-6, Colbert L.O. | White Female | RIF'd |
| Ella Webb<br>CDA-5, Madison L.O. | Black Female | RIF'd |
| Sandra Welch<br>CDA-6, Crenshaw L.O. | White Female | RIF'd |

EXHIBIT

Post RIF - Downgrades

| | | | |
|---|---|---|---|
| Mike Moore | GS-11 | GS-9 | W M |
| Hugh Dunn | GS-1165-9 | GS-1101-6 | W M |
| E. Hilyer | GS-7 | GS-5 | W F |
| R. Knouff | GS-11 | GS-9 | W m |
| M. Holtzclaw | GS-11 | GS-9 | W m |
| C. Cline | 1165-9 | 1101-7 | W F |
| E. Elliott | GS-11 | GS-9 | W m |
| B. Bonds | GS-12 | GS-9 | W m |
| L. Fagerstrom | GS-12 | GS-11 | W M |
| K. Branford | GS-11 | GS-9 | W F |
| Tanya Hayes | GS-8 | GS-7 | W F |
| T. Bradley | GS-12 | GS-9 | W m |
| B. Heath | GS-12 | GS-9 | W m |
| A. Bristow | GS-6 | GS-5 | B F |
| A. Chavers | 1165-9 | 1101-7 | W F |
| L. McCoy | GS-6 | GS-5 | W F |

EXHIBIT

MC000182

MC000183

*Recd 5-26-98*
*foled 5-26-98*

SUBCHAPTER 9 - ESTABLISHMENT OF THE REEMPLOYMENT PRIORITY LIST

| | |
|---|---|
| **U S D A**<br>Reemployment Priority List<br>Registration Sheet | Register ( )<br>Update ( ✓ )<br>Delete ( ) |

1. Name of servicing personnel office **Rural Development.**
   Address **4121 Carmichael Rd. Suite 601 Sterling Cent**
   Phone **334-279-3400**    Employee's Agency **USDA**

2. Name of registrant    (Last)        (First)        (Middle)
   **MCCall**            **Lisa**

3. Address    (Street)        (City)        (State)    (Zip Code)
   **251 Sullivan Trace    Monty.    Al    36105**

| 4. Tenure Group | 5. Date of Separation | 6. Work Schedule |
|---|---|---|
| ☐ 1AD  ☐ 2AD | | ☒ Full-time |
| ☐ 1A  ☐ 2A | **4-22-97** | ☐ Part-time  Hours per-pay-period _____ |
| ☒ 1B  ☐ 2B | | ☐ Intermittent    ☐ Seasonal |

7. Available for temporary appointment.                                    ☐ Yes  ☐ No
   Available for 90 days or less appointment.                          ☐ Yes  ☐ No

8. Series for which qualified

| | Pay Plan | Series | Highest Grade Eligible | Lowest Grade Acceptable |
|---|---|---|---|---|
| Present Series | G S | 1 1 8 1 | 0 1 4 | 0 1 4 |
| Series 2 | G S | 0 3 2 2 | 0 1 4 | 0 1 4 |
| Series 3 | | | | |
| Series 4 | | | | |
| Series 5 | | | | |

(continue series on reverse, if needed)

| 9. Commuting area from which displaced<br>State Abbv: **Al**<br>City: **Montgomery**<br>City Code: | 10. Reason for Registration<br>☒ Reduction-in-Force<br><br>☐ Recovered or restored compensable or disabled employee |
|---|---|

11. To be completed by the employing office when candidate is being removed from the RPL.

   Name of Employing Office _____

   ☐ Reason for removal:
   ☐ (1) Appointment (give Agency, type of appointment, work schedule)

   _____

   ☐ (2) Employee's written request (attach)

   ☐ (3) Declination & reasons
   _____

EXHIBIT
24

MC000184

MC000185

SUBCHAPTER 9 - ESTABLISHMENT OF THE REEMPLOYMENT PRIORITY LIST

| | |
|---|---|
| **U S D A**<br>Reemployment Priority List<br>Registration Sheet | Register ( )<br>Update (X)<br>Delete ( ) |

**1.** Name of servicing personnel office ___Alabama State Office___

Address ___4121 Carmichael Road, Suite 601; Montgomery, AL 36106-3683___

Phone ___(334) 279-3400___    Employee's Agency ___USDA - RD___

**2.** Name of registrant    (Last)        (First)        (Middle)

WELCH, SANDRA H.

