## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| LISA McCALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) Civil Action No.: | **02:06-cv-039-MHT** |
| | ) | |
| MIKE JOHANNS, Secretary, | ) | |
| United States Department | ) | |
| of Agriculture, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF HIS MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

_____Come now the defendants, by and through Leura G. Canary, United States Attorney for the Middle District of Alabama, and provides this Honorable Court with a reply brief in support of their Motion to Dismiss, or in the alternative, for Summary Judgment.

## STATEMENT OF FACTS

Unless otherwise indicated, the defendants adopt and incorporate by reference, as if fully set forth herein, the statement of facts and factual averments contained in its memorandum brief in support of their motion to dismiss, or in the alternative, for summary judgment that was filed in this cause on April 16, 2007.

## THE APPLICABLE LAW

The defendant having stated legitimate non-discriminatory reasons for its actions,

the presumption of discrimination created by the shifting burden analysis of McDonnell Douglas[1] disappears from this case and the plaintiff is required to submit evidence showing that each of the legitimate non-discriminatory reasons offered by the defendant are pretextual.  Walker v. Prudential Property and Casualty Insurance Company, 286 F.3d 1270, 1274 (11th Cir. 2002).  "In other words, Plaintiffs must provide sufficient evidence to allow a reasonable fact finder to conclude, at a minimum, that the proffered reasons were not actually the motivation for the failure to train and promote them.  Alexander v. Vesta Insurance Group, Inc., 147 F.Supp.2d 1223, 1236 (N.D. AL 2001), citing, Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir.1997), cert. denied, 522 U.S. 1045, 118 S.Ct. 685, 139 L.Ed.2d 632 (1998).  The plaintiff may accomplish this: "(1) by showing that the legitimate nondiscriminatory reasons should not be believed; or (2) by showing that, in light of all of the evidence, discriminatory reasons more likely motivated the decision than the proffered reasons."  Id., citing, Mayfield v. Patterson Pump Co., 101 F.3d 1371, 1376 (11th Cir.1996); and Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). "Since it is [the plaintiff's] burden to establish pretext, he must present 'significantly probative' evidence on the issue to avoid summary judgment." Buzzi v. Gomez, 62 F.Supp.2d 1344, 1350 (N.D. FL. 1999), quoting, Young v. General Foods Corp., 840 F.2d 825, 828 (11th Cir.1988).

---

[1]    McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

In the employment law context, once the plaintiff has presented a prima facie case of his claim and the employer has articulated legitimate, nondiscriminatory reasons for its actions, a plaintiff is entitled to survive summary judgment only "if there is sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged action."  Combs v. Plantation Patterns, 106 F.3d 1519, 1529 (11th Cir. 1997).  "An issue of fact is "material" if it is a legal element of the claim, as identified by the substantive law governing the case, such that its presence or absence might affect the outcome of the suit."  Burney v. Rheem Manufacturing Company, Inc., 196 F.R.D. 659, 663,(M.D. AL. 2000), *quoting,* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party.  Id., *quoting*, Matsushita Electrical Industrial Company v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

"[G]iven the ease of pleading cases of discrimination, plaintiffs seeking to avoid summary judgment should be strictly held to the requirements of Rule 56(e);  the plaintiff must present specific nonconclusory facts that would support a jury verdict against the particular defendant on discriminatory intent."  Ratliff v. Dekalb County Georgia, 62 F.3d 338, 314, (11th Cir. 1995), *citing*, Edwards v. Wallace Community College, 49 F.3d 1517, 1524 (11th Cir.1995).

Rule 56 (e) of the Federal Rules of Civil Procedure:

> requires Plaintiff to 'set forth *specific facts* showing there is a genuine issue for trial.' FED. R. CIV. P. 56(e) (emphasis added).  Plaintiff may not merely rest on his pleadings and survive summary judgment. Id. [Celotex, 477 U.S. at 323, 106 S.Ct. 2548;  Fitzpatrick, 2 F.3d at 1115- 1116.] Moreover, '[s]ummary judgment cannot be avoided ... based on hunches unsupported with significant probative evidence.' Raney v. Vinson Guard Service, Inc., 120 F.3d 1192, 1198 (11th Cir.1997).  In other words, a plaintiff cannot interpose genuine issues of material fact with 'a mere inference based on speculation and conjecture.' Lowie v. Raymark Ind., 676 F.Supp. 1214, 1216 (S.D.Ga.1987).

Kennedy v. Kelly Temporary Services, Inc., 95 F.Supp.2d 1288, 1293 (M.D. Al. 2000).

"'This court has consistently held that conclusory allegations without specific supporting facts have no probative value.' *See* Evers v. General Motors Corp., 770 F.2d 984, 986 (11th Cir.1985)." Leigh v. Warner Brothers, Inc., 212 F.3d 1210, 1218 (11th Cir. 2000).

"[O]ne who resists summary judgment must meet the movant's affidavits with opposing affidavits setting forth specific facts to show why there is an issue for trial." Id., *quoting,* Gossett v. Du-Ra-Kel Corp., 569 F.2d 869, 872 (5th Cir.1978); Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir.1981) (en banc);  and Rule 56(e), Federal Rules of Civil Procedure.   Furthermore:

> The Rules are clear:  "Supporting and opposing affidavits *shall* be made on personal knowledge." Fed.R.Civ.P. 56(e) (emphasis added).  Rule 56(e)'s personal knowledge requirement prevents statements in affidavits that are based, in part, "upon information and belief"--instead of only knowledge-- from raising genuine issues of fact sufficient to defeat summary judgment. *See* Stewart v. Booker T.

Washington Ins., 232 F.3d 844, 851 (11th Cir.2000) ("upon information and belief" insufficient); Fowler v. Southern Bell Tel. and Tel. Co., 343 F.2d 150, 154 (5th Cir.1965) ("knowledge, information and belief" insufficient); Robbins v. Gould, 278 F.2d 116, 118 (5th Cir.1960) ("knowledge and belief" insufficient). [FN7]  Likewise, an affidavit stating only that the affiant "believes" a certain fact exists is insufficient to defeat summary judgment by creating a genuine issue of fact about the existence of that certain fact. Jameson v. Jameson, 176 F.2d 58, 60 (D.C.Cir.1949) ("Belief, no matter how sincere, is not equivalent to knowledge."); see also Tavery v. United States, 32 F.3d 1423, 1426 n. 4 (10th Cir.1994); Hansen v. Prentice-Hall, Inc., 788 F.2d 892, 894 (2d Cir.1986).  Even if the affidavit is otherwise based upon personal knowledge (that is, includes a blanket statement within the first few paragraphs to the effect that the affiant has "personal knowledge of the facts set forth in th[e] affidavit"), a statement that the affiant believes something is not in accordance with the Rule.  See Cermetek, Inc. v. Butler Avpak, Inc., 573 F.2d 1370, 1377 (9th Cir.1978) (equating "I understand" statement in affidavit to inadmissible "I believe" statements and concluding that statement is inadmissible despite general averment to personal knowledge at beginning of affidavit).

Pace v. Capobianco, 283 F.3d 1275, 1278-1279 (11th Cir. 2002).  In sum, the plaintiff must state specific facts or present some objective evidence that would enable the court to find that he is entitled to relief under Title VII; he may not rely upon the bald assertions contained in his pleadings.  See Blount v. Alabama Cooperative Extension Service, 869 F.Supp. 1543, 1553 (M.D. Ala. 1994) (a "plaintiff's allegations, opinions, and conclusory statements are insufficient to create an issue of fact as to show intent to discriminate.").  After all, "'[d]iscrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent.' Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1262

(11th Cir.2001)." <u>Walker</u>, 286 F.3d at 1274.

## I.    THE PLAINTIFF HAS FAILED TO DEMONSTRATE THAT THE DOCTRINE OF RES JUDICATA BARS HER CLAIMS OF RACE DISCRIMINATION PERTAINING TO THE REDUCTION IN FORCE.

As presented in its first brief in this matter, the plaintiff appealed her dismissal from federal service pursuant to the RIF and the alleged deprivation of her re-employment rights to the MSPB, which split the claims into two separate cases.[2]  Her claims regarding her re-employment rights were filed under MSPB case no. AT-3443-0020-I-1,[3] while her claims regarding the propriety of the RIF were filed under case no. AT-0351-0019-I-1.[4]

In an Initial Decision dated January 10, 2002, the MSPB dismissed the AT-0351-0019-I-1 appeal regarding the RIF, with prejudice, on motion of the plaintiff's counsel. The decision became a final judgment of the MSPB on February 14, 2002 and was not thereafter appealed.[5]

The plaintiff argues that the order of the MSPB dismissing her dismissal from federal service pursuant to the RIF was reversed "on its own motion,"in an order issued

---

[2]    Defendant's Exhibit 35 (DEX 35), US Merit Systems Protection Board, Appeal Form, dated 10 October 2001.

[3]    Defendant's Exhibit 36 (DEX 36), US Merit Systems Protection Board, Docket Number  AT-3443-0020-I-1, "Initial Decision," dated October 29, 2001.

[4]    Defendant's Exhibit 37 (DEX 37), US Merit Systems Protection Board, Docket Number  AT-0351-0019-I-1, "Initial Decision," dated January 10, 2002.

[5]    Id.

September 27, 2002.[6]  The plaintiff's assertions are just plain wrong.

The order offered by the plaintiff in support of her assertion is an order issued in case no. AT-3443-02-0020-I-I, dealing with the plaintiff's re-employment rights.[7] Interestingly, the order cited by the plaintiff notes the disposition of her claim regarding her dismissal pursuant to the RIF.[8]  Moreover, the order cited by the plaintiff states in pertinent part, "[n]evertheless, we reopen this appeal to address the issue of the whether the appellant received proper notice of the elements of proof required to establish **Board jurisdiction over her reemployment priority rights appeal**," and concludes by stating, "we must remand this appeal to the regional office to provide the appellant with the opportunity to establish **Board jurisdiction over her reemployment rights appeal.**"[9] (Emphasis added).

The plaintiff's statement, "there is no argument that can be made [that] any claims other than possibly her RIF claims can be subject to bar by res judicata,"[10] is quite

---

[6]    "Plaintiff's Memorandum Brief in Opposition to the Defendant's Motion for Summary Judgment," filed on May 10, 2007, p. 12.

[7]    See, "Plaintiff's Memorandum Brief in Opposition to the Defendant's Motion for Summary Judgment," Exhibit 35.

[8]    See, See, "Plaintiff's Memorandum Brief in Opposition to the Defendant's Motion for Summary Judgment," Exhibit 35, p. 2, footnote.

[9]    See, "Plaintiff's Memorandum Brief in Opposition to the Defendant's Motion for Summary Judgment," Exhibit 35, pp.: 3, ¶ 6;  4, ¶ 7.

[10]    "Plaintiff's Memorandum Brief in Opposition to the Defendant's Motion for Summary Judgment," p. 13.

accurate.  In fact, the only claim the defendant has ever maintained that was subject to the doctrine of res judicata was the plaintiff's claims regarding her dismissal pursuant to the RIF.  For the reasons cited in its original brief and given the lack of persuasive factual or legal arguments to the contrary offered by the plaintiff, the plaintiff's claims regarding her dismissal pursuant to the RIF are due to be and should be dismissed.

## II.    THE PLAINTIFF HAS CONCEDED THAT SHE WAS NOT SUBJECT TO A HOSTILE WORK ENVIRONMENT ON THE BASIS OF HER RACE.

On the basis of the plaintiff's statement, "Plaintiff concedes any and all claims of harassment or hostile work environment,"[11] the defendant's motion for summary judgment on said claims is due to be and should be granted.

## III.    PLAINTIFF'S DISCRIMINATION CLAIMS OTHER THAN THOSE BASED ON THE RIF AND THE RPL

In her administrative complaints of discrimination, the plaintiff consistently asserted that she was individually harassed by Art Powers when he:

1)    assigned her duties that caucasians did not want to do and/or assigned her duties involving lifting and moving;

2)    assigned her insufficient workspace;

3)    verbally abused her.

During her deposition she particularly alleged that on less than 10 occasions Mr.

---

[11]    "Plaintiff's Memorandum Brief in Opposition to the Defendant's Motion for Summary Judgment," p. 14.

Powers used the phrase "you people" when addressing her and that on the basis of his tone and demeanor she felt he didn't like her and/or he didn't want her in the office with him.[12]  She also submitted that she felt harassed when Mr. Powers assigned her duties involving the integration of files from the Hayneville office into those existing in Luverne as well as when he directed her to pack files from the Hayneville office for shipment to a central location.[13]  Similarly, the plaintiff felt she was harassed when her timekeeping responsibilities were transferred by Mr. Powers to Ms. Patsy Williams.[14]  Finally, the plaintiff alleged that she was harassed by assignment of office space and equipment once she moved to Luverne.

As noted in the previous section, the plaintiff concedes in her response that these actions, any one of them, or all of them in the aggregate, are insufficient to demonstrate an actionable hostile working environment.  She asserts, however, that each one "should have been and must be viewed in more accurate averments of discrimination or retaliation," and that each of these, "should have been considered by the EEOC as discrimination claims rather than harassment claims."[15]

---

[12]     DEX 26, p. 71, lines 5-13, p. 72, lines 6-12; p. 77, lines 2-5; p. 143, lines 6-17, 22-25; p. 144, lines 1- 24

[13]     DEX 26, p. 128, lines 15-25; p. 129, lines 1-25; p. 130, lines 1-25; p. 131, lines 1-20.

[14]     DEX 26, p. 146, lines 10-25; p. 147, lines 1-25; p. 148, lines 1-21.

[15]     "Plaintiff's Memorandum Brief in Opposition to the Defendant's Motion for Summary Judgment," p. 14.

The seeming deftness of the plaintiff's counsel to re-characterize these claims at this juncture is overshadowed, however, by his total failure to explain why he did not present these alleged acts as independent, discreet instances of alleged discrimination in the first instance to the agency during the administrative process. Describing the plaintiff as *pro se* during therein, counsel for plaintiff does not disclose that he himself was involved with this matter quite extensively throughout the administrative process that included stops at the agency's EEO offices, the EEOC and the MSPB. At no point along the torturous and exhausting trail to this Court did he ever raise, discuss, propagate or suggest that the independent acts he now alleges were discriminatory in and of themselves, were anything other than instances, examples, and/or acts of harassment. His candor, in acknowledging that these acts did not, as a matter of law, amount to an actionable hostile environment, while laudable, is insufficient to excuse his failure to properly assert these acts as discriminatory actions, if he thought they were, during the course of the administrative proceedings or to have alleged them as such in the plaintiff's amended complaints which he filed herein. For the reasons discussed below, the plaintiff's counsel's legal maneuvering should avail the plaintiff nothing.

**A)    The plaintiff is barred from raising these alleged acts of harassment as individual acts of discrimination at this juncture, due to her failure to amend her complaint to include same as individual acts of discrimination.**

Although Rule 8(a), Federal Rule of Civil Procedure, contemplates a liberal pleading standard for civil complaint, "[t]his standard however does not afford plaintiffs

with an opportunity to raise new claims at the summary judgment stage." Perkins-

Carrillo v. Systemax, Inc., 2006 WL 1553957, p. 13 (slip copy) (N.D. Ga. 2006). "At the

summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to

amend the complaint in accordance with Fed.R.Civ.P. 15(a)." Id. "A plaintiff may not

amend her complaint through argument in a brief opposing summary judgment. Id.,

*citing,* Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1314-15 (11th Cir.2004);

McShane v. U.S. Attorney General, 144 Fed.Appx. 779, 788-89 (11th Cir.2005); and

Cooley v. Great S. Wood Preserving, 138 Fed.Appx. 149, 153-54 (11th Cir.2005) (district

court properly dismissed plaintiffs' hostile work environment claim that was raised for the

first time in their brief opposing summary judgment).

    The effect of the plaintiff's belated assertions that these individual acts should be

construed as individual acts of discrimination amount to an amendment of her EEO

charges and her complaints in this case. Again, the plaintiff, until now, has never asserted

that these individual acts were discreet acts of discrimination, rather she has identified

them as acts of harassment in support of her claim of a hostile working environment.

Such is conceded by the plaintiff when she asserts that each one "should have been and

must be viewed in more accurate averments of discrimination or retaliation," and that

each of these, "should have been considered by the EEOC as discrimination claims rather

than harassment claims."[16]  To allow such re-characterization, would reward the plaintiff's dalliance and allow her to proceed to trial on claims that were not fairly put to the test via summary judgment.  Such a procedure would run counter to the recognized and essential goals of efficiency and judicial economy.

**B)    Assuming these individual acts are deemed to be actionable claims of alleged discrimination/retaliation the plaintiff cannot sustain her burden to demonstrate that they constitute adverse employment actions.**

A plaintiff establishes a prima facie case of disparate treatment by showing that he was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class.  Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004), *citing,*, McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824,36 LED.2d 668 (1973); Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir.1997).  Similarly, to establish a prima facie case of retaliation, a plaintiff must show that (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment action. Stavropoulos v. Firestone, 361 F.3d 610, 616 (11th Cir. 2004), *citing,* Bass v. Bd. of County Comm'rs, Orange County, Fla., 256 F.3d 1095, 1117 (11th Cir.2001).

To the extent the plaintiff is now asserting that each of the acts identified in her

---

[16]    "Plaintiff's Memorandum Brief in Opposition to the Defendant's Motion for Summary Judgment," p. 14.

administrative complaints as evidence of harassment were individual, actionable incidents of discrimination/retaliation, the defendant is entitled to summary judgment as to each and every claim.  While some may arguably be evidence of discriminatory animus, none constitute an adverse employment action for Title VII purposes as they had no bearing on the plaintiff's terms and conditions of employment.  See Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1238 - 1239 (11th Cir. 2001) (to prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a *serious and material* change in the terms, conditions, or privileges of employment," . . . ,"[m]oreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances");  Perryman v. West, 949 F.Supp. 815, 819 (M.D.Ala.1996) ("An employment action must affect a term or condition of employment and is not adverse merely because the employee dislikes it or disagrees with it. . ., there must be a serious and material change in the terms, conditions, or privileges of employment.).

The assignment of office duties in this case was not such that it could be viewed by a reasonable person in the circumstances as materially adverse.  As admitted by the plaintiff, it was not the work that she was asked to do but the manner in which she was

asked to do it.[17]  Furthermore, the tasks involved were matters arising in the ordinary

course of business, not within or without anyone's job description and involved, at least

for the most part, the assimilation and distribution of files that had been transferred to the

Luverne office along with the plaintiff.[18]  Regarding the assignment of the timekeeper

duties, the plaintiff can produce no evidence that this was done on the basis of her race or

that its was a *serious and material* change in the terms, conditions, or privileges of

employment.

　　　Like the claims regarding the assignment of duties, the plaintiff cannot

demonstrate that the assignment of workspace and equipment in the Luverne offices was

predicated upon her race and/or that it somehow affected the terms and conditions of her

employment.  In fact the plaintiff admits that she and was moved into an office setting

that was already fully occupied by the existing staff of the Luverne office.  Moreover, the

defendant saw no reason to expend funds to acquire equipment and/or additional office

space to support a number of employees that it knew would soon be removed from federal

service and not replaced.[19]  As with the assignment of duties, the assignment of space and

the lack of equipment was not such that they could be viewed by a reasonable person in

the circumstances as materially adverse.

---

[17]　　　DEX 26, p. 132, lines 12-25; p. 133, lines 1-25; p. 134, lines 1-25; p. 135, lines 1-25; p. 136, lines 1-22.

[18]　　　Id.

[19]　　　DEX 27, ¶ 5; DEX 28, ¶ 3.

Finally, the use of the phrase "you people" does not amount to an adverse employment action in and of itself.  In fact, the plaintiff has not and cannot demonstrate how this phrase on any single occasion constituted a *serious and material* change in the terms, conditions, or privileges of employment.

## IV.    PLAINTIFF HAS FAILED TO DEMONSTRATE A CAUSAL CONNECTION BETWEEN HER PROTECTED EXPRESSIONS AND THE ALLEGEDLY ADVERSE ACTIONS OF THE DEFENDANT.

The plaintiff alleges that the defendant has failed to raise or brief the lack of evidence of any causal connection between the plaintiff's letters complaining of harassment sent to Mr. Horace Horn in October 1996 and various offices within the United States Department of Agriculture between December 1996 and August 1999, and the alleged retaliatory act of not placing her on the RPL until May 1998.  This is just not accurate.  In fact, the defendant specifically discussed this issue at pp. 33 - 34 of its original brief.  Specifically therein, the defendant asserted:

> The plaintiff cannot produce any admissible evidence that Ms. Price was actually aware of any of her alleged complaints of discrimination other than possibly the first one sent to Mr. Horn on or about October 29, 1996.  All other alleged complaints of discrimination were sent to various USDA officials in Washington, D.C. and the plaintiff can produce no evidence that Ms. Price was aware of these letters or that any one who received them communicated the fact of their existence or their content to Ms. Price or anyone else with authority or ability to place or not place the plaintiff on the RPL.  Again,  "[a] decision maker cannot have been motivated to retaliate by something unknown to him."

<u>Brungart v. BellSouth Telecomm., Inc.</u>, 231 F.3d at 799.[20]

As noted in the original brief, the plaintiff sent her first alleged complaint of harassment

to Mr. Horn in October 1996, some three months before she was notified that she could

be dismissed and some 6 months before she was actually removed from federal service.

Consequently, three months lapsed between when she was first notified of the availability

of the RPL and 6 months lapsed before anyone arguably failed to place her on the list

following her removal.  Moreover, as cited originally and above, the plaintiff, as

predicted, has offered no admissible evidence from which it can be inferred that Mrs.

Price or anyone else with the ability or authority to not place the plaintiff on the RPL was

aware of any of the complaints sent to USDA.

   While the plaintiff makes such conclusory statements as: "[t]he record leaves little

question that Horn, Price and Powers were aware of Plaintiff's EEO protected activity

efforts at all material times, especially through her re-employment priority time

frames;"and "Defendant's argument that it did not know about Plaintiff's efforts to

exercise her protected rights are without merit based on circumstantial evidence;" she

offers no evidentiary support for same.  The plaintiff offers no evidence that Mrs. Price,

Mr. Horn or Mr. Powers were aware of the plaintiff's complaints of discrimination to the

USDA during the relevant time frame between April 1997 and May 1998.

   The plaintiff also asserts that "Mrs. Price's pattern and practice was, by her own

---

[20]    The defendant's "Memorandum Brief in Support of its Motion to Dismiss,
or in the alternative, for Summary Judgment," filed April 16, 2007, p. 33.

admission, to ignore or bend the Re-employment rules,"[21] yet she offers no evidentiary support for this proposition not based upon a comparison of apples to oranges. Particularly, the plaintiff cites Mrs. Price's statement that she maintained an informal "re-employment" list in her office, and that she had informal communications with others who were dismissed about other employment possibilities.[22]  This informal list, the apple, was entirely different from the official RPL, the orange, the existence of which was mandated by federal regulations.[23]  While Mrs. Price assisted former employees, including the plaintiff, in an informal way by maintaining the office list and contacting people, including the plaintiff,[24] when she heard of positions they may be interested in, the plaintiff has not produced one piece of admissible evidence that Mrs. Price violated any regulation or in any way misapplied any applicable regulations with the intent to prevent the plaintiff from being placed on the RPL during the material time frame of April 1997 through May 1998.

---

[21]    "Plaintiff's Memorandum Brief in Opposition to the Defendant's Motion for Summary Judgment," p. 17.

[22]    "Plaintiff's Memorandum Brief in Opposition to the Defendant's Motion for Summary Judgment," p. 17.

[23]    DEX 32, ¶ 5.

[24]    DEX 32, ¶ 10.

## V.    PLAINTIFF HAS FAILED TO ESTABLISH THAT THE DEFENDANT'S PROFFERED NON-DISCRIMINATORY REASONS FOR NOT PLACING HER ON THE RPL WERE A PRETEXT FOR UNLAWFUL DISCRIMINATION.

When alleging the defendant's proffered nondiscriminatory reasons for its actions

are pretextual the plaintiff's burden has been held to be as follows:

> A plaintiff may prove pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256, 101 S.Ct. at 1095. "[B]ecause Plaintiff bears the burden of establishing pretext [for discrimination], he must present 'significant probative' evidence on the issue to avoid summary judgment."  See Isenbergh v. Knight-Ridder Newspaper Sales, Inc., 97 F.3d 436, 443-44 (11th Cir.1996) (quoting Young v. General Foods Corp., 840 F.2d 825, 829 (11th Cir.1988)) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986)).  "Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered ... extensive evidence of legitimate, non-discriminatory reasons for its actions."  Isenbergh v. Knight-Ridder Newspaper Sales, Inc., 97 F.3d 436, 443-44 (11th Cir.1996) (quoting Young v. General Foods Corp., 840 F.2d 825, 830 (11th Cir.1988)) (quoting Grigsby v. Reynolds Metals Co., 821 F.2d 590, 597 (11th Cir.1987)).

Mayfield v. Patterson Pump Co., 101 F.3d 1371, 1377 (11th Cir. 1996).  The  plaintiff has

failed to meet these standards.

In cases such as this, federal courts "do not sit as a super-personnel department

that reexamines an entity's business decisions.  No matter how medieval a firm's practices,

no matter how high-handed its decisional process, no  matter how mistaken the firm's

managers, [federal anti-employment discrimination statutes do] not interfere, . . . , our

inquiry is limited to whether the employer gave an honest explanation of its behavior."

Chapman v. AI Transport,  229 F.3d 1012 at 1030 (11th Cir. 2000), *quoting,* Elrod v.

Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir.1991)).  Further, a "plaintiff is not

allowed to recast an employer's proffered nondiscriminatory reason or substitute his

business judgment for that of the employer." Id.  Thus, "[p]rovided that the proffered

reason is one that might motivate a reasonable employer, an employee must meet that

reason head on and rebut it, and the employee cannot succeed by simply quarreling with

the wisdom of that reason." Id.

The defendant has asserted that the delay in placing the plaintiff on the RPL was

caused by the failure of the plaintiff to return the proper form in a more timely manner.[25]

The plaintiff responds that this is pretextual on the basis of Mrs. Price's maintenance of

the informal "reemployment" list, again the apple, in her office.  Once again, this list was

in no way related to the official RPL, the orange, and was in no way required, maintained

or utilized in accord with federal regulation.  Consequently, the manner in which it was

maintained or utilized is not indicative of any pretext regarding the defendant's

---

[25]    The defendant's "Memorandum Brief in Support of its Motion to Dismiss, or in the alternative, for Summary Judgment," filed April 16, 2007, p. 33.

maintenance or utilization of the official RPL.[26]

Second, the plaintiff points to an investigative summary prepared by EEO Investigator Keleyhers. This summary is inadmissible hearsay and should not be considered by the Court. First, it is a summary of interview summaries produced by Ms. Keleyhers. None of the summaries of interviews upon which it is based were sworn statements of the declarants. The summary as well as the interview summaries upon which it is based is lacking the indicia of trustworthiness that accompanies sworn statements and/or the crucible of cross examination.

Even considering the summary, the plaintiff has failed to demonstrate the defendant's proffered reasons are pretextual. The alleged fact that others were not provided the forms necessary to register for the RPL does not mitigate the fact that the employees of the RD were on notice of the program.[27] That all the individuals on the list were white until the plaintiff was placed on it, in the absence of admissible evidence that African-Americans applied, is insufficient to cast doubt on the defendant's proffered reasons. In sum, the entire document contains conclusory and/or speculative assertions that are not sufficiently probative to call into doubt the defendant's proffered reasons.

Of course, mitigating against all the plaintiff's evidence is the undisputed fact that

---

[26]    In fact, the list of Mrs. Price is indicative of the lack of retaliatory animus on her part as she could have chosen not to include the plaintiff without fear of violating any federal statutes. Instead, she chose to include the plaintiff and, in fact, assisted the plaintiff by notifying her of a possible employment opportunity outside the agency.

[27]    DEX 2, p. 2; DEX 3 p. 1, Attachment 2, p. 6-7; DEX 32, ¶¶ 4 & 5.

once the completed form was returned to Ms. Price, the plaintiff was placed on the RPL.

Equally undisputed is the fact that during the relevant time frame no positions for which

the plaintiff's priority would have applied became available.  Being afforded the

advantage of the RPL, albeit late, the plaintiff cannot and has not demonstrated that her

own inactions were not the true reason for the delay.

WHEREFORE, premises considered, the defendant's Motion to Dismiss, or in the

alternative, for Summary Judgment is due to be and should be granted, with the

defendant's costs taxed to the plaintiff.

Respectfully submitted this 21st day of May, 2007.

LEURA G. CANARY
United States Attorney

By:    s/R. Randolph Neeley
       R. RANDOLPH NEELEY
       Assistant United States Attorney
       Bar Number:  #9083-E56R
       Attorney for Defendant
       United States Attorney's Office
       Post Office Box 197
       Montgomery, AL  36101-0197
       Telephone: (334) 223-7280
       Facsimile:  (334) 223-7418
       E-mail:  rand.neeley@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 21, 2007, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, and I hereby certify that I have mailed, by

United States Postal Service, a copy of same to the following non-CM/ECF participant(s):

> Gary E. Atchison, Esquire
> P.O. Box 2002
> Montgomery, AL 36102-2002

> _____ s/R. Randolph Neeley _____
> Assistant United States Attorney