**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| LISA McCALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: **2:06cv39-MHT** |
| | ) | |
| MIKE JOHANNS, | ) | |
| Secretary, Department of Agriculture, | ) | Jury Demand |
| | ) | |
| Defendant. | ) | |

**ORDER ON PRETRIAL HEARING**

A pretrial hearing was held in this case on June 15, 2007 in Montgomery, AL, wherein

the following proceedings were held and actions taken:

1.    **PARTIES AND TRIAL COUNSEL:**

**For plaintiff:** Gary E. Atchison, attorney for Plaintiff Lisa McCall.

**For defendant:** R. Randolph Neeley, Assistant U.S. Attorney.

**COUNSEL APPEARING AT PRETRIAL HEARING:**

**For plaintiff:** Gary E. Atchison

**For defendant:** R. Randolph Neeley

2.    **JURISDICTION AND VENUE:**

The Court has jurisdiction based upon Title 42, United States Code, Section 2000e-16.

Venue for this action lies within the Middle District of Alabama.

3.    **PLEADINGS:**

The following pleadings and amendments were allowed:

Complaint

Answer

Amended Complaint

Answer to Amended Complaint

Second Amended Complaint

Answer to Second Amended Complaint

Amended Answer to Second Amended Complaint

**4.    CONTENTIONS OF THE PARTIES:**

**(a)  The plaintiff**:

Plaintiff McCall is a Black or African-American female who resides in Montgomery, Alabama, and who was employed by the United States Department of Agriculture, Rural Development Bureau starting in July 1990.  In 1996 she held the position of Community Development Assistant, GS 4/4 in the Hayneville, Alabama, office.  When that office closed in December of 1996, Plaintiff was transferred to the Luverne, Alabama office.

Defendant Mike Johanns is the Secretary of the U.S. Department of Agriculture and is a White Caucasion male, over the age of nineteen years,  with offices in Washington, D.C. Secretary Johanns is sued in his official capacity.

All claims are made via Title VII, 42 USC 2000e *et seq.*

The U.S. Department of Agriculture discriminated against the Plaintiff on the basis of her race (African American) and color (black) when she was separated from employment as a result of a reduction in force (RIF) in April of 1997.  Her name was not placed on the

re-employment priority list (RPL) for many months and she was thus never re-employed by the Agency despite the placement of similarly situated whites on said re-employment priority list and or re-employment, all such acts and or omissions by the Agency being discrimination and or retaliation. Prior to her RIF separation, Plaintiff was subjected to a pattern of discrimination and or retaliation, which included the assignment of duties; insufficient work space; lack of a desk, telephone and computer; and verbal abuse by her supervisor.

At all times material Plaintiff was in the Hayneville, Alabama office and toward the end of her time with the Agency she transferred to the Luverne, Alabama office during which time Arthur L. Powers, a Caucasian, became her first line supervisor. Plaintiff's second line supervisor over Mr. Powers in Luverne was John Sasser, District Director, a Caucasian, who had his office in Mobile.

Plaintiff was subjected to discrimination and retaliation by Arthur Powers, from November 1996 until the date of the Reduction in Force (RIF) in April 1997. He treated Plaintiff and her co-worker, Arlesa Hunter (Black), differently from the way he treated White employees.

Arthur Powers used an angry tone when he spoke to Plaintiff and Arlesa Hunter. He did not speak that way to White employees. He would tell Arlesa Hunter and Plaintiff McCall to do things that he would not tell White employees to do, such as move heavy office furniture around and put heavy files into file cabinets. Arthur Powers was also rude and used a harsh tone when he spoke to Black Department of Agriculture borrowers. He did not speak

that way to White borrowers. Several Black borrowers, after his abusive treatment, got mad, yelled and cursed at him.

Arlesa Hunter (Black) and the Plaintiff were not provided office furniture or a phone or computer at the Luverne office. They each had just a table, chair and typewriter; however, they needed a phone and a computer to do their jobs properly. White employees with the same positions had been given necessary office furniture and telephones and computers.

In the interim, on October 29, 1996, Plaintiff wrote a letter to Horace Horn complaining about the "harassment problem" that she had with her county office supervisor, Arthur Powers (White). "Harassment" was Plaintiff's legal misnomer for an action that constituted race discrimination and retaliation. Horace Horn, who was over all of the Agency's personnel decisions in the state, responded back to Plaintiff, but in his response he otherwise ignored Plaintiff's complaints of "harassment," and he never later addressed those issues or any other EEO protected activity of the Plaintiff.

That during 1996 Mr. Horace Horn was the State Director when the Agency was in litigation involving Black farmers who alleged race discrimination involving farm loans with the Agency.

Mr. Powers and the Agency continued to discriminate and or retaliate against Plaintiff, and because Mr. Horn, the deciding official, refused to respond to Plaintiff's EEO complaints, Plaintiff wrote a series of letters detailing and factually setting forth racial discrimination facts, etc., which she felt was "harassment." Said letters directed to the Agency's Washington, D.C. Office of Civil Rights, were dated December 20, 1996, and

February 25, 1997. They were followed up by Plaintiff with letters dated April 30, 1997, and April 20, 1998, that were sent to the Agency's Secretary of Agriculture.

Barbara Price (White) was, at material times, the Agency's Personnel Management Specialist, Human Resource Manager and Personnel Specialist during the Agency's Reduction in Force or RIF that terminated the Plaintiff and others. When State Director Horace Horn received a harassment charge, he normally contacted Ms. Price's office for assistance.

Ms. Price stated that Mr. Arthur Powers, Plaintiff's White supervisor, would have been provided a copy of Mr. Horn's reply letter. Ms. Price stated that if an EEO complaint had been filed in the national office in Washington, D.C. that procedurally her office would have co-operated with that matter. She testified that it was her office that investigated Title VII complaints, to gather together documents.

Ms. Price testified that Mr. Horace Horn, the selecting official and State Director was "not willing to be interviewed" in Ms. McCall's EEO case.

Ms. Price admitted that though Ms. McCall and others were RIFed in April 1997 that it was on May 27, 1998, when Ms. McCall's name was finally placed on the re-employment list. However, despite the fact Ms. McCall was not on the re-employment list until May 27, 1998, Ms. Price claimed, "her name was on an informal re-employment list that we had maintained in the office."

Plaintiff applied for a job in Mobile prior to the RIF. Lisa Hardy also applied who was of mixed race, White and Indian. The job was virtually the same as the one Plaintiff was

doing in Luverne.  Plaintiff submitted an application but did not get an interview or letter of rejection.  Everyone who was a GS-4 had been subject to the RIF.  John Sasser was the selecting official.  Plaintiff's race and color were a factor in her non-selection because John Sasser had no Blacks in his office and as shown by the way he spoke to Arlesa Hunter racially identifying her as one of "you people" when he harshly spoke to her in Plaintiff's presence in the Luverne office.  Lisa Hardy, a White, who was selected, had a year less experience than Plaintiff did and was less qualified than she was.

Race was a factor in the RIF because  some people in lower grades who were White were not RIFed; Whites who included Lisa Hardy and Camilla Meeks.

All of the White people who were RIFed in the Luverne office went back to work at the Agency, albeit some in temporary jobs.  Arlesa Hunter and Plaintiff, Black employees, have not been contacted about any potential jobs at the Agency to this date.

The Agency discriminated and or retaliated against Plaintiff by not placing Plaintiff's name on the RPL list or helping her to get re-employed.  A job came open in Wilcox County after the RIF, but Arlesa Hunter and Plaintiff were not called.

That due to the alleged illegal acts and or omissions of the Defendant the Plaintiff has suffered lost wages and compensatory damages, including mental anguish, etc. plus attorneys fees and costs.

**(b)    The defendant**:

1.    The plaintiff's claims of race discrimination pertaining to the reduction in force are barred by the doctrine of res judicata.

2.     The plaintiff cannot demonstrate a prima facie case of race discrimination in regards to the RIF.

3.     The defendant had a legitimate, non-discriminatory, non-pretextual reason for discharging the plaintiff from its employ, that is a lawful reduction in force.

4.     The plaintiff cannot demonstrate a prima facie case of race discrimination in regards to the re-employment priority list.

5.     The defendant had a legitimate, non-discriminatory, non-pretextual reason for not placing the plaintiff on the RPL until April, 1998, that is her failure to properly advise the defendant of her desire to be placed on same.

6.     The plaintiff is barred from litigating alleged acts of harassment as individual acts of discrimination, due to her failure to amend her complaint to include same as individual acts of discrimination.

7.     The individual acts of alleged discrimination/retaliation alleged to have been committed against the defendant by Art Powers were not administratively exhausted as such and are therefore individual actionable claims of discrimination/retaliation.

8.     The plaintiff cannot demonstrate a prima facie case of discrimination as to any of  the specific acts of alleged discrimination supposedly committed against her by Art Powers.

9.     The defendant had a legitimate, non-discriminatory, non-pretextual reason for each and every act of alleged discrimination alleged to have been committed against her by Art Powers.

10.    The plaintiff cannot demonstrate a prima facie case of retaliation as to any of the specific acts of alleged retaliation supposedly committed against her by Art Powers.

11.    The defendant had a legitimate, non-discriminatory, non-pretextual reason for each and every specific act of alleged retaliation alleged to have been committed against her by Art Powers.

12.    The plaintiff's claim that she was not selected for a position in Mobile, AL by Mr. Sasser is not properly before the Court as the plaintiff failed to specifically, or inferentially, allege same in her complaint.

13.    The plaintiff's claims that she was not selected for a position in Mobile, AL by Mr. Sasser are not properly before the Court as the plaintiff failed to timely administratively exhaust same.

14.    The plaintiff cannot demonstrate a prima facie case of discrimination in regards to her non-selection for the Mobile, AL position.

15.    The plaintiff cannot demonstrate a prima facie case of retaliation in regards to her non-selection for the Mobile, AL position.

16.    The defendant had legitimate, non-discriminatory, non-pretextual reasons for not selecting the plaintiff for the Mobile, AL position.

17.    The plaintiff has not suffered any damages as a result of the alleged acts/inactions of the defendant's employees.

18.    The plaintiff has failed to mitigate any damages she may have suffered as a result of the alleged acts/inactions of the defendant's employees.

5.    **STIPULATIONS BY AND BETWEEN THE PARTIES:**

The parties have not presently entered into any stipulations of fact. They are encouraged to do so and to file with the Court any stipulations on or before July 9, 2007.

**It is ORDERED that:**

**(1) The jury selection and trial of this cause, which is to last three (3) days, are set for October 1, 2007, at 10:00 a.m. at the Frank M. Johnson, Jr. United States Courthouse, Courtroom 2FMJ, One Church Street, Montgomery, Alabama;**

**(2)    A trial docket will be mailed to counsel for each party approximately two weeks prior to the start of the trial term;**

**(3) Each party shall have available at the time of trial, for use by the court (the judge, the courtroom deputy clerk, and the law clerk), three copies of the exhibit list and a sufficient number of copies of each photostatically reproducible exhibit for opposing counsel, the courtroom deputy clerk, the law clerk, and the judge to each have a set of the exhibits;**

(4) Trial briefs are required to be filed by September 26, 2007;

(5) All deadlines not otherwise affected by this order will remain as set forth in the uniform scheduling order (Doc. No.16) entered by the court on June 9, 2006; and

(6) All understandings, agreements, deadlines, and stipulations contained in this pretrial order shall be binding on all parties unless this order be hereafter modified by Order of the court.

DONE, this the 18th day of June, 2007.


                    /s/ Myron H. Thompson
              UNITED STATES DISTRICT JUDGE