IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


| | | |
|---|---|---|
| LISA McCALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:06cv39-MHT |
| | ) | (WO) |
| MIKE JOHANNS, Secretary, | ) | |
| U.S. Department of | ) | |
| Agriculture, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION

Plaintiff Lisa McCall brought this suit against

defendant Secretary of the United States Department of

Agriculture (USDA), relying on Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C. §§ 1981a, 2000e

to 2000e-17, and claiming that she was discriminated

against on the basis of her race and retaliated against

for complaining of discrimination. Specifically, she

alleges that, because she is black, she was treated

differently, fired, and not rehired; she also alleges

that she was fired or not rehired because she wrote numerous letters complaining of discrimination to various USDA officials. Jurisdiction over the case is invoked under 42 U.S.C. §§ 2000e-5(f)(3) and 2000e-16.

The case is currently before the court the USDA's motion for summary judgment. For the reasons that follow, the motion will be granted.

## I.  APPLICABLE STANDARDS AND PROCEDURES

### A. Summary-Judgment Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 249 (1986).  In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## B. Title VII Standard

In order to prevail on a Title VII claim, McCall must make the showing set forth in forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  In order to survive summary judgment under this approach, McCall must first set forth a prima-facie case of illegal discrimination or retaliation, and, once satisfied, a presumption of illegal discrimination or retaliation arises.  If she establishes a prima-facie case, the burden then shifts to the USDA to rebut the presumption by articulating a legitimate, non-discriminatory and non-retaliatory reason for its employment action.  <u>Chapman v. AI Transport</u>, 229 F.3d 1012, 1024 (11th Cir.2000).  The USDA has the burden

of production, not of persuasion, and thus does not have to persuade the court that it was actually motivated by the reason advanced. <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253-55 (1981).

Once the USDA satisfies this burden of production, the presumption of discrimination or retaliation is eliminated and McCall has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima-facie case, sufficient to permit a reasonable factfinder to conclude that the reason given by the USDA was not the real reason for the adverse-employment decision. <u>Chapman</u>, 229 F.3d at 1024. McCall may meet this burden by persuading the court that a discriminatory or retaliatory reason more than likely motivated the USDA or by demonstrating that the proffered reason for the employment decision is not worthy of belief. <u>Burdine</u>, 450 U.S. at 256.

4

## C.   Administrative Procedures

Finally, it is helpful in understanding this case to understand the administrative procedures applicable to McCall in pursuing her Title VII claims before the Merit Systems Protection Board (MSPB) and the Equal Employment Opportunity Commission (EEOC).  The District of Columbia Court of Appeals has explained the procedures succinctly and clearly:

> "An employee who intends to pursue a mixed case [--that is, an adverse-personnel action subject to appeal to the MSPB coupled with a claim that the action was motivated by discrimination--] has several paths available to her.  At the outset, the aggrieved party can choose between filing a 'mixed case complaint' with her agency's EEO [Equal Employment Opportunity] office and filing a 'mixed case appeal' directly with the MSPB.  By statute, the relevant agency EEO office and the MSPB can and must address both the discrimination claim and the appealable personnel action.  Should she elect the agency EEO route, within thirty days of a final decision she can file an appeal with the MSPB or a civil discrimination action in federal district court.  If 120 days pass without a final decision from the

5

agency's EEO office, the same avenues of appeal again become available: the complainant can file either a mixed case appeal with the MSPB or a civil action in district court.

"When a complainant appeals to the MSPB, either directly or after pursuing her claim with the agency EEO office, the matter is assigned to an Administrative Judge who takes evidence and eventually makes findings of fact and conclusions of law. The AJ's initial decision becomes a final decision if neither party, nor the MSPB on its own motion, seeks further review within thirty-five days. However, both the complainant and the agency can petition the full Board to review an initial decision. Should the Board deny the petition for review, the initial decision becomes final; if the Board grants the petition, its decision is final when issued. At this point, the complainant again has a choice: within thirty days of receiving a final decision from the MSPB, she can either appeal the discrimination claim to the EEOC, or appeal the entire claim (or any parts thereof) to the appropriate district court. Finally, if the MSPB fails to render a judicially reviewable decision within 120 days from the filing of a mixed case appeal, the aggrieved party can pursue her claim in federal district court."

<u>Butler v. West</u>, 164 F.3d 634, 638-39 (D.C. Cir. 1999)
(citations omitted).


## II. FACTS

### A.  McCall's Employment with the USDA

McCall worked for the USDA's Rural Development Bureau
from 1990 until 1997.  The USDA consolidated some of its
offices in 1996.  This consolidation is, for the most
part, at the root of what led to this lawsuit.

For most of her employment with the USDA, McCall
worked in the office in Hayneville, Alabama.  However, in
the course of a statewide consolidation, the department
closed the Hayneville office, and, in November or
December 1996, the operations of this office, along with
McCall, were transferred to the Luverne, Alabama office.
In the Luverne office, McCall was first under the
supervision of Quinton X. Harris; then, starting in early
1997, she was under the supervision of Arthur Powers.

There were two black employees in the Luverne office, McCall and another black woman. Powers sometimes referred to McCall as "you people"; spoke to McCall and the other black woman in the office in an angry way; and asked them to move and integrate files, a task the white employees did not have to do. The two black employees in the office did not have phones or computers at their desks, while the white employees of the office did. In addition, a white woman replaced McCall as timekeeper for the office.

As a result of the restructuring and consolidation plan, which was approved in July 1996 and pursuant to which McCall was transferred, the USDA determined that some employees would have to be let go. In November 1996, around the time of her move to the Luverne office, McCall was identified as person most likely to be released from her position. She continued, however, working in the Luverne office until April 1997, when she was let go. At the time McCall was let go, she was a

8

Community Development Assistant, at a General Schedule level 4/4.

USDA Human Resources Manager Barbara Price maintained a "reemployment priority list" (RPL), a register of those employees terminated during the reduction in force who had opted into the list through the filing of paperwork; certain government agencies gave these employees priority in subsequent hiring.  McCall was not added to the list until May 1998, long after she was let go.

### B.  McCall's Race-discrimination Administrative-complaints

Toward the end of her employment and after the plan of consolidation had been approved, McCall began to write letters complaining of Powers's behavior, which she felt was discriminatory.  In October 1996, she wrote a letter to the USDA State Director; in December 1996 and February 1997, letters to the USDA Office of Civil Rights; in April 1997 and April 1998, letters to the Secretary of Agriculture; in August 1999, a letter to the USDA

9

Employment Complaints Division; and, in August 2000, a letter to the Assistant Secretary of Agriculture. Eventually, an investigation into discrimination in her employment and termination was initiated.

McCall initially brought her race-discrimination complaints in the USDA's Office of Civil Rights. The USDA reviewed her allegations of discrimination in termination, harassment, and hiring and found that there was insufficient evidence to establish a finding of discrimination. McCall appealed the agency's finding in the MSPB. The MSPB split her complaints into two separate cases: one having to do with her termination and the other her claims of harassment and discriminatory failure to reemploy. The MSPB found that it did not have jurisdiction over the portion of her complaints having to do with her reemployment claim, and set her termination claim for hearing.

On January 8, 2002, McCall filed a motion for voluntary dismissal with prejudice of the termination

claim, and the appeal was dismissed with prejudice. There was no further appeal of this decision.

McCall appealed the lack-of-jurisdiction dismissal of her reemployment appeal, and that decision was vacated and remanded. She also appealed the substance of the USDA's resolution of her claims to the Equal Opportunity Commission (EEOC), which considered and rejected them. The EEOC rejected her termination appeal because it had been, pursuant to her motion before the MSPB, dismissed with prejudice; the EEOC rejected her harassment and reemployment appeals because it found that they lacked merit.

## III. DISCUSSION

McCall makes three Title VII claims. First, she claims that she was terminated because of her race and because she filed complaints of discrimination; second, she claims that she was not placed on the reemployment list because of her race and because she filed complaints

11

of discrimination; and, finally she claims that she was discriminated against in certain aspects of her workplace. The court will address each claim in turn.

### A. Termination

The USDA argues that, because McCall voluntarily dismissed her termination appeal before the MSPB and allowed her termination claim to lapse, she is precluded from litigating her termination claim in this court. This court agrees.

The preclusive effect of a judgment issued by an administrative agency can differ from that of a judgment issued by a court. As an initial matter, not all administrative proceedings that produce judgments are judicial; only where an administrative procedure is judicial in nature will it have preclusive effect. "Although administrative estoppel is favored as a matter of general policy, its suitability may vary according to the specific context of the rights at stake, the power of

the agency, and the relative adequacy of agency procedures." <u>Astoria Federal Savings and Loan Ass'n v. Solimino</u>, 501 U.S. 104, 109-110 (1991); <u>see also</u> <u>United States v. Utah Construction & Mining Co.</u>, 384 U.S. 394, 421-22 (1966); 18B Wright & Miller Fed. Prac. & Proc. § 4475. MSPB proceedings like the ones at issue here are quasi-judicial, adversarial proceedings such that they may have preclusive effect. <u>See Carson v. Department of Energy</u>, 398 F.3d 1369 (Fed. Cir. 2005); <u>Thomas v. General Services Admin.</u>, 794 F.2d 661 (Fed. Cir. 1986).

In addition to the requirement that proceedings be sufficiently judicial in nature, the substantive statutory scheme must support, or at least not prohibit, the application of preclusive effect. <u>Astoria</u>, 501 U.S. at 108. The relevant statutes here do not prohibit claim preclusion. There is no obvious purpose or effect of Title VII or its implementing procedures that is not served by claim preclusion; to the contrary, as other courts have pointed out, to allow plaintiffs to bring

13

claims that they have abandoned in the administrative context would allow them to perform an end-run around exhaustion requirements set forth in the governing statues. See, e.g., Vinieratos v. U.S., Dept. of Air Force Through Aldridge, 939 F.2d 762, 774 (9th Cir. 1991). Whatever the merits of allowing issue preclusion in the context of this statutory scheme, this court is convinced that claim preclusion is allowed.

Turning to the application of preclusion in this case, where claim preclusion is used as a defense, four conditions must be met. First, the prior judgment must have been rendered by a court of competent jurisdiction and in accordance with the requirements of due process; second, the judgment must be final and on the merits; third, there must be identity of both parties; and, fourth, the later proceeding must involve the same cause of action as involved in the earlier proceeding. In Re Atlanta Retail, 456 F.3d 1277, 1285 (11th Cir. 2006).

McCall disputes only the third requirement. First, she points to the MSPB's order vacating its earlier decision that it did not have jurisdiction over McCall's reemployment claim, presumably as a way of indicating that the MSPB's dismissal with prejudice of her termination claim was not final. However, this order had no effect on the order relating to her termination claim. As discussed, the MSPB separated the claims into two separate cases and vacated its judgment only as to the reemployment claim. The board's order remanded only McCall's "reemployment priority rights appeal" and its opinion indicates that it meant to address only that in its remand order. Further, the board notes, in its order vacating its earlier decision, that "The appellant petitions for review from the initial decision that dismissed this appeal for lack of jurisdiction." Thus, the record is perfectly clear that only McCall's reemployment was addressed by the order vacating the prior decision. Her termination claim was voluntarily

15

dismissed with prejudice and was not addressed by the order.

Second, McCall points out that the MSPB never considered the merits of her case. This is true, but it is true only because she terminated the process. The order itself is final, and on the merits. "Dismissal of a complaint with prejudice satisfies the requirement that there be a final judgment on the merits. The phrases 'with prejudice' and 'on the merits' are synonymous terms, both of which invoke the doctrine of claim preclusion." Citibank, N.A. v. Data Lease Financial Corp., 904 F.2d 1498, 1501 (11th Cir. 1990). McCall could have requested a dismissal of the claims without prejudice in order to pursue her EEOC case, see, e.g., Vinieratos, 939 F.2d at 774, but she did not.

Thus, McCall, through her request for dismissal with prejudice and subsequent abandonment of MSPB proceedings, allowed the MSPB proceedings to become final and preclusive. While she attempted to challenge the

16

agency's decision on her termination before the EEOC, having requested that the matter be dismissed before the MSPB and failing to appeal, she closed that avenue to herself. She is precluded from collaterally challenging the agency's holding on the merits here.

Even if this were not so, however, McCall could not prevail on the merits of her termination claim. Even assuming that she could establish a prima-facie case of race discrimination, the court would still have to conclude that McCall has failed to call into question the USDA's reason for her termination by showing that the reason is pretextual or unworthy of belief and thus the result of racial animus. USDA states that McCall was terminated because the agency was suffering financial constraint; that certain offices had to be consolidated in order to resolve the financial constraint; and that McCall was the lowest ranked employee competing for the position that remained open after the offices were consolidated. McCall has not offered any reason to doubt

17

this explanation for her termination; she does not appear to defend her race-discrimination contention at all, other than to say that contention is not precluded.

McCall has not met her burden of showing pretext. For example, she does not introduce any evidence that supervisor Arthur Powers (who allegedly created a discriminatory working environment and made discriminatory comments) was involved in the decision to terminate her; She does not even argue that Powers was involved. Further, McCall does not argue that Powers was involved in performance evaluations that might have affected her ranking, and, in turn, her eligibility for termination or retention.

Further, with respect to her retaliation complaints, McCall cannot establish either a prima-facie case or pretext. In order to establish a prima-facie case of retaliation, McCall must show that (1) she engaged in protected activity; (2) she suffered an adverse-employment action; and (3) there was a causal link

18

between her protected activity and the adverse employment action.  See Bass v. Board of County Commissioners, 256 F.3d 1095, 1117 (11th Cir. 2001). The plan for the reduction in force, which McCall concedes she was fired in accordance with, was approved before any of her retaliation complaints was lodged.  In order to establish that there was a causal link between the expression and the employment action, McCall must show that the person taking the adverse action was aware of the protected expression.  Id. at 1119.

In this case, the court could imagine McCall doing so by claiming that the actual decisionmaker was not the group that formulated the plan for reductions but rather was some other party who, for example, manipulated her service rating or discretionarily selected her for termination; however, the undisputed evidence is that she was selected for termination as a result of a decision made before she initiated her complaints.  Even if this were not so, McCall has made no effort to demonstrate

that the proffered reason for her termination is pretextual, and the court can find nothing in the record that would call the USDA's proffered reason into doubt.

## B. Failure to Reemploy

McCall argues that, because of her race and because she complained of race discrimination, she was not placed on the RPL. McCall, however, fails to present evidence that would call into question the USDA's stated reason for not placing her on the RPL: she did not submit the necessary paperwork in a timely manner.

## 1. Race Discrimination

The USDA does not challenge the contention that the fact of having been excluded from the RPL without more, an adverse employment action for the purposes of the McDonnell Douglas analysis, but instead challenges that its proffered reason for not placing McCall on the RPL is pretextual. Again, however, assuming that McCall could

establish a prima-facie case, she has failed to demonstrate that the USDA's proffered reason for not placing McCall on the list is pretextual. The department claims that it did not put her on the RPL because she did not submit the forms necessary for placement on the list. McCall does not deny this. Rather, she contends that pretext is evident in this rationale for three other reasons.

First, McCall argues that USDA Human Resources Manager Price's deposition testimony shows that she "informally" placed employees on the RPL list. This is a distortion of Price's testimony and not supported by the record. Price testified that she informally helped workers who had been terminated, but she never indicated that she placed employees on the RPL in the absence of the forms that McCall failed to submit. To the contrary, Price stated that she maintained an informal list separate from the RPL. Price confirmed, however, that, as to the RPL, "in order for a former RIF'd employee to

21

be on [the] RPL, they had to ensure that they filled out the appropriate form that's been identified in the record." She further confirmed that the RPL was constituted by, and subject to, regulation, including the requirement that the eligible employee "complete an application prescribed by the employing agency." 5 C.F.R. § 330.202. Thus, McCall's reading of Price's testimony is not accurate, and she has presented no evidence that anyone was placed on the RPL without submitting the needed forms.

Second, McCall argues that there is evidence of pretext because she was the only black person to be included on the list. This does not demonstrate pretext; McCall has not shown that she was not the only eligible black person who submitted the forms, albeit belatedly, to be so included.

Third, McCall cites the USDA EEO investigator's conclusion that his investigation suggested pretext. The investigator's conclusion is not only irrelevant, it is

not compelling.   First, this court must make its own independent and uninfluenced (by the investigator or anyone else) assessment of the record.   Second, the investigator draws her conclusion essentially from the fact that those placed on the RPL were white until McCall was placed on it.   The court has already stated that this fact, standing alone, is not indicative of pretext.   In addition, the investigator points to the fact that another black employee, although she was "accorded a lot of time and explanation," did not submit an RPL application.   However, the investigator does not note whether this employee ever attempted to submit an application; without this evidence no inferences can be drawn.   The investigator also points to the fact that some white employees were not terminated.   This is not compelling evidence of pretext for the same reason that it is not compelling evidence that McCall was discriminatorily selected for termination: there is nothing to suggest that the USDA's stated reason for

23

terminating any employee had to do with anything but their rankings. Indeed, white employees were terminated as a result of this reduction in force. Finally, the investigator points to the fact that a white employee had forms missing from her Reduction-in-Force packet and that this suggests that McCall may not have gotten the application. However, this does not suggest that the reason stated by the USDA is pretextual. As with disciplinary infractions that lead to termination, the employer need not be correct in believing that an event that leads to a job action occurred; the employer need only have a good-faith belief that the event occurred. Damon v. Fleming Supermarkets Of Florida, Inc., 196 F.3d 1354, 1363 n. 3 (11th Cir. 1999). McCall does not quarrel with the USDA's premise that she did not, in fact, submit her application and that the USDA so believed. Thus, McCall does not succeed on her contention that she was not placed on the RPL on the basis of her race.

## 2. Retaliation

McCall argues that she was not placed on the RPL in retaliation for complaining about racial discrimination. Again, and for the same reasons, assuming that she can demonstrate a prima-facie case of retaliation, she has not produced sufficient evidence that the USDA's proffered reason for not placing her on the RPL is not worthy of belief; there is no indication that there was any reason for Price's failure to place McCall on the RPL other than that McCall did not submit the necessary forms.

## C. Racially Discriminatory Work Conditions

McCall asserts that a variety of acts during her tenure with the USDA were racially discriminatory: first, that her supervisor, Powers, did not give her and another black employee their own desks or computers; second, that he referred to her as "you people"; third,

that he spoke to her and the other black employee in an angry tone; fourth, that he assigned to her duties that white employees did not want; and, fifth, that he took away her responsibilities as a timekeeper.

Title VII bars prohibited discrimination that alters the terms and conditions of employment. The forbidden alteration can be brought about in either of two ways: one is through a tangible employment action, such as a pay decrease, demotion or termination; the other way is through creation of a hostile-work environment caused by prohibited harassment that is sufficiently severe or pervasive to alter the terms and conditions of work. See Baldwin v. Blue Cross/Blue Shield of Alabama, 480 F.3d 1287, 1300 (11th Cir. 2007). Surprisingly, McCall concedes here that the actions challenged here, taken together, do not constitute a hostile-work environment, for it is those types of actions, if severe and pervasive enough, that usually are challenged as creating a hostile

26

environment.[1]  Instead, she contends that, individually,
they are barred by Title VII, and, it is thus,
individually, that the court will assess them.[2]

As stated, Title VII bars tangible-employment
actions.  A tangible-employment action is an employment
decision "such as discharge or failure to hire, or other
conduct that alters the employee's compensation, terms,
conditions, or privileges of employment, deprives him or

---

1.  Indeed, McCall's complaint that Powers referred
to her "you people" would be particularly more
appropriately analyzed under the harassment framework,
because the core of her complaint is not that there was
a <u>tangible</u> employment action, but rather that there was
a more intangible effect on the terms and conditions of
her employment.  <u>See</u> <u>Baldwin</u> 480 F.3d at 1300.  This
effect has been addressed under the rubric of harassment,
as a way of targeting that behavior that does, indeed,
affect the terms and conditions of employment without
leading to, for example, a decrease in pay.  <u>See</u> <u>Meritor</u>,
477 U.S. at 67 ("Of course ... not all workplace conduct
that may be described as 'harassment' affects a 'term,
condition, or privilege' of employment within the meaning
of Title VII. ... For ... harassment to be actionable, it
must be sufficiently severe or pervasive 'to alter the
conditions of the victim's employment and create an
abusive working environment.'").

2.  Indeed, it is hard to see how acts that McCall
concedes <u>together</u> do not change the terms and conditions
of employment could <u>individually</u> do so.

her of employment opportunities, or adversely affects his or her status as an employee." <u>Gupta v. Florida Board of Regents</u>, 212 F.3d 571, 587 (11th Cir. 2000).    In addition, while a tangible-employment action need not be an ultimate employment action, like firing or failing to hire, "some threshold level of substantiality ... must be met for unlawful discrimination to be cognizable under the anti-retaliation clause."    <u>Wideman v. Wal-Mart Stores, Inc.</u>, 141 F.3d 1453, 1456 (11th Cir. 1998). Although the Eleventh Circuit Court of Appeals has declined to establish a bright-line rule, "it is clear that to support a claim under Title VII's anti-discrimination clause the employer's action must impact the 'terms, conditions, or privileges' of the plaintiff's job in a real and demonstrable way ... the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment. ... [A]n employee must show a <u>serious and material</u> change in the terms, conditions, or privileges of employment."

<u>Davis v. Town of Lake Park, Fla.</u>, 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis in original).  Here the actions about which McCall complains fall far short of meeting this standard.

***

As stated, McCall makes three Title VII claims: that she was terminated because of her race and because she filed complaints of discrimination; that she was not placed on the reemployment list because of her race and because she filed complaints of discrimination; and, finally, that she was discriminated against in certain aspects of her workplace.  As demonstrated above, the evidence does not warrant any of these claims going to trial.  An appropriate summary judgment in favor of the USDA will be entered.

DONE this the 28th day of March, 2008.

    /s/ Myron H. Thompson    
UNITED STATES DISTRICT JUDGE