**3.** Address        (Street)        (City)        (State)    (Zip Code)

Route 1, Box 542;        Highland Home, AL        36041

| 4. Tenure Group | 5. Date of Separation | 6. Work Schedule |
|---|---|---|
| ☐ 1AD  ☐ 2AD<br>☒ 1A   ☐ 2A<br>☐ 1B   ☐ 2B | 4-27-97 | ☒ Full-time<br>☐ Part-time  Hours per-pay-period____<br>☐ Intermittent   ☐ Seasonal |

**7.** Available for temporary appointment.                ☒ Yes  ☐ No
Available for 90 days or less appointment.       ☐ Yes  ☐ No

**8.** Series for which qualified

| | Pay Plan | Series | Highest Grade Eligible | Lowest Grade Acceptable |
|---|---|---|---|---|
| Present Series | G S | 1 1 0 1 | 6 7 | 5 0 |
| Series 2 | | | | |
| Series 3 | | | | |
| Series 4 | | | | |
| Series 5 | | | | |

(continue series on reverse, if needed)

| 9. Commuting area from which displaced<br>State Abbv: AL<br>City: Luverne<br>City Code: 1950 | 10. Reason for Registration<br>☒ Reduction-in-Force<br>☐ Recovered or restored compensable or disabled employee |
|---|---|

**11.** To be completed by the **employing office** when candidate is being removed from the RPL.

Name of Employing Office _____

☐ Reason for removal:
(1) Appointment (give Agency, type of appointment, work schedule)

_____

☐ (2) Employee's written request (attach)

☐ (3) Declination & reasons

EXHIBIT
25

MC000186

MC000187

FEB-05-1999  13:48    USDA EMPLOYMENT

From:       Barbara Lincoln
To:         Juanda, Thelma, Theresa
Date:       7/27/98 8:46am
Subject:    Settlement

The case for Sylvia Haux (#980538) has been resolved by settlement agreement
signed on 6/25/98.  Please note.

Also Juanda & Thelma, the case for Lisa McCall needs to be forwarded to RD for
assignment to counseling.  We requested a counselor's report based on Ms.
McCall's letter filing formal.  David Chilton called me this morning to say
they never had it.  I told him I would fax a memo to him transmitting it
requesting it be assigned for counseling.  Another one off our list ... for
now anyway.

*Come see
me —
Please
Juanda*

*It's Next↑*

*FAX TO RD w/cover
memo — Put fax cover +
memo in file —
  Return for dismissal
        JT 8/0/98*

*ʋ*

EXHIBIT

MC000188

MC000189

FEB-03-1999  13:48    USDA OFFICER



United States
Department of
Agriculture

Office of the
Assistant Secretary
for Administration

Office of
Civil Rights

1400 Independence
Avenue SW

Washington, DC
20250

February 3, 1999

TO:        Regina Claiborne
           Deputy Director, Civil Rights
           Rural Development

FROM:      Juanda Taylor, Chief     *Juanda B Taylor*
           Pre-Investigation Branch

SUBJECT:   Request for Counseling - Lisa McCall

This memo transmits our second request to assign the attached complaint to counseling. The complaint was filed by Lisa McCall of Montgomery, Alabama.

Our original request to initiate counseling for the complainant was made via fax to you on August 11, 1998, transmitting Ms. McCall's letter dated April 20, 1998 (copy attached). The complaint was received in this office May 14, 1998, and a counselor's report was requested on May 28, 1998. On July 7, 1998, an inquiry was made by Barbara Lincoln of this office regarding the status of counselor's reports requested but not yet received, including one for Ms. McCall's complaint. It was determined and discussed at that time that the complaint had not been through counseling and would be forwarded to you.

Ms. McCall contacted this office today and spoke with Ms. Lincoln regarding her complaint. After reviewing the case file and obtaining information from an employee of Rural Development's Civil Rights Staff, it appears that Ms. McCall was never contacted to initiate counseling. Therefore, I am resubmitting this complaint to you for the purposes of expediting counseling. For the purposes of the 45-day timeliness for initiating an informal complaint, the date of contact for the complaint is May 14, 1998. Please be sure to make a special notation in preparing a subsequent counselor's report in the event the complaint is later filed formally.

I appreciate your immediate attention to this matter. If you have any questions, please give me a call at (202) 720-7933.

Attachments

cc:    Lisa McCall

EXHIBIT

MC000191

*E EUNAS updated*
*6/6/99*

# EEO COUNSELOR/MEDIATOR REPORT

*99 0587*

**NAME OF EEO COUNSELOR:**   Matthew Miller

**ADDRESS:**  Civil Rights Staff
USDA, Rural Development
NASA Bldg.
Washington, DC 20250-0304

**PHONE NUMBER:** 202-692-0093              **DATE OF REPORT:** May 6, 1999

## INFORMATION ABOUT THE COMPLAINANT

**NAME:**  Lisa McCall

**POSITION TITLE/SERIES/GRADE:** Former Employee, GS - 4/7

**ORGANIZATION:** Rural Develoment, County Office

**WORK PHONE:**   N/A          **HOME PHONE:**  (334) 288-5675

**ANONYMITY:** Y __  N _X_          **UNION:** Y ___  N _X_

**COMPLAINANT REPRESENTATIVE (if any):**

**Phone Number:**

**RESPONDING OFFICIAL(s):**

Arthur Powers, Office Manager
Wilcox County Office
Luverne, Alabama
(334) 682-4116

Horace H. Hom, Jr., State Director
4121 Carmichael Rd. Suite 601, Sterling Centre
Montgomery, Alabama  36106-3683

## COMPLAINT INFORMATION

**BASIS(ES) OF COMPLAINT:**  Race (black)

EXHIBIT

In a telephone conversation with Arthur Powers  (White), Community Development Manager, Luverne, Alabama.  Mr. Powers stated that he was the complainant's supervisor for about one (1) year.  He further stated that he recall having very little conversations with the complainant and he do not remember having any crosswords with her. Mr. Powers also stated that he do recall one instance when the complainant was dealing with a customer when a problem arised and he told the complainant "to shut up and let it die".  Mr. Powers stated that he did not have much to say to the complainant.  He denied any knowledge of harassment (non-sexual).

Horace Horn, Alabama State Director, stated that eleven (11) employees including the complainant was separated as a result of the RIF.  He further stated that he is convinced that Human Resources handled everything correctly during the RIF.  Mr. Horn also stated tha he can not remember much details about the complainant.

**This complaint was original filed and received in the Office of Civil Rights on May 14, 1998.  Since no EEO counseling was conducted, this complaint was remanded to the agency for counseling on February 3, 1999 (see attach February 3, 1999 memo from the Office of Civil Rights).**

**RESOLUTION EFFORTS:**
Complainant requested to be reemployed in Rural Development in Alabama and given backpay. The State Director stated that there was no position available.  No resolution was attained on the complaint at issue.

**CLOSURE:**  A Notice of Right to File a Formal Complaint was issued to the Complainant on March 22, 1999.

Matthew L. Miller
EEO Counselor/Mediator
Civil Rights Staff
Rural Development
202-692-0093

MAY 6, 1999
Date



Attachments
significant docs.



EXHIBIT

3

MC000193

MC000194

**ISSUE(S) OF COMPLAINT:** Harassment (Non-Sexual)

## COUNSELING PROCESS

**DATE OF FIRST CONTACT:** May 14, 1998 (see memo dated February 3, 1999).

**EXTENSION GRANTED:** No

**DATE RIGHT TO FILE NOTICE ISSUED:** March 22, 1999.

**DATE COUNSELOR'S REPORT ISSUED:** May 6, 1999.

**DATE RIGHT TO FILE RECEIVED:** March 29, 1999.

**THE ISSUE(S):** Whether the complainant was subjected to harassment (non-sexual), by her supervisor and failure to be placed on an Reemployment Priority List.

**SPECIFIC CORRECTIVE ACTIONS REQUESTED BY COMPLAINANT:**

Reemployment in the Alabama Rural Development Office, and Backpay from April 27, 1998 to present.

**NAME, TITLE, WORK ADDRESS, PHONE NUMBER, AND NATURE OF INVOLVEMENT OF *OTHERS IN THE CASE*:**

*FACTS* **DEVELOPED IN THE INQUIRY:**

Ms. McCall alleges that because of her race (black) she encountered harassment from her supervisor Arthur Powers. The complainant states that the harassment included being assigned duties that whites did not want to perform; being placed in an environment where there was insufficient work space, equipment and no desk; lifting and moving heavy office equipment within the office, which the whites were not required to do; and subjected to verbal abuse by Mr. Powers. The complainant further stated that she worked in the Lowndes County Office (Hayneville, Alabama), until it closed in November 1997 due to the State Restructuring Plan. She further states that she was transferred to Luverne, Alabama, and worked there from November 1997 to April 27, 1998, when the RIF took place. The complainant stated that a position came open in Mobile, Alabama before the RIF and she did not get the position. She states a white female with less seniority than her got the position. The complainant further stated that she was not place on the reemployment priority list and referred for employment within the State of Alabama.



MC000195

**Geographic Jurisdiction:** States of Alabama and Mississippi

**Birmingham District Office**
EEOC
1900 3rd Avenue, North, Suite 101
Birmingham, Alabama 35203-2397

Commercial No. – 205-731-1359
Toll-free – 1-800-669-4000
Toll-free TDD – 1-800-669-6820

EXHIBIT

MC000196

MC000197

**USDA**

.ed States
Department of
Agriculture

Office of the
Assistant Secretary
for Administration

Office of
Civil Rights

1400 Independence
Avenue SW

Washington, DC
20250

FEB   3 2000

Ms. Lisa McCall
251 Sullivan Trace
Montgomery, AL 36105

Dear Ms. McCall:                    RE: Complaint #USDACR990582

Your complaint of discrimination against the Rural Development (RD) has been
reviewed. Your complaint dated April 5, 1999, was received on April 12, 1999, and has
been assigned the complaint number shown above. Please refer to this number in any
communication regarding your complaint. We are accepting and referring for
investigation the following:

> Did the agency discriminate against the complainant on the basis of race
> (Black) and color (not specified) when it separated the complainant from
> employment as a reduction in force in or around April 1998; failed to place
> her name on the reemployment priority list; and subjected her to a pattern
> of harassment prior to her separation which included assignment of duties;
> insufficient work space and verbal abuse by her supervisor?

If you believe that the issue in your complaint is not correctly identified, please notify me,
in writing, within 7 calendar days after your receipt of this letter, specifying why you
believe that the issue is not correctly identified.

Your complaint is designated as a mixed case complaint. The complaint was filed under
29 C.F.R. Part 1614, which specifies that the Department must issue a final decision on
the complaint within 45 days of the completion of the investigation. If the decision is not
issued within 120 days of the date the Department received your formal complaint, you
have a right to file an appeal with the Merit Systems Protection Board or file a civil
action, but you may not file both. We normally will not delay the process because of
regulatory time frames that we must meet. Enclosed is an explanation of the EEO
complaint process for mixed case complaints.

If you or your representative (if applicable) has a change of address, you are responsible
for notifying this office immediately. Failure to do so may limit your recovery or result in
the dismissal of your complaint.



2

If you have any questions about the status, the conduct of the investigation, or about the scope of the matter accepted above, please contact the Employment Complaints Division at (202) 720-7467.

Sincerely,

Delores H. Ruffin
Acting Chief
Employment Complaints Division

Enclosure

cc:   Cheryl Prejean Greaux, RD
      Denise A. Banks, Deputy Director for Employment

**EXHIBIT**

MC000